**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: 14-CR-2783 JB |
| ) | |
| THOMAS R. RODELLA and ) | |
| THOMAS R. RODELLA, JR. ) | |
| ) | |
| Defendant. ) | |

## MOTION TO DISQUALIFY THE U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF NEW MEXICO, THE PROSECUTOR IN THIS CASE, BY VIRTUE OF U.S. ATTORNEY DAMON P. MARTINEZ BEING A WITNESS

The Defendant, Thomas R. Rodella, by and through his counsel of record, Robert J. Gorence and Louren Oliveros of Gorence & Oliveros, P.C., moves the Court for an order to disqualify the U.S. Attorney's Office for the District of New Mexico. The basis for this motion is that U.S. Attorney Damon Martinez will be called as a witness at trial and will be questioned about threats he made to Defendant Thomas Rodella (hereinafter referred to as Mr. Rodella).

The testimony of U.S. Attorney Damon Martinez will be relevant to show that this prosecution was motivated by personal animus on the part of U.S. Attorney Martinez and that he made good on a threat to have Mr. Rodella arrested following a law enforcement meeting on May 7, 2014, that Mr. Rodella attended in his official capacity as the Sheriff of Rio Arriba County.

### FACTUAL BACKGROUND

A longstanding law enforcement dispute has been unfolding in Rio Arriba County in northern New Mexico. The dispute centers on assertions by Special Agents of the U.S. Fish and Wildlife Service and that they have the authority to stop motorists outside of the national forest

1

in order to conduct fish and wildlife related investigations. To assuage legal concerns that federal agents do not have such authority, U.S. Fish and Wildlife personnel had approached Sheriff Tommy Rodella and requested that he "deputize" U.S. Fish and Wildlife Special Agents and grant them commissions as deputy sheriffs of Rio Arriba County. Sheriff Rodella declined the request to grant such special commissions. Ultimately, after protracted negotiations, a meeting was convened on May 7, 2014, at the U.S. Attorney's Office. The Rio Arriba delegation consisted of Sheriff Tommy Rodella, New Mexico State Representative Debbie Rodella, former Rio Arriba County Commissioner Felipe Martinez, Rio Arriba Sheriff's Office Public Information Officer Jean-Claude dei Fiori Arnold (also known as Jake Arnold) as well as County Clerk Moises Morales and County Attorney Ted Trujillo, both of whom attended telephonically. Mr. Arnold's Affidavit concerning the background of the meeting and what transpired at the meeting is attached as Exhibit 1. As set forth in Mr. Arnold's Affidavit, U.S. Attorney Martinez expressed his unhappiness at Sheriff Rodella's refusal to deputize/commission any USFS law enforcement personnel by threatening Sheriff Rodella with arrest and/or prosecution. Mr. Rodella will call Damon Martinez as a witness at trial in order to elicit his concession that he threatened Mr. Rodella with arrest and prosecution. This testimony is relevant to demonstrate the improper motive and bias of U.S. Attorney Martinez because personal animosity between a prosecutor and a criminal defendant may be probative of an improper motive by the prosecutor. *See Phelps v. Hamilton*, 59 F.3d 1058, 1067 (10th Cir. 1995) (Noting that ill-will between parties does not necessarily demonstrate a bad faith prosecution, but "that is not to say that personal animosity—if shown to exist—may not be probative of an improper motive.")

# ARGUMENT

A United States Attorney can be disqualified from prosecuting a case if he or she has a personal or political relationship to a case. *See* 28 C.F.R. § 45.2. Specifically, 28 C.F.R. § 45.2 states:

> (a) Unless authorized under paragraph (b) of this section, no employee shall participate in a criminal investigation or prosecution if he has a personal or political relationship with:
>
> (1) Any person or organization substantially involved in the conduct that is the subject of the investigation or prosecution; or
>
> (2) Any person or organization which he knows has a specific and substantial interest that would be directly affected by the outcome of the investigation or prosecution.

"The disqualification of Government counsel is a drastic measure and a court should hesitate to impose it except where necessary." *United States v. Bolden*, 353 F.3d 870, 878 (10th Cir. 2003) (quoting *Bullock v. Carver*, 910 F. Supp. 551, 559 (D. Utah 1995)). The disqualification of government counsel, however, has been allowed in certain circumstances, particularly where there is a conflict of interest. *See e.g., Young v. United States,* 481 U.S. 787, 807, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987) (actual conflict of interest because appointed prosecutor also represented another party); *United States v. Heldt,* 668 F.2d 1238, 1275 (D.C.Cir. 1981) (bona fide allegations of bad faith performance of official duties by government counsel in a civil case); *United States v. Prantil,* 764 F.2d 548, 552-53 (9th Cir. 1985) (prosecutor who will act as a witness at trial). Under these circumstances, "the district court must make attorney-specific factual findings and legal conclusions before disqualifying attorneys from the USA's office." *Bolden*, 353 F.3d 870, 879 (citing *Fullmer v. Harper,* 517 F.2d 20, 22 (10th Cir. 1975). The court in *Fullmer* held that "the trial court should ... make specific findings and conclusions

[before disqualification], to the end that this court will then have a record before it which will permit a meaningful review, should review be sought." *Fullmer,* 517 F.2d 20, 22.

In this case, United States Attorney Damon P. Martinez has a personal and political relationship to this case. He personally threatened arrest and prosecution if Mr. Rodella did not comply with his demands to deputize federal law enforcement agents as Rio Arriba County deputy sheriffs. This places U.S. Attorney Martinez squarely in the middle of the underlying conduct in this case, and he has a specific interest in prosecuting Mr. Rodella in order to remove him as sheriff.

U.S. Attorney Martinez's motive and bias to remove Mr. Rodella as sheriff is relevant and probative testimony in order for the jury to understand that the charges are politically trumped up in order for federal law enforcement to obtain a more federally compliant and subservient sheriff.

**I.      Damon P. Martinez should be disqualified because he will act as a witness at trial.**

In cases such as this one, the district court has absolute discretion to permit a defendant to call the prosecutor as a witness if the prosecutor "possesses information vital to the defense." *United States v. Wooten*, 377 F.3d 1134, 1143 (10th Cir. 2004) (quoting *United States v. Troutman*, 814 F.2d 1428, 1439-40 (10th Cir. 1987)). Where a prosecutor's testimony is not vital to the defense, the district court may properly deny the request. *See, e.g., Troutman,* 814 F.2d at 1439-40 (finding the district court properly denied a motion to disqualify where the attorney's testimony was not vital to the defense because the evidence could be obtained through other witnesses); *see also, e.g., United States v. Watson,* 952 F.2d 982, 986–87 (8th Cir.1991)

4

(stating a defendant seeking to call a prosecutor as a witness must demonstrate the prosecutor's testimony is vital to the case and that the defendant will be unable to present the same or similar facts from another source). In order to call a prosecutor as a witness in his case, "a defendant has an obligation to exhaust other available sources of evidence before a court should sustain [his] efforts to call a participating prosecutor as a witness." *Prantil,* 764 F.2d 548, 551

In *United States v. Troutman*, 814 F.2d 1428, 1439-40 (10th Cir. 1987), the Tenth Circuit upheld the district court's denial of a motion to disqualify a prosecutor because the court held that the prosecutor's testimony was not vital to the defense. In *Troutman*, the defendant sought to disqualify the New Mexico Attorney General and the Deputy Attorney General, who were approved to act as Special Assistant United Stated Attorneys for the prosecution of criminal charges against the Defendant. *Id.* at 1436. The defendant argued that the prosecutors had a conflict of interest because the Attorney General and his staff would be called as material witnesses in the case based upon the "Attorney's General's actions and recommendations in regard to the awarding of the contract were made in the course of public meetings and in widely-circulated correspondence." *Id.* at 1440.

The Tenth Circuit upheld the district court's denial of the defendant's motion to disqualify the prosecutors because there were a number of other potential witnesses at these public meetings and who were privy to the correspondence. *Id.* The court reasoned that the potential witnesses possessed the same knowledge concerning the actions and recommendations of the Attorney General regarding the awarding of this contract, as there were no actions other than the public actions. *Id.* The court further held that it appeared the Attorney General did not have much effect on the timing of the award of the contract, which was at issue in the case, and

there appeared to be more appropriate witnesses with more knowledge on that subject than the prosecutors. *Id*. Thus, the Tenth Circuit upheld the decision that the witnesses' testimonies were not vital to the defense. *Id.*

Although it is a Ninth Circuit case, *United States v. Prantil,* 764 F.2d 548 (9th Cir. 1985) is relevant and similar to the circumstances of this case. In *Prantil,* the defendant was a criminal defense attorney charged with harboring the fugitive husband of one of his clients. The defendant attorney had negotiated directly with Assistant U.S. Attorney Gorder for the fugitive's surrender. Later, the defendant attorney was charged with various offenses arising from his aid to the fugitive and his communications to the Assistant U.S. Attorney. The defendant sought to call Assistant U.S. Attorney Gorder as a witness at trial, but the trial court declined to allow it. The Ninth Circuit Court of Appeals reversed, holding that the trial court abused its discretion in denying the defendant's motion for substitution of an alternative prosecutor. The court concluded: "[A]lthough he never took the stand, Mr. Gorder was a witness to, and indeed a participant in, some aspect of all of the events alleged in the indictment." *Id.* at 551. The court determined that Mr. Gorder's testimony was not duplicative. "Rather, the defendant sought Mr. Gorder's testimony as to his knowledge of the facts vital to the defendant's defense to the charge of being an accessory after the fact." *Id.* at 552. Accordingly, the court concluded that the defendant had shown a compelling need to call the participating prosecutor as a witness. *Id.*

In the instant case, much like the defendant in *Prantil*, U.S. Attorney Martinez was a direct participant in a meeting with Sheriff Rodella. He directly threatened Sheriff Rodella with arrest and prosecution, a threat which he later made good on. U.S. Attorney Martinez is a vital witness as he is the one who made these direct threats to Sheriff Rodella. Unlike in *Troutman*,

6

although there were other individuals present, the rules of evidence do not allow the other witnesses to testify to statements made by U.S. Attorney Martinez to Sheriff Rodella. This case is highly distinguishable from *Troutman* because U.S. Attorney Martinez is the person with the most knowledge of his own statements at that meeting and is the only person who can testify to such. U.S. Attorney Martinez is a vital witness and his testimony is necessary to the defense to show bias and motive for the Mr. Rodella's arrest and prosecution. Because there is a compelling interest for his testimony, U.S. Attorney Martinez should be disqualified from the prosecution of this case so that he may be called as a witness at trial.

      **II.**    **Because U.S. Attorney Martinez will be called as a witness at trial, the entire United States Attorney's Office should be disqualified because all of the attorneys in the United States Attorney's Office are under the power and control of U.S. Attorney Martinez.**

As set forth in detail above, this Court can disqualify prosecutors from a case when there is a conflict of interest, such as the conflict that exists in this case. While government counsel have been disqualified before, the Courts have noted that "because disqualifying government attorneys implicates separation of powers issues, the generally accepted remedy is to disqualify 'a specific Assistant United States Attorney ..., not all the attorneys in' the office. *United States v. Bolden*, 353 F.3d 870, 879 (10th Cir. 2003) (quoting *Crocker v. Durkin*, 159 F. Supp. 2d 1258, 1284 (D. Kan. 2001)).

In *Bolden,* the plaintiff entered into a plea agreement containing language stating that it was in the sole discretion of the United States to evaluate his cooperation in determining whether a motion for downward departure from the Sentencing Guidelines or a reduction of sentence was appropriate. *Bolden*, 353 F.3d 870, 873. The plaintiff then sent a letter to the U.S. Attorney's Office in the Western District of Oklahoma, requesting that the Government move for a

reduction of his sentence. *Id.* An Assistant United States Attorney notified Bolden that the downward departure committee there had elected not to seek such reduction. *Id.* The plaintiff then moved to compel the Government to file a motion for reduction of sentence, alleging multiple instances of bad faith. *Id.* He also filed a motion to recuse the entire U.S. Attorney's Office in the Western District of Oklahoma, and the district court entered an order disqualifying the entire Office, directing it to arrange for an Assistant United States Attorney from another district to respond to the original motion to compel. *Id.* The Tenth Circuit, however, reversed the disqualification order and explained:

> [C]ourts have allowed disqualification of government counsel in limited circumstances. *See, e.g., Young v. United States,* 481 U.S. 787, 807, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987) (actual conflict of interest because appointed prosecutor also represented another party); *United States v. Heldt,* 668 F.2d 1238, 1275 (D.C.Cir.1981) (bona fide allegations of bad faith performance of official duties by government counsel in a civil case); *United States v. Prantil,* 764 F.2d 548, 552–53 (9th Cir.1985) (prosecutor who will act as a witness at trial).... In light of these principles, every circuit court that has considered the disqualification of an entire United States Attorney's office has reversed the disqualification.

*Id.* at 878–79. The Court in *Bolden* further stated that "we are strongly influenced by the fact that we can only rarely—if ever—imagine a scenario in which a district court could properly disqualify an entire United States Attorney's office. Indeed, the disqualification of Government counsel is a drastic measure." (citing *Bullock v. Carver,* 910 F.Supp. 551, 559 (D.Utah 1995)) (internal citations omitted).

The Court went on to state that it was reversing the district court's decision for several reasons. Specifically, the Tenth Circuit stated that:

> First, the district court wrote an extremely short disqualification order, containing a paucity of facts to indicate either misconduct in the representation or any alleged conflicts of interest on the part of the *entire* USA's office. *Cf. Collins,* 920 F.2d at

8

628 (requiring the district court to make substantial findings on the record to justify disqualification of defense counsel). Indeed, the order itself discounts several probable bases for disqualifying even individual attorneys in the office. It reads, "[R]egardless of whether [AUSA] Farber may become a witness or may have an actual conflict of interest, the Court finds that the government's response to Mr. Bolden's motion to compel should be prepared by counsel from another United States Attorney's office" to preserve objectivity. Thus, rather than extensively analyzing any alleged misconduct in the representation or conflicts of interest on the part of the entire USA's office, the district court merely concluded that the USA's office was "too close to the case to advocate effectively the government's position." Finally, the district court did not indicate that it even considered the separation of powers concerns implicated by the disqualification order.

*Bolden*, 353 F.3d 870, 879.

Although it is generally disfavored, the disqualification of the entire United States Attorney's Office is warranted in this case. As illustrated above, U.S. Attorney Martinez is a vital witness to the defense's case. Since he is the U.S. Attorney, all Assistant United States Attorneys work under his authority and control. 28 U.S.C.A. § 541 states that:

> **(a)** The President shall appoint, by and with the advice and consent of the Senate, a United States attorney for each judicial district.
> **(b)** Each United States attorney shall be appointed for a term of four years. On the expiration of his term, a United States attorney shall continue to perform the duties of his office until his successor is appointed and qualifies.
> **(c)** Each United States attorney is subject to removal by the President.

Assistant United States Attorney's work under the direct supervision and control of the United States Attorney appointed for each district. Under 28 U.S.C.A. § 542(a), "[t]he Attorney General may appoint one or more assistant United States attorneys in any district when the public interest so requires." *See also United States v. Baldwin*, 541 F. Supp. 2d 1184, 1196 (D.N.M. 2008) ("United States Attorneys supervise and direct the Assistant United States Attorneys assigned to their offices").

Because he will be called as a witness at trial, U.S. Attorney Martinez cannot also

9

prosecute this case. Unlike the suggestions in *Bolden*, disqualifying only U.S. Attorney Martinez does not cure the substantial conflicts of interest that exist in this case. There is not another attorney in U.S. Attorney Martinez' office that could prosecute the case without being subject to the authority and control of U.S. Attorney Martinez. The entire office in this case is affected by U.S. Attorney Martinez' bias and motive, since their job is to assist U.S. Attorney Martinez in the prosecution of cases, and he remains the supervisor of the Assistant United States Attorney's assigned to this case. A separation of powers concern in this case is not sufficient to eliminate the conflict of interest caused by U.S. Attorney Martinez' direct involvement in the case and his status as a witness. The remedy is simple – order the recusal of the U.S. Attorney's Office for the District of New Mexico and have the Department of Justice appoint a different U.S. Attorney to independently prosecute this case.

## CONCLUSION

Mr. Rodella requests an evidentiary hearing to elicit the facts and the statements made by U.S. Attorney Martinez on May 7, 2014. After it is established that U.S. Attorney Martinez made threats against Sheriff Rodella, Mr. Rodella will request a trial subpoena for U.S. Attorney Martinez . U.S. Attorney Martinez is a vital witness to the defense and thus should be issued a subpoena which will compel his testimony. Because U.S. Attorney Martinez will be a witness, he cannot also act as the prosecutor in this case. Thus, these facts warrant the disqualification of not only U.S. Attorney Martinez but the entire United States Attorney's Office for the District of New Mexico from the prosecution of this case.

<pre>
                              Respectfully submitted,

                              /s/ Robert J. Gorence
                              Robert J. Gorence
                              Gorence & Oliveros, P.C.
                              1305 Tijeras Avenue, NW
                              Albuquerque, NM 87102
                              Email:  gorence@golaw.us
                              Phone:  (505) 244-0214
                              Fax:  (505) 244-0888
</pre>

**CERTIFICATE OF SERVICE**

     I hereby certify that a true and accurate copy of the foregoing pleading was emailed to counsel of record by CM/ECF this 4th day of September, 2014.

/s/ Robert J. Gorence
Robert J. Gorence