IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | CRIMINAL NO. 14-2783 JB |
| | ) | |
| vs. | ) | |
| | ) | |
| **THOMAS R. RODELLA**, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION TO DENY REQUEST

The United States hereby moves to deny Defendant's Request for Jury to Be Drawn from Northern New Mexico Jury Panel (Doc. 39) as contrary to the Jury Selection Plan for the United States District Court for the District of New Mexico, procedurally improper and unsupported by legal authority, and as an attempt to capitalize on the media saturation of Defendant's requested jury pool.

**I.  Defendant's Request is Contrary to the Jury Selection Plan.**

In accordance with the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861, *et seq.*, the United States District Court for the District of New Mexico proposed a Jury Selection Plan (the "Plan") and adopted that plan following its approval by the Judicial Council of the Tenth Circuit on December 1, 2008. *See* NM R USDCT Jury Plan. The Plan establishes three petit jury divisions designated as the Northern, Central and Southern Divisions, and comprised of the various counties in the respective areas of New Mexico. *See Id.* at § 2. Critically, the Plan specifies that the jurors "will be drawn for each place of *holding court*." *Id*.

In his request, Defendant acknowledges that the federal courthouse in Santa Fe is not available at the time of trial. He does not request that court be held in Santa Fe. Instead

Defendant requests that the trial be held in Albuquerque but requests that the jurors be drawn from the Northern Division jury panel. Defendant therefore requests jurors to be drawn from a division other than the place of holding court, which is the clear mandate of the Plan. *Id*. Notably, the Plan contains no provision for deviations from its clear policy.

II. **Defendant Has Not Complied with the Statutory Procedure for Challenging Jury Selection.**

There is a process for challenging the selection of a jury pool. Title 28 U.S.C. § 1867(a) provides:

> In criminal cases, before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury.

§ 1867(a). Moreover, § 1867(e) provides, "The procedures prescribed by this section shall be the *exclusive* means by which a person accused of a Federal crime . . . may challenge any jury on the ground that such jury was not selected in conformity with the provisions of this title." 28 U.S.C. § 1867(e) (emphasis added). Defendant ignores this exclusive challenge process entirely. He cites neither authority nor legal basis in support of his request.

III. **Defendant Has No Substantive Right to the Relief He Requests.**

To justify the inconvenience and expense of the deviation of bringing a Northern Division jury to travel to a Central Division courthouse, Defendant states that the underlying events took place in Rio Arriba County, which is in the Northern Division. He additionally requests a jury of his peers from the Northern Division jury panel, implying that Defendant feels that jurors drawn from the Central or Southern Divisions are not his peers.

The location of the underlying events is not relevant in this context. Venue is proper in the entire District of New Mexico. *See* Federal Rule of Criminal Procedure 18. The Plan makes

the jury pool contingent on the place of holding court, not the site of the crime. Neither the Rules nor the Plan supply Defendant with grounds to object to a jury panel drawn from the Central Division.

Defendant's own definition of his peer group is not relevant either. To successfully challenge the community composition of a jury pool, a defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process. *Duren v. Missouri*, 439 U.S. 357, 364 (1979). The Tenth Circuit has explained that a group is only distinctive if:

> 1) the group is defined by a limiting quality (i.e. the group has a definite composition such as race or sex); 2) a common thread or basic similarity in attitude, idea, or experience runs through the group; and 3) a community of interests exists among members of the group such that the group's interest cannot be adequately represented if the group is excluded from the jury selection process.

*United States v. Green*, 435 F.3d 1265, 1271 (10th Cir. 2006) (adopting test previously used by the 7th, 8th and 9th Circuits).

To the extent that Defendant feels that northern New Mexicans, or even citizens of Rio Arriba County, comprise a distinctive group, that theory is foreclosed by Tenth Circuit precedent. Geographic location does not define a distinctive group. *Id*. at 1272 (holding that persons who live in rural counties and do not vote do not constitute a distinctive group for Sixth Amendment purposes). *See also United States v. Test*, 550 F.2d 577, 582 n.4 (10th Cir. 1976) ("Geographical imbalance does not violate the statutory and constitutional requirement that the jury panel represent a fair cross section of the community."). Defendant has not articulated any basis for objecting to a Central Division jury panel.

## IV.  The Northern Division Jury Pool

In requesting a Northern Division jury pool, Defendant is seeking to tap into a jury pool that has been inundated with sustained coverage by local news media.  Naturally, news media in northern New Mexico, and especially in Rio Arriba County, have paid close attention to this case, because it involves the indictment of the elected sheriff of Rio Arriba County.  Additionally, Defendant is married to longtime State Representative Debbie Rodella, a fact which contributes to the media coverage.  Of course, media coverage itself is unremarkable; but in this instance it raises several concerns.

First, Defendant now requests that the Court bring to Albuquerque dozens of jurors from the Northern Division, when those are the jurors who are most likely to be disqualified on the basis of their acquaintance with Defendant or Debbie Rodella or other deputies involved in this case or simply on the basis of their exposure to the extensive media coverage on a matter of local interest.  If Defendant feels that a Central Division jury pool cannot give him a fair trial, the appropriate and natural remedy would be to move the trial to the U.S. District Courthouse in Las Cruces and to draw jurors from the Southern Division, where coverage on this case has been minimal.

Second, along with media coverage being voluminous, some amount of the media coverage of this case has been erroneous.  Several examples of erroneous facts follow.[1]  In an article dated August 27, 2014, the media reported that the victim "didn't have a valid driver's license the day of the incident," and therefore "had a motive and reason to flee."  *See* Exhibit 1.  This is objectively false.  MVD records indicate that M.T. had a valid driver's license issued on January 16, 2013, which will expire on November 25, 2016.  Following the issuance of his 2013

---

[1] These statements are isolated because of their clarity.  No inference should be made that the United States is somehow ratifying any other media statement simply because that statement is not mentioned specifically in this filing.

driver's license, there have been no actions or incidents on M.T.'s driving record that would affect, even temporarily, the validity of his license. Defendant, through his position at the Rio Arriba Sheriff's Office, has had access to M.T.'s driver's license data all along.

The same article asserts the existence of "FBI DNA analysis which completely refutes [M.T.'s] assertion that a badge was used as a weapon to scar his face[.]" The FBI DNA analysis, in its entirety, has been filed previously. *See* Doc. 34-4. There is no objective way to characterize the report as a "complete refutation" of the victim's account of events.

Furthermore, the same article states that M.T. "said he never was injured." The United States is not aware of M.T. ever denying injury as a result of this incident. Indeed, in his inmate screening interview, after Defendant sent M.T. to jail, M.T. complained of suffering back and thumb pain. His thumb remains injured even six months after the incident. The inmate screening interview was produced to defense counsel two days before publication of defense counsel's statement.

The blanket of media coverage is thickest in the northern counties of New Mexico, where the northern edition of the Albuquerque Journal, the Santa Fe New Mexican, and the Rio Grande SUN are widely read. And yet this is the jury pool that Defendant requests. There appears to be no particular outpouring of media coverage on this case in the Southern Division. If Defendant can show that he would not receive a fair trial from a Central Division jury pool, the natural remedy would be to move the trial to the U.S. District Courthouse in Las Cruces and to draw jurors from the Southern Division, where coverage on this case has been minimal.

For the foregoing reasons, the United States requests that this Court deny Defendant's request to draw jurors from the Northern Division, and for other relief as this court may deem just and proper.

Respectfully submitted,

DAMON P. MARTINEZ
United States Attorney

*/s/ Filed Electronically*
TARA C. NEDA
JEREMY PEÑA
Assistant United States Attorneys
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274

I HEREBY CERTIFY that on September 9, 2014, I filed the foregoing electronically through the CM/ECF system, which caused the below counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

Robert J. Gorence, Attorney for Thomas R. Rodella

*/s/ Filed Electronically*
Jeremy Peña, Assistant U.S. Attorney