IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | CRIMINAL NO. 14-2783 JB |
| | ) | |
| vs. | ) | |
| | ) | |
| **THOMAS R. RODELLA**, | ) | |
| | ) | |
| Defendant. | ) | |

## AMENDED MOTION IN LIMINE TO INTRODUCE EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)[1]

The United States hereby notifies Defendant of its intention to introduce during its case-in-chief at trial of this matter the evidence described below. The United States submits that all such evidence is relevant to the issues to be tried before the jury in this case, both as direct evidence of the charges in the indictment herein and pursuant to the provisions of Federal Rules of Evidence 401, 402, 403, and 404. The United States, therefore, respectfully requests that the Court make appropriate pre-trial findings in support of the admissibility of such evidence.

## FACTUAL BACKGROUND

In this case, Defendant is alleged to have unlawfully pursued and seized M.T. as a result of a driving encounter on Highway 399. Defendant, riding in his personal Jeep SUV with his son, rapidly approached M.T.'s Mazda from behind and began tailgating and flashing headlights at M.T. M.T. pulled over to the side of the road, at which time Defendant's Jeep stopped a short distance in front of M.T.'s Mazda. Defendant and his son, both wearing plain clothes, exited the

---

[1] This Motion in Limine is amended to include additional acts involving Lisa Gonzales, another motorist who endured an unreasonable traffic stop as a result of Defendant's road rage. Ms. Gonzales contacted the U.S. Attorney's Office after learning of the incidents described in the original motion in limine (Doc. 46).

Jeep and approached M.T. in a threatening manner, gesturing as if to invite a physical confrontation. M.T., not knowing that Defendant was the Sheriff of Rio Arriba County and fearing for his safety, drove away from Defendant. A pursuit and confrontation ensued.

## **LEGAL BACKGROUND**

The introduction of evidence of other wrongs is governed by Federal Rule of Evidence 404(b) and the factors set forth in *Huddleston v. United States*, 485 U.S. 681 (1988). Rule 404(b) provides:

> (1) Prohibited Uses. Evidence of a crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b).

The United States Supreme Court has held that for evidence of other wrongs to be admissible: 1) the evidence must be offered for a proper purpose; 2) it must be relevant; 3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice; and 4) upon request, the trial court must instruct the jury that the other-acts evidence is to be considered only for the proper purpose for which it was admitted. *See Huddleston*, 485 U.S. at 691-92; *see also United States v. Morris*, 287 F.3d 985, 990 (10th Cir. 2002).

Similar acts may be introduced to support the intent element required in a criminal case. Proof that a defendant, who denies knowledge or criminal intent, has previously taken a similar action is evidence that the defendant acted knowingly or with a specific intent and is admissible. *See United States v. Moran*, 503 F.3d 1135, 1145 (10th Cir. 2007) (recognizing that evidence of a prior conviction for knowing possession of a firearm is admissible to prove knowing possession of a firearm in the instant case) (quoting *United States v. Queen*, 132 F.3d 991, 996

(4th Cir. 1997)).  Since the "similar act decreases the likelihood that the charged offense was committed with innocent intent," the evidence is admissible.  *Queen*, 132 F.3d at 996.  While evidence of another wrongful act "must be similar to the crime charged… it need not be identical."  *United States v. McGuire*, 27 F.3d 457, 461 (10th Cir. 1994); *United States v. Gutierrez*, 696 F.2d 753, 755 (10th Cir. 1982) (evidence of other crimes that share a "signature quality" may be admitted).  Similarity may be shown through "physical similarity of the acts or through the 'defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic offense and charged offenses.'"  *Queen*, 132 F.3d at 996 (quoting *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir.1978).

Rule 404(b) is an inclusive rule and the evidence is to be admitted as long as it proves something other than criminal propensity and bad character, even if the evidence also demonstrates propensity.  *See Moran*, 503 F.3d at 1145 (*citing United States v. Cherry*, 433 F.3d 698, 701 (10th Cir. 2005) and *United States v. Tan*, 254 F.3d 1204, 1208 (10th Cir. 2001)).  Here, the evidence proffered by the United States should be admitted under Rule 404(b) as it is relevant evidence offered for a proper purpose with a probative value that outweighs any perceived prejudice.

## **SPECIFIC ITEMS ADMISSIBLE PURSUANT TO RULE 404(b)**

The events that the United States intends to present pursuant to Federal Rule of Evidence 404(b) include the following:

**1.     Defendant's January 2014 Display of Road Rage During an Unlawful Stop**

The United States intends to present evidence that, only about two months before the incident with M.T., Defendant engaged in highly similar conduct towards Yvette Maes, a 52-year-old woman, in Rio Arriba County.  Maes is expected to testify that, while driving home one

night, a vehicle rapidly approached her own from behind and began tailgating her – just like Defendant did towards M.T. on the day in question. She slowed down to let the other vehicle pass but the vehicle continued to tailgate her for some time – just like Defendant did towards M.T. on the day in question. When the other vehicle finally passed Maes, she flashed her high beam headlights at it. The vehicle then activated emergency lights. Maes pulled to the side of the road, and the vehicle that had been following her pulled over a short distance in front of Maes's vehicle – just like Defendant did towards M.T. on the day in question. Defendant exited the vehicle, appearing visibly upset, and approached Maes – just like Defendant did towards M.T. on the day in question.

Defendant asked Maes what she thought she was doing by flashing her lights at him. Defendant told Maes that flashing high beams was a form of road rage. Maes told Defendant that his tailgating her was also a form of road rage. Defendant asked Maes why she didn't just pull over, and Maes told her that it was dark and she could not tell who was driving behind her. Defendant said that he was responding to an emergency. Maes said that if there was an emergency, Defendant should have turned on his emergency lights and passed her. Defendant asked Maes if she should go to jail. Maes said that if Defendant thought it was appropriate, then Defendant should take her to jail. Defendant walked back to his car and drove away.

The first *Huddleston* factor is that the evidence is offered for a proper purpose. The United States intends to present evidence of the Maes encounter to show motive, intent, plan, knowledge, absence of mistake, and lack of accident. The Maes encounter shows Defendant's motive and intent in pursuing M.T., which was to express his road rage and to punish any disrespect he perceived from citizens of Rio Arriba County. Maes flashed her lights at Defendant, which he treated as disrespect that must be punished; similarly, when M.T. pulled

4

over to let Defendant pass, M.T. made an open-hand gesture as if to say, "what the heck?" which Defendant treated as disrespect that must be punished. The Maes encounter shows that Defendant's motive and intent was to force M.T. to submit to Defendant's authority and not to enforce any traffic law.

The Maes encounter shows that Defendant has a plan to compel citizens to submit to his authority. His plan is to drive in a threatening and provocative manner towards other motorists (in both cases, prolonged tailgating), and if he succeeds in provoking any disrespectful act (in Maes' case, flashing her lights; in M.T.'s case, driving away) he will force the motorist to submit through a display of his authority.

The Maes encounter shows that Defendant knew that he was expressing road rage toward M.T. and knew that M.T. did not know that Defendant was actually the sheriff. Maes and Defendant had a discussion about how tailgating and flashing lights were both expressions of road rage, which proves that Defendant knew what he was doing when he did both towards M.T. Furthermore, Maes informed Defendant that it was not apparent that he was the sheriff when he tailgated her without his emergency lights on. This proves that Defendant knew M.T. could not tell that Defendant was the sheriff when Defendant tailgated and pursued M.T. For the same reasons, the Maes encounter shows absence of mistake and lack of accident.

The second *Huddleston* factor is that the evidence is relevant. To determine the relevance of a prior bad act, courts consider "the similarity of the prior act with the charged offense." *United States v. Brooks*, 736 F.3d 921, 940 (10th Cir. 2013). In weighing the similarity of the other acts evidence to the crimes at issue, the Tenth Circuit focuses on several non-exclusive factors: "(1) whether the acts occurred closely in time; (2) geographical proximity; (3) whether the charged offense and the other acts share similar physical elements; and (4)

whether the charged offense and the other acts are part of a common scheme." *United States v. Ugalde-Aguilera*, 554 Fed.Appx. 728, 733 (10th Cir. February 7, 2014) (quoting *United States. v. Davis*, 636 F.3d 1281, 1298 (10th Cir. 2011)). Each of those factors weighs in favor of admission of the Maes encounter. Temporally, the two incidents are separated by only about three months. Geographically, both occurred on a roadway in Rio Arriba County. The physical elements of the two encounters are highly similar, with Defendant tailgating both Maes and M.T. without revealing his law enforcement affiliation; Defendant employing the unorthodox behavior of parking in front of Maes's vehicle and M.T.'s vehicle; and Defendant angrily approaching each driver. Finally, both traffic encounters, as discussed above, are part of a common plan that Defendant has to require the citizens of Rio Arriba County to submit to his authority.

The third *Huddleston* factor is that the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice. It is difficult to imagine Defendant suffering prejudice from admission of the Maes encounter. The content is not inflammatory and does not invoke any foreseeable biases. The testimony will come from one person whom the jury will be free to credit or discount as it sees fit.

The fourth *Huddleston* factor is the availability of a limiting instruction. The United States has included an appropriate limiting instruction in jury instructions sent to the defense, which will be filed in the near future.

Defendant's statements to Maes are admissible as admissions by a party-opponent pursuant to Rule 801(d)(2). The surrounding circumstances, including Defendant's actions leading up to his statements, are admissible to supply context for the admissions. But as an additional theory of admissibility, the United States hereby requests findings that the Maes

6

encounter is admissible pursuant to Rule 404(b) as evidence of motive, intent, plan, knowledge, absence of mistake and lack of accident.

**2.      Defendant's March 2013 Display of Road Rage During an Unlawful Stop**

After the United States filed its initial 404(b) notice (Doc. 35), the United States learned of another witness who will testify pursuant to Rule 404(b). Jacob Ledesma, a 40-year-old engineering consultant who lives in Las Cruces, had a very similar encounter with Defendant on or about March 28, 2013. On that day, Ledesma was driving at the speed limit with his family on Highway 84 in Rio Arriba County, when a brown SUV with no law enforcement markings turned on to the highway in front of oncoming traffic including Ledesma. The brown SUV continued slowly, substantially slowing traffic. Being in a zone where passing was permitted, Ledesma moved into the other lane and passed the brown SUV. At that point the brown SUV activated emergency lights concealed within its front grill. Ledesma pulled over to the side of the road and the brown SUV pulled over behind him.

Defendant stepped out of the brown SUV and approached Ledesma, wearing plain clothes and not displaying any badge of office. Defendant said to Ledesma, "Do you know who I am?" Ledesma indicated that he did not. Defendant pulled out his driver's license and handed it to Ledesma. Ledesma said, "So? I have a driver's license, too." At that point Defendant became angry, reached into his pocket, pulled out a badge and threw it at Ledesma. Ledesma said something like, "I don't know who you are, you're not in a marked police unit, so if you don't get a marked police unit here immediately, I'm going to continue on my way." Defendant summoned a deputy, who arrived in a marked unit and wrote Ledesma tickets for passing in a no-passing zone and failing to sign his registration. When Ledesma protested to the deputy, the deputy replied, "He's my boss." Two weeks later the tickets were dismissed. Ledesma has

7

visited the scene since then and confirmed that passing was not prohibited for that stretch of highway.

The first *Huddleston* factor is that the evidence is offered for a proper purpose. The United States intends to introduce evidence of the Ledesma encounter as proof of motive, intent, plan, knowledge, absence of mistake, and lack of accident. The Ledesma encounter shows that Defendant's motive and intent in pursuing M.T. were to harass and punish an innocent motorist, rather than to protect public safety or enforce traffic laws. In both encounters Defendant sought to punish the innocent motorists for not recognizing Defendant as sheriff – even though Defendant wore plain clothes and drove an unmarked vehicle. The two encounters show a common plan to cause the citizens of Rio Arriba County to fear Defendant, by making (or trying to make) traffic stops in unmarked vehicles and trying to make citizens recognize Defendant despite his lack of display of law enforcement status. The common plan includes Defendant's filing of charges that he does not intend to prosecute, as Ledesma's tickets were dismissed about as quickly as the felony charges that Defendant leveled against M.T. The Ledesma encounter shows that Defendant knows that not everyone who travels in or through Rio Arriba County instantly recognizes him as sheriff. And it shows that Defendant did not make a mistake or accidentally forget that his identity was not apparent to all motorists when he pursued M.T. in a private Jeep.

As to the second *Huddleston* factor, the Ledesma encounter is relevant because Defendant's use of his badge as a weapon or projectile while conducting an unlawful traffic stop when not in uniform has a signature quality that appears in both encounters. "Elements relevant to a 'signature quality' determination include the following: geographic location; the unusual

quality of the crime; the skill necessary to commit the acts; or use of a distinctive device." *United States v. Shumway*, 112 F.3d 1413, 1420 (10th Cir.1997) (citations omitted).

The events have many unusual similarities. Both involve Defendant's effectuation of a traffic stop while driving in a vehicle other than a marked police vehicle; and in both circumstances Defendant displayed a bizarre sensitivity about being recognized as the sheriff despite his plain clothes and unmarked vehicle. Additionally, in each situation Defendant fabricated a traffic violation to justify the stop: with Ledesma, Defendant falsely stated they were in a no-passing zone; and with M.T., Defendant falsely claimed that M.T. drove recklessly. Both involve a special characteristic, namely, status as a law enforcement officer. The geographic locations are very similar: both occurred on a rural road in Rio Arriba County. And finally, both involve aggressively disrespectful use of Defendant's badge.

All together, these factors show a high degree of similarity, while in other cases the Tenth Circuit has approved admission of similar acts carrying only one similar factor. *See, e.g., United States v. Smalls*, 752 F.3d 1227, 1238-39 (10th Cir. April 28, 2014) (finding that a defendant's statement about using asthma to cover up a homicide constituted signature evidence); *United States v. Gutierrez*, 696 F.2d 753, 755 (10th Cir.1982) (finding that defendant's driving the getaway car and using her children as cover during the getaway in two robberies constituted signature quality evidence).

The third *Huddleston* factor is that the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice. It is difficult to imagine Defendant suffering prejudice from admission of the Ledesma encounter. The content is not inflammatory and does not invoke any foreseeable biases. The testimony will come from one person whom the jury will be free to credit or discount as it sees fit.

9

The fourth *Huddleston* factor is the availability of a limiting instruction. The United States has included an appropriate limiting instruction in jury instructions sent to the defense, which will be filed in the near future.

**3.      Victim's Lack of Motive to Flee**

The defense in this matter is expected to claim that victim M.T. fled from Defendant knowing that Defendant was the sheriff. To refute this claim, the United States intends to introduce evidence that M.T., at the time of the incident:

   a) had no criminal history;

   b) had no warrants out for his arrest;

   c) had not been consuming alcohol or drugs;

   d) had no alcohol, drugs or other contraband with him in his vehicle;

   e) is a full citizen of the United States;

   f) lawfully possessed his vehicle; and

   g) had a valid driver's license.

Rule 404(b) does not apply to the above facts because they do not constitute "a crime, wrong, or other act," committed by any person. Nor are the facts extrinsic to the crimes charged. Rather, these facts together constitute the circumstances under which M.T. operated on the actual day in question. The United States asks for Rule 404(b) findings, then, merely out of an abundance of caution: to clarify that the evidence of M.T.'s lack of motive to flee from law enforcement is not offered to show M.T.'s good character or actions in conformity with his good character, but rather to show M.T.'s motive, intent and knowledge, each of which is an approved 404(b) purpose.

The United States offers each of these facts to show that M.T.'s motive and intent in fleeing from Defendant was not any need to avoid encounters with law enforcement but rather fear for his physical safety. The defense is expected to claim that M.T. fled from Defendant in order to avoid an encounter with law enforcement, but each fact noted above shows that M.T. had no reason to fear law enforcement. He was not doing or transporting anything illegal and his status as a citizen and driver were not in question.

For the same reason, each fact also shows M.T.'s knowledge. The defense theory rests on a conjecture that M.T. knew that a law enforcement officer was pursuing him on the day in question. But the opposite is true. M.T. had no reason to flee from law enforcement. The fact that he actually did flee from Defendant tends to prove that M.T. did not know Defendant's status as sheriff during the pursuit. Each fact is independently admissible as evidence of M.T.'s state of mind throughout the pursuit and encounter. *See Huddleston*, 485 U.S. at 685 ("Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct.").

Motive and knowledge are enumerated purposes justifying admission of evidence pursuant to Rule 404(b). By its terms, Rule 404(b) applies to all persons and not solely to defendants (or victims). This evidence would cause no prejudicial effect against Defendant because it does not pertain to Defendant's character. *See United States v. Krezdorn*, 639 F.2d 1327, 1333 (5th Cir. 1981) ("When the evidence will not impugn the defendant's character, the policies underlining 404(b) are inapplicable."). And yet this evidence carries substantial probative value, as it refutes the central defense theory that M.T. fled from Defendant knowing that Defendant was a law enforcement officer.

### 4. Defendant's August 2013 Unlawful Stop of Lisa Gonzales

In August 2013, Los Alamos resident Lisa Gonzales and her husband were driving south on mountainous Highway 285 in Rio Arriba County. The vehicle in front of them was towing a camper and therefore driving below the speed limit. There was insufficient room to pass the vehicle with the camper, so Gonzales maintained appropriate speed behind it. A pickup with no law enforcement markings pulled onto the highway behind Gonzales, heading the same direction. The pickup caught up to Gonzales and began tailgating her vehicle. Eventually the vehicle with the camper turned off the highway, so Gonzales's husband increased speed to about the speed limit, which was 55 miles per hour. The pickup continued to tailgate her in an aggressive manner. The tailgating continued for a long time before the pickup engaged emergency lights that had not been visible before.

Gonzales's husband prepared to pull over in response to the lights, but the road was narrow and did not have a shoulder on which she could safely pull over. Gonzales's husband saw a dirt road ahead and prepared to pull over safely onto the road by slowing down and turning on his turn signal. Before reaching the dirt road, however, the pickup aggressively pulled up alongside Gonzales's vehicle, occupying the lane designated for traffic heading the opposite direction. Through the open passenger side window of the pickup, Defendant yelled, "Pull the f*** over now!" and pointed his finger at them aggressively. Gonzales's husband proceeded to the dirt road and pulled over as soon as possible. Defendant parked the pickup in front of Gonzales's vehicle, in a manner that blocked Gonzales's vehicle in, and yet left the back end of the pickup obstructing Highway 285. Defendant exited the pickup, wearing plain clothes, displaying no badge or other law enforcement markings. Defendant wore a holster with a gun at his hip. Defendant approached Gonzales's vehicle, walking with his hand on his gun as he

approached. At that point, Gonzales was terrified, because a man with a gun had blocked her in to a remote dirt road, and although the pickup had multi-colored lights on the visor there were no other indications that Defendant or the pickup were affiliated with law enforcement.

Defendant reached the window and for the first time showed a badge. He said, "Why didn't you pull over when I told you to?" Gonzales's husband replied that it was not safe to pull over until reaching the dirt road. When Gonzales's husband handed over license and registration indicating that he lived in Los Alamos, Defendant said, "You don't speed in my county." Defendant did not issue any citations.

Gonzales learned of the M.T., Maes and Ledesma road rage incidents through recent media reports, and felt it was her duty to come forward with her own experience.

The first *Huddleston* factor is that the evidence is offered for a proper purpose. The United States intends to introduce evidence of the Gonzales encounter as proof of motive, intent, plan, knowledge, absence of mistake, and lack of accident. The Gonzales encounter shows that Defendant's motive and intent in pursuing M.T. were to harass and punish an innocent motorist, rather than to protect public safety or enforce traffic laws. In both encounters Defendant sought to punish the innocent motorists for not recognizing Defendant as sheriff – even though Defendant wore plain clothes and drove an unmarked vehicle. The two encounters show a common plan to cause motorists in Rio Arriba County to fear Defendant, by making traffic stops in unmarked vehicles and trying to make citizens recognize Defendant despite his lack of prominently displayed law enforcement status. The common plan includes Defendant threatening motorists whom he does not intend to prosecute, as he never cited Ms. Gonzales's husband for anything. The Gonzales encounter shows that Defendant knows that not everyone who travels in or through Rio Arriba County instantly recognizes him as sheriff. And it shows

13

that Defendant did not make a mistake or accidentally forget that his identity was not apparent to all motorists when he pursued M.T. in a private Jeep.

As to the second *Huddleston* factor, the Gonzales encounter is relevant it shares many features in common with the incident giving rise to the Indictment. Both incidents involve Defendant's effectuation of a traffic stop while driving in a vehicle other than a marked police vehicle. Additionally, in each situation Defendant had no good faith intent to protect the public or prosecute a traffic violation – he just wanted to harass the motorists: he never cited Ms. Gonzales's husband for anything, and he let M.T.'s fabricated reckless driving citation lapse without prosecution. In both the M.T. and Gonzales incidents, Defendant positioned his vehicle in front of his quarry, contrary to standard law enforcement practice. In both circumstances he blocked the innocent motorists in with his own vehicle. Both involve a special characteristic, namely, status as a law enforcement officer. The geographic locations are very similar – both occurred on a rural road in Rio Arriba County – and the incidents occurred only about six months apart. And finally, both involve aggressive intimidation of a harmless and innocent motorist through display of Defendant's firearm.

All together, these factors show a high degree of similarity, while in other cases the Tenth Circuit has approved admission of similar acts carrying only one similar factor. *See, e.g., United States v. Smalls*, 752 F.3d 1227, 1238-39 (10th Cir. April 28, 2014) (finding that a defendant's statement about using asthma to cover up a homicide constituted signature evidence); *United States v. Gutierrez*, 696 F.2d 753, 755 (10th Cir.1982) (finding that defendant's driving the getaway car and using her children as cover during the getaway in two robberies constituted signature quality evidence).

The third *Huddleston* factor is that the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice. It is difficult to imagine Defendant suffering prejudice from admission of the Gonzales encounter. The content is not inflammatory and does not invoke any foreseeable biases. The testimony will come from one person whom the jury will be free to credit or discount as it sees fit.

The fourth *Huddleston* factor is the availability of a limiting instruction. The United States has included an appropriate limiting instruction in jury instructions sent to the defense, which will be filed in the near future (though Defendant has objected to the instruction).

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests this Court to allow the above-described evidence to be offered in the United States' case-in-chief at trial in this matter pursuant to Rules 401, 402, 403 and 404, and requests findings in support of such admissibility and such other relief as may be appropriate.

Respectfully submitted,

DAMON P. MARTINEZ
United States Attorney

*/s/ Filed Electronically*
TARA C. NEDA
JEREMY PEÑA
Assistant United States Attorneys
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274

I HEREBY CERTIFY that on September 10, 2014, I filed the foregoing electronically through the CM/ECF system, which caused the below counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

Robert J. Gorence and Louren Oliveros
Attorneys for Thomas R. Rodella

*/s/ Filed Electronically*
Jeremy Peña, Assistant U.S. Attorney