IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | CRIMINAL NO. 14-2783 JB |
| vs. | ) ) ) | |
| **THOMAS R. RODELLA**, | ) ) | |
| Defendant. | ) | |

**RESPONSE TO MOTION TO DISQUALIFY THE U.S. ATTORNEY'S OFFICE**

The United States hereby requests that the Court deny Defendant's Amended Motion to Disqualify the U.S. Attorney's Office for the District of New Mexico, the Prosecutor in This Case, by Virtue of U.S. Attorney Damon P. Martinez Being a Witness (Doc. 38) (the "Motion"). Defendant's Motion is baseless at its core because the charges against Defendant have precisely nothing to do with the U.S. Forest Service and everything to do with Defendant's violations of the civil rights of an innocent motorist. No evidentiary hearing is necessary because Defendant has failed to show animus, has misrepresented his own affidavit, and cannot show a valid need to call USA Martinez to testify.

1.  **Defendant Misrepresents the Affidavit He Offers.**

Defendant's argument misrepresents the affidavit he offers in support. Assuming *arguendo* that every word in the Affidavit of Jean-Claude dei Fiori Arnold is true, Defendant consistently mischaracterizes that Affidavit. Arnold states: "Damon Martinez did threaten Sheriff Rodella with arrest/prosecution if the sheriff or any of his deputies in any way interfered with any USFS law enforcement officer carry out his/her supposed legitimate mission anywhere in Rio Arriba County." Doc. 38-1, p. 4. Of course, interfering with a federal officer engaged in

official duties is in fact a federal crime. *See* 18 U.S.C. § 111, "Assaulting, resisting, or impeding certain officers or employees." Understood properly, then, USA Martinez's statement (according to Arnold) is no more of a threat than the slogan, "You Drink, You Drive, You Lose." The United States Attorney's Office intends to prosecute violations of federal law; violators will be prosecuted. This is not evidence of animus, and the Arnold Affidavit falls far short of establishing facts sufficient to warrant further inquiry. Nothing in the Motion or its attachments supports the concept that USA Martinez's interest in this case is anything other than the completely appropriate interest which a United States Attorney does and should have in prosecuting violations of federal law. *See United States v. Mezzanatto*, 513 U.S. 196, 209-10 (1995) ("In the absence of clear evidence to the contrary, courts presume that public officers have properly discharged their official duties.") (citation omitted).

In the Motion, however, Defendant misrepresents the Affidavit he attaches. Defendant states, "[Mr. Martinez] personally threatened arrest and prosecution if Mr. Rodella did not comply with his demands to deputize federal law enforcement agents as Rio Arriba County deputy sheriffs." Doc. 38, p. 4. Defendant's assertion is unsupported by the Arnold Affidavit, and appears instead to be a deliberate distortion of that Affidavit. He makes the same misrepresentation twice. *See* Doc. 38, p. 2 (USA Martinez "expressed his unhappiness at Sheriff Rodella's refusal to deputize/commission any USFS law enforcement personnel by threatening Sheriff Rodella with arrest and/or prosecution."). Defendant characterizes USA Martinez's statement as a blanket threat to arrest Defendant without probable cause if he fails to comply with a political request – which is categorically different from a basic declaration of intent to prosecute violations of federal law, which is all the Arnold Affidavit asserts.

2

Additionally, Defendant offers the theory that USA Martinez "trumped up" the charges in this case "in order to remove [Defendant] as sheriff." *Id*. This theory fails on the facts. Defendant lost the Democratic primary election on June 3, 2014, more than two months prior to the filing of the indictment. If USA Martinez wants Defendant out of office, all he has to do is wait. In truth, USA Martinez's only interest in this case is the general interest of prosecuting violations of federal law. But if one were to search for reasons to prosecute Defendant apart from the facts alleged in the indictment, one would not have to search for long to find a pattern of misuse of authority. *See, e.g.*, Docs. 49, 56. Defendant's claim of retaliatory motive must be evaluated against a backdrop of his own consistent stream of uncharged misdeeds. That he also may have disagreed with a prosecutor at a meeting should serve as no shield from prosecution.

**2.      USA Martinez Will Not Be a Witness at Trial.**

The United States already has moved to exclude any reference to the subject matter of Doc. 22, which includes the meeting which Defendant has invoked as the basis for the instant Motion. *See* Doc. 44. At this point, Defendant has not offered any substantive opposition to the exclusion request. *See* Doc. 73. Assuming that the United States' motion in limine (Doc. 44) is granted, there would be no valid purpose in attempting to obtain the testimony of USA Martinez. And it almost goes without saying that a prosecutor's motives are not admissible evidence at trial: such evidence is not relevant to any element of any claim or defense of any party, is confusing to the jury and is more prejudicial than probative. *See* Fed.R.Evid. 401, 402 and 403.

A prosecutor's motive is almost never the proper subject of inquiry. In this case, a grand jury has found probable cause to believe the indictment is true. *See* Doc. 55. That fact alone should be conclusive on this matter. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (stating that so long as the United States "has reasonable cause to believe that the accused

committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file . . . generally rests entirely in [the prosecutor's] discretion."). The conscious exercise of some selectivity in enforcement is not in itself a constitutional violation so long as "the selection was not deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Id*. at 364 (*quoting Oyler v. Boles*, 368 U.S. 448, 456 (1962)). But absent such claims, which Defendant has not asserted, a prosecutor's decision whether or not to prosecute any particular case is not subject to judicial review, as the Supreme Court explained:

> In our criminal justice system, the Government retains broad discretion as to whom to prosecute. So long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion. This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review. Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake. Judicial supervision in this area, moreover, entails systemic costs of particular concern. Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy. All these are substantial concerns that make the courts properly hesitant to examine the decision whether to prosecute.

*Wayte v. United States*, 470 U.S. 598, 105 S.Ct. 1524 (1985) (internal citations and quotation marks omitted). To allow Defendant to present his theory about why he is being prosecuted would invite the United States to present rebuttal evidence regarding each of the factors that the Supreme Court enumerated in *Wayte*. *See id*. Moreover, a prosecutor's state of mind would encompass all of a defendant's misdeeds, including those that otherwise would be kept from the jury at trial; and in this case, there are plenty.

Notably, Defendant cites not a single case, statute or rule that would make USA Martinez's meeting with county officials about potential interference with federal law enforcement a matter of "motive" in this case which could be properly introduced as evidence.

4

USA Martinez has no testimony to give regarding Defendant's guilt. Defendant's assertion that USA Martinez is "squarely in the middle of the underlying conduct in this case," Doc. 38 p. 4, is at best an egregious misuse of the word "underlying." In the legal context the "underlying conduct" means the events described in the indictment. Obviously USA Martinez had no involvement in the underlying conduct. By comparison, in *United States v. Prantil*, 764 F.2d 548 (9th Cir. 1985) – the only case Defendant cites that actually finds in favor of calling a prosecutor as a witness – the Ninth Circuit found it proper to elicit testimony from an Assistant U.S. Attorney because the indictment charged as criminal certain false statements that the defendant made *to that same AUSA*. *See generally id*. The *Prantil* case is a good example of a prosecutor involved in the "underlying conduct," i.e., the conduct named in the indictment, and stands in stark contrast to the situation here.

Substantial government interests weigh against allowing a defendant to call the U.S. Attorney to testify about prosecutorial decisions. In *United States v. Wooten*, 377 F.3d 1134 (10th Cir. 2004), the Tenth Circuit considered a district court's decision not to force a Special AUSA to testify. The Court stated, "[R]estrictions on a defendant's ability to present witnesses are permissible. In evaluating the district courts exclusion of the proffered testimony, the court asks, first, whether the testimony was relevant and, if so, whether the government's interests in excluding the evidence outweighed the defendant's interest in having the evidence admitted." *Id*. at 1142. In affirming the district court's decision, the Court recognized that "The government has a substantial interest in not allowing its prosecutors to testify because doing so generally requires disqualification of the prosecutor. . . . Such disqualifications would, of course, be tremendously inefficient and disruptive to the prosecution of criminal cases." *Id*. This policy

5

concern is at its zenith in regards to the U.S. Attorney, who otherwise would be called to testify in every single case in the District of New Mexico.

Defendant concedes that a defendant's request to call a prosecutor as a witness can be denied when other witnesses are available to provide the same testimony. Doc. 38. *See also United States v. Troutman*, 814 F.2d 1428, 1439-1440 (10th Cir. 1987) ("The district court has absolute discretion to permit a defendant to call the prosecutor as a witness and may deny the request if it does not appear the prosecutor possesses information vital to the defense.") (citation omitted). And Defendant himself identifies six other witnesses who could testify about USA Martinez's statements (Defendant Tommy Rodella, Debbie Rodella, Felipe Martinez, Jean-Claude dei Fiori Arnold, Moises Morales and Ted Trujillo). *See* Doc. 38, p. 2. Defendant's Motion is actually consistent with the Arnold Affidavit on this point. In an attempt to distinguish the current situation from *Troutman*, Defendant says that "the rules of evidence do not allow the other witnesses to testify to statements made by USA Martinez to Sheriff Rodella." This is perplexing. The Court is left to guess as to which rules Defendant alludes. While such testimony would be irrelevant, prejudicial, confusing and a waste of time, contrary to Rules 401 and 403, USA Martinez's own testimony would be inadmissible for those same reasons. So it is more likely that Defendant vaguely refers to Rule 802, the Rule Against Hearsay. But hearsay consists of an out-of-court statement offered "to prove the truth of the matter asserted," *see* Rule 801(c)(2), and it is nigh inconceivable that Defendant seeks to prove the truth of USA Martinez's statements. Rather, Defendant's "theory" requires no more than proof that various utterances were in fact made. With no remaining way to distinguish *Troutman*, Defendant's Motion should be denied because other witnesses can provide the testimony he seeks (subject to the Rules of Evidence, of course).

6

### 3. Disqualification Would Be Inappropriate.

Defendant has failed to show an actual conflict of interest and has failed to show a need for or ability to present testimony from USA Martinez at trial. There is no remaining basis for disqualification of any prosecutor. Yet Defendant cites to Department of Justice regulations in support of his request for disqualification of USA Martinez. *See* 28 C.F.R. § 45.2. Defendant has asserted only a single incident of political disagreement, thereby falling far short of an interest or relationship that would raise a possibility of disqualification pursuant to § 45.2. *See, e.g., United States v. Vega*, 317 F.Supp.2d 599, 604 (D. Virgin Islands 2004). He fails to cite, however, § 45.2(d), which provides, "This section pertains to agency management and is not intended to create rights enforceable by private individuals or organizations." That is, whether or not USA Martinez should be disqualified pursuant to § 45.2 is an internal matter to be decided by the Department of Justice without judicial review. Defendant has no right to that disqualification.

Defendant concedes that numerous opinions find that disqualification of an entire U.S. Attorney's Office is an extraordinary and drastic measure. *See, e.g.*, *United States v. Bolden*, 353 F.3d 870, 879 (10th Cir. 2003); *Crocker v. Durkin*, 159 F. Supp. 2d 1258, 1284 (D. Kan. 2001), *Bullock v. Carver*, 910 F.Supp. 551, 559 (D. Utah 1995). Defendant has failed to cite a single case upholding disqualification of an entire office. Probably because it has never happened: as the Tenth Circuit observed in *Bolden*, "[E]very circuit court that has considered the disqualification of an entire United States Attorney's office has reversed the disqualification." 353 F.3d at 879 (collecting cases). The Tenth Circuit went so far as to warn that "disqualifying an entire United States Attorney's office is almost always reversible error regardless of the underlying merits of the case." *Id*. at 876. This case – one in which Defendant has

misrepresented his own affidavit, and where Defendant has misused his authority for decades – would be an utterly inappropriate occasion for such an unprecedented development.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests this Court deny Defendant's Amended Motion to Disqualify the U.S. Attorney's Office for the District of New Mexico, the Prosecutor in This Case, by Virtue of U.S. Attorney Damon P. Martinez Being a Witness (Doc. 38). The United States requests that this Court deny the request for an evidentiary hearing and any contingent request for a trial subpoena, and requests such other relief as may be appropriate.

Respectfully submitted,

DAMON P. MARTINEZ
United States Attorney

*/s/ Filed Electronically*
TARA C. NEDA
JEREMY PEÑA
Assistant United States Attorneys
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274

I HEREBY CERTIFY that on September 12, 2014, I filed the foregoing electronically through the CM/ECF system, which caused the below counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

Robert J. Gorence and Louren Oliveros
Attorneys for Thomas R. Rodella

*/s/ Filed Electronically*
Jeremy Peña, Assistant U.S. Attorney