# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                  No. CR 14-2783 JB

THOMAS R. RODELLA and
THOMAS R. RODELLA, JR.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before Court on: (i) the Notice of Intention to Introduce Evidence Pursuant to Federal Rule of Evidence 404(b), filed August 29, 2014 (Doc. 35)("Notice"); (ii) the Motion in Limine to Introduce Evidence Pursuant to Federal Rule of Evidence 404(b), filed September 9, 2014 (Doc. 46)("Motion"); and (iii) the Amended Motion in Limine to Introduce Evidence Pursuant to Federal Rule of Evidence 404(b), filed September 10, 2014 (Doc. 56)("Amended Motion"). The Court held a hearing on September 15, 2014. The primary issues are: (i) whether Plaintiff United States of America is offering the evidence of three incidents in which Defendant Thomas R. Rodella pulled motorists over in Rio Arriba County, New Mexico, for a proper purpose under rule 404(b) of the Federal Rules of Evidence; (ii) whether the proffered evidence is relevant to the current case; and (iii) whether that evidence's potential for unfair prejudice substantially outweighs its probative value. Because the United States has presented a proper purpose for the introduction of the evidence -- intent, motive, plan, absence of mistake, and lack of accident -- that goes to an essential element of its case -- that Rodella acted willfully -- because the evidence has a tendency that makes the likelihood of Rodella's willfulness more probable, and because the unfair prejudice of the

evidence is not substantially outweighed by its probative value, the Court will grant the Motion and the Amended Motion. The Court will, however, require the United States to state to the jury, during closing arguments, the proper purpose for this evidence to ensure that the jury does not use the evidence for an improper purpose. The United States must state in closing arguments:

(i)     Rodella's motive and intent for pursuing Tafoya was to express his road rage, punish disrespect, and force Tafoya to submit to his authority and not to enforce any traffic law.

(ii)    Rodella had a plan to drive in a threatening manner towards other motorists, and if he succeeded in provoking any disrespectful act, force the motorist to submit through a display of his authority. The traffic encounters are part of a common plan Rodella had to require the citizens of Rio Arriba to submit to his authority.

(iii)   Rodella did not make a mistake or accidently forget that his identity was not apparent to all motorists when he pursued Tafoya in a private Jeep.

## FACTUAL BACKGROUND

The Superseding Indictment, filed September 9, 2014 (Doc. 55)("Indictment"), alleges that on March 11, 2014, in Rio Arriba County, New Mexico, Rodella, while acting under color of state law, subjected a person -- Michael Tafoya -- to "unreasonable seizure by a law enforcement officer." Indictment at 1. Specifically, Rodella allegedly used unreasonable force and caused an "unlawful arrest by deputies of the Rio Arriba County Sheriff's Office." Indictment at 1. "This offense resulted in bodily injur[ies]" to a person and included the "use and threatened use of a dangerous weapon." Indictment at 1. The Indictment further alleges that Rodella carried and brandished a firearm "during and in relation to a crime of violence for which the defendant may be prosecuted in a court of the United States," and that "in furtherance of such crime, possessed and brandished said firearm." Indictment at 1-2.

1. **<u>The August, 2013, Incident</u>.**[1]

In August, 2013, Lisa Gonzales, a Los Alamos, New Mexico, resident, and her husband were driving south on Highway 285 in Rio Arriba County. <u>See</u> Amended Motion at 12. A vehicle pulling a camper was in front of them and was driving below the speed limit. <u>See</u> Amended Motion at 12. There was not enough room to pass the vehicle, so Gonzales' husband continued to drive behind the vehicle. <u>See</u> Amended Motion at 12. A pickup, with no law enforcement markings, pulled onto the highway behind Gonzales, caught up to her vehicle, and began tailgating her. <u>See</u> Amended Motion at 12. The vehicle with the camper turned off the highway, so Gonzales' husband increased his speed to the speed limit of fifty-five miles-per-hour. <u>See</u> Amended Motion at 12. The pickup continued tailgating in an aggressive manner for a long time. <u>See</u> Amended Motion at 12. Emergency lights, which were not visible earlier, were activated on the pickup. <u>See</u> Amended Motion at 12. Gonzales' husband prepared to pull over because of the emergency lights, but the road was too narrow and did not have a shoulder. <u>See</u> Amended Motion at 12. Gonzales' husband saw a dirt road ahead, and prepared to pull over onto the dirt road by slowing down and engaging his turning signal. <u>See</u> Amended Motion at 12. Before reaching the dirt road, the pickup "aggressively pulled up alongside" Gonzales' vehicle, occupying the left-hand lane that is designated for traffic coming from the other direction. Amended Motion at 12. Through the passenger-side window of the pickup, Rodella yelled for Gonzales to "[p]ull the fuck over," while pointing his finger at them. Amended Motion at 12. Gonzales' husband "proceeded to the dirt road and pulled over as soon as possible." Amended Motion at 12.

---

[1]The Court will produce the facts from the prior three incidents, which the United States seeks to introduce at trial, as they are represented in the Motion and the Amended Motion.

Rodella parked the pickup in front of Gonzales' vehicle. See Amended Motion at 12. Rodella parked the pickup in a manner that blocked in Gonzales' vehicle and partly obstructed Highway 285 with the back end of the pickup. See Amended Motion at 12. Rodella exited the pickup, wearing plain clothes, and not displaying a badge or other law enforcement markings. See Amended Motion at 12. Rodella wore a holster with a gun at his hip and walked toward Gonzales' vehicle with his hand on the gun. See Amended Motion at 12-13. Gonzales was terrified, because a man with a gun had blocked their vehicle from accessing Highway 285, and because there was no indication -- other than the "multi-colored lights on the visor" of the pickup -- that Rodella or the vehicle were affiliated with law enforcement. Amended Motion at 13. When Rodella reached the window of the vehicle, he displayed his badge. See Amended Motion at 13. Rodella asked why Gonzales' husband did not pull over when Rodella told him to do so, and Gonzales' husband told Rodella that it was not safe to pull over until he reached the dirt road. See Amended Motion at 13. Gonzales' husband handed Rodella his license and registration, which indicated that he lived in Los Alamos. See Amended Motion at 13. Rodella told Gonzales' husband: "You don't speed in my county." Amended Motion at 13. Rodella did not issue Gonzales or her husband any citation. See Amended Motion at 13.

**2.      The March, 2013, Incident.**

On or about March 28, 2013, Jacob Ledesma, a forty-year-old engineering consultant from Las Cruces, New Mexico, was driving on Highway 84 in Rio Arriba County. See Amended Motion at 7. Ledesma was driving the speed limit when a brown SUV, with no law enforcement markings, turned onto the highway in front of oncoming traffic and Ledesma. See Amended Motion at 7. The SUV drove slowly and caused the traffic to slow down. See Amended Motion at 7. Passing was permitted in that part of the highway, and Ledesma moved

into the other lane and passed the SUV.  See Amended Motion at 7.  The SUV activated emergency lights, which were concealed in the vehicle's front grill.  See Amended Motion at 7. Ledesma pulled over to the side of the road, and the SUV pulled over behind him.  See Amended Motion at 7.

Rodella stepped out of the SUV, wearing plain clothes without a badge displayed.  See Amended Motion at 7.  Rodella asked Ledesma: "Do you know who I am?"  Amended Motion at 7.  Ledesma told Rodella that he did not, so Rodella pulled out his driver's license and handed it to Ledesma.  See Amended Motion at 7.  Ledesma responded by stating: "So?  I have a driver's license, too."  Amended Motion at 7.  Rodella became angry, reached into his pocket, pulled out his badge, and threw it at Ledesma.  See Amended Motion at 7.  Ledesma told Rodella that he did not know who Rodella was, that Rodella was not in a marked police unit, and that, if Rodella did not get a marked police unit there immediately, he was going to leave.  See Amended Motion at 7.  Rodella summoned a sheriff deputy, who arrived in a marked unit and wrote Ledesma tickets "for passing in a no-passing zone and failing to sign his registration." Amended Motion at 7.  Ledesma protested to the deputy, and the deputy replied: "He's my boss."  Amended Motion at 7.  The tickets were dismissed two weeks later.  See Amended Motion at 7.  Ledesma revisited the area and confirmed that passing was prohibited on that stretch of highway.  See Amended Motion at 7-8.

### 3. The January, 2014, Incident.

Yvette Maes is a fifty-two year-old woman from Rio Arriba County.  Amended Motion at 3.  In January, 2014, Maes was driving home at night when a vehicle rapidly approached her vehicle from behind and began tailgating her.  See Amended Motion at 4.  The vehicle passed Maes, and she flashed her high-beam headlights at it.  See Amended Motion at 4.  The vehicle

activated emergency lights, and Maes pulled over to the side of the road.  <u>See</u> Amended Motion at 4.  The other vehicle pulled over on the side of the road, a short distance in front of Maes' vehicle.  Amended Motion at 4.  Rodella exited the vehicle, appearing visibly shaken, and approached Maes' vehicle.  <u>See</u> Amended Motion at 4.

Rodella asked Maes what "she thought she was doing by flashing her lights at him" and told her that "flashing high beams [is] a form of road rage."  Amended Motion at 4.  Maes responded by telling Rodella that tailgating is also a form of road rage.  <u>See</u> Amended Motion at 4.  Rodella asked Maes why she did not pull over on the side of the road, and Maes told him that "it was dark and she could not tell who was driving behind her."  Amended Motion at 4.  Rodella informed Maes that he was responding to an emergency, and Maes said that if there was an emergency, Rodella "should have turned on his emergency lights and passed her."  Amended Motion at 4.  Rodella "asked Maes if she should go to jail," and Maes said that, if Rodella "though it was appropriate, then [he] should take her to jail."  Amended Motion at 4.  Rodella then walked back to his car and drove away.  Amended Motion at 4.

**4.       The Incident charged in the Indictment.**

The United States alleges that Rodella was riding in his personal Jeep SUV, with his son, when they rapidly approached Tafoya's Mazda from behind and began tailgating him.  <u>See</u> Notice at 1.  According to the United States, Rodella and his son began flashing their headlights at Tafoya.  <u>See</u> Notice at 1.  The United States further alleges that Tafoya pulled over to the side of the road and that Rodella stopped the Jeep a short distance in front of Tafoya's Mazda.  <u>See</u> Notice at 1.  The United States alleges that Rodella and his son were wearing plain clothes.  <u>See</u> Notice at 1.  According to the United States, Rodella and his son exited the Jeep, and approached Tafoya in a threatening manner, "gesturing as if to invite a physical confrontation."  Notice at 1-

2. The United States maintains that Tafoya did not know that Rodella was the Sheriff of Rio Arriba County and that Tafoya drove away out of fear for his safety, which resulted in a pursuit and confrontation. See Notice at 2.

## PROCEDURAL BACKGROUND

The United States filed the Notice to introduce rule 404(b) evidence on August 29, 2014. See Notice at 1. The United States then filed the Motion on September 9, 2014, further explaining its reasoning and purpose for introducing the 404(b) evidence[2] and detailing the Maes and Ledesma incidents. See Motion at 1. The United States amended the Motion on September 10, 2014, adding the Gonzales incident. See Amended Motion at 1. Rodella responded, objecting to the introduction of this evidence. See Response in Opposition to Government's Notice of Intention to Introduce Evidence Pursuant to Federal Rule of Evidence 404(b), filed September 9, 2014 (Doc. 51)("Response to Notice"); Defendant Thomas R. Rodella's Response in Opposition to the United States' Motion in Limine to Introduce Evidence Pursuant to Federal Rule of Evidence 404(b) [Doc. 46], filed September 12, 2014 (Doc. 74)("Response to Motion").

The United States argues that, under Huddleston v. United States, 485 U.S. 681 (1988)("Huddleston"), evidence of other wrongs is admissible if: (i) the evidence is offered for a proper purpose; (ii) the evidence is relevant; (iii) the evidence's potential for unfair prejudice does not substantially outweigh its probative value; and (iv) the trial court, if requested, instructs the jury that the evidence of other wrongful acts should only be considered for the proper

---

[2] While lawyers and courts frequently use the phrase "404(b) evidence," there is, to be accurate, no such thing as "rule 404(b) evidence." Rule 404(b), rather, is a rule that allows the admission of relevant evidence that is not offered for an improper purpose. See United States v. Tan, 254 F.3d 1204, 1208 (10th Cir. 2001)(quoting United States v. Van Metre, 150 F.3d 339, 349 (5th Cir. 1998)("Rule 404(b) is considered to be an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." (internal quotation marks omitted)).

purpose for which it was admitted.  See Amended Motion at 2 (citing Huddleston, 485 U.S. at 691-92).  The United States contends that 404(b) evidence may be introduced to support the õintent element in a criminal case,ö specifically, when a criminal defendant denies knowledge or a criminal intent, then evidence of previous similar action can be introduced as õevidence that the defendant acted knowingly or with a specific intent.ö  Amended Motion at 2.  The United States argues that a similar act õ-decreases the likelihood that the charged offense was committed with innocent intent.öö  Amended Motion at 3 (quoting United States v. Queen, 132 F.3d 991, 996 (4th Cir. 1997)).  The United States contends that evidence of a prior act needs to be similar, but not identical, to the charged crime, and that similarity can be shown õthrough -the physical similarity of the acts or through the defendantøs indulging himself in the same state of mind in the perpetration of both the extrinsic offense and charged offense.öö  Amended Motion at 3 (quoting United States v. Queen, 132 F.3d at 996).  The United States maintains that õRule 404(b) is an inclusive rule,ö and that evidence can be admitted õas long as it proves something other than criminal propensity and bad character, even if the evidence also demonstrates propensity.ö  Amended Motion at 3.  The United States contends that the õevidence profferedö should be admitted under rule 404(b), because it is relevant, offered for a proper purpose, and the probative value outweighs any perceived prejudice.  Amended Motion at 3.

The United States seeks to introduce evidence of three separate incidents and discusses the admissibility of each incident separately.[3]  See Amended Motion at 3-15.  The Court will,

---

[3]The United States also seeks to introduce evidence that, at the time of the incident, Tafoya (i) had no criminal history; (ii) had no warrants out for his arrest; (iii) had not been consuming alcohol; (iv) had no alcohol, drugs, or other contraband in his vehicle; (v) is a citizen of the United States; (vi) lawfully possessed his vehicle; and (vii) had a valid driverøs license.  See Amended Motion at 10-11.  The United States argues that this evidence is not rule 404(b) evidence, see Amended Motion at 10, but some of it falls under rule 404(b), which deals with

thus, detail each incident that the United States wishes to introduce at trial, and Rodella's Response, separately.

## 1.     **The January, 2014, Incident.**

The United States argues that the evidence and testimony from the Maes incident satisfies the factors from Huddleston.  See Amended Motion at 4.  The United States contends that the testimony is offered for a proper purpose: to show motive, intent, plan, knowledge, absence of mistake, and lack of accident.  See Amended Motion at 4-5.  The United States argues that the Maes incident shows Rodella's "motive and intent in pursuing Tafoya, which was to express his road rage and to punish any disrespect he perceived from citizens of Rio Arriba County." Amended Motion at 4.  Rodella treated both Maes flashing her lights and Tafoya making an open-hand gesture as disrespect that needed to be punished.  See Amended Motion at 4-5.  The United States argues that the Maes incident shows that Rodella's "motive and intent was to force Tafoya to submit to Defendant's authority and not to enforce any traffic law." Amended Motion at 5.  The United States also contends that the Maes encounter shows that Rodella had "a plan to compel citizens to submit to his authority." Amended Motion at 5.  Specifically, the United States contends that Rodella's plan "is to drive in a threatening and provocative manner towards

_____

any acts, introduced "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," see Fed. R. Evid. 404(b).  The United States wishes to introduce this evidence to rebut Rodella's expected argument that Tafoya fled from Rodella because Rodella was the sheriff.  See Amended Motion at 10.  On the other hand, some of the evidence -- e.g. that Tafoya "had not been consuming alcohol" -- is more res gestae evidence.  See United States v. Valencia-Montoya, No. CR 11-2990 JB, 2012 WL 8251407, at *10-11 (D.N.M. Sept. 17, 2012)(Browning, J.).  In any case, Rodella does not object to the admissibility of this evidence.  See Amended Motion at 10; Response to Motion at 1-5; Transcript of Hearing at 181:4-183:2 (taken September 16, 2014)(Peña, Gorence, Court)(Rodella not objecting to the admissibility of this evidence).  Because some of the evidence is not rule 404(b) evidence, and because Rodella does not object to its admissibility, the Court will not consider the admissibility of this evidence.

any motorists" -- prolonged tailgating -- "and if he succeeds in provoking any disrespectful act . . . he will force the motorist to submit through a display of authority." Amended Motion at 5. The United States additionally argues that the Maes incident shows that Rodella "knew he was expressing road rage toward" Tafoya and that Tafoya "did not know that [Rodella] was actually the sheriff." Amended Motion at 5. The United States argues that the Maes incident shows that Rodella knew that tailgating and flashing headlights are forms of road rage, and that "it was not apparent that he was the sheriff when he tailgated" both Tafoya and Maes. Amended Motion at 5.

The United States argues that the Maes incident is relevant, which the United States contends is determined by "the similarity of the prior act with the charged offense." Amended Motion (quoting United States v. Brooks, 736 F.3d 921, 940 (10th Cir. 2013)). The United States contends that, in determining the similarity of the two acts, the Tenth Circuit focuses on several non-exclusive factors, including: (i) temporal proximity, (ii) geographical proximity, (iii) whether the prior act and charged offense share similar physical elements, and (iv) whether the charged offense and other acts are part of a common scheme. See Amended Motion at 5-6 (citing United States v. Ugalde-Aguilera, 554 F. App'x 728, 733 (10th Cir. 2014)). The United States argues that all of these factors "weigh in favor of" admitting the Maes incident because the two incidents occurred about three months apart; they both occurred on a roadway in Rio Arriba County; they both involved Rodella tailgating, parking in front of Tafoya and Maes' vehicles, and angrily approaching each driver; and they are part of a common plan by Rodella to require the citizens of Rio Arriba County to submit to his authority. See Amended Motion at 6.

The United States argues that the Maes incident's potential for unfair prejudice does not substantially outweigh its probative value, because the content of the encounter is not

inflammatory and does not invoke any foreseeable bias. See Amended Motion at 6. Additionally, the United States maintains that the jury will be free to credit or discount Maes' testimony. See Amended Motion at 6. Finally, the United States argues that the Court may provide the jury with an appropriate limiting instruction. See Amended Motion at 6.

### 2. The March, 2013, Incident.

The United States argues that Ledesma's testimony is offered for a proper purpose, specifically, to show "motive, intent, plan, knowledge, absence of mistake, and lack of accident." Amended Motion at 8. The United States argues that the incident shows that Rodella's "motive and intent in pursuing [Tafoya] were to harass and punish an innocent motorist, rather than to protect public safety or enforce traffic laws." Amended Motion at 8. The United States contends that, in both incidents, Rodella "sought to punish the innocent motorists for not recognizing [him] as sheriff -- even though [he] wore plain clothes and drove an unmarked vehicle." Amended Motion at 8. The United States contends that both incidents show a common plan "to cause the citizens of Rio Arriba County to fear" Rodella by making "traffic stops in unmarked vehicles and trying to make citizens recognize [him] despite his lack of display of law enforcement status." Amended Motion at 8. The United States argues that this common plan includes filing charges that Rodella does not intend to prosecute. See Amended Motion at 8. Additionally, the United States argues that the Ledesma incident shows that Rodella knows that everyone traveling through Rio Arriba County does not instantly recognize him as sheriff and that Rodella did not "make a mistake or accidentally forget that his identity was not apparent to all motorists when he pursued [Tafoya] in a private Jeep." Amended Motion at 8.

As to relevance, the United States argues that both the Tafoya and Ledesma incidents involve Rodella using his "badge as a weapon or projectile while conducting an unlawful traffic

stop when not in uniform,ö and not driving a marked police vehicle. Amended Motion at 8-9. The United States maintains that, in both incidents, Rodella õdisplayed a bizarre sensitivity about being recognized as the sheriff despite his plain clothes and unmarked vehicle,ö and that Rodella õfabricated a traffic violation to justify the stop.ö Amended Motion at 8. The United States argues that, in addition to both incidents occurring on a rural road in Rio Arriba County, the õhigh degree of similarityö makes the Ledesma incident relevant to the Tafoya incident. See Amended Motion at 7-9.

The United States argues that the Ledesma incidentø potential for unfair prejudice does not substantially outweighed its probative value, because the content of the incident õis not inflammatory and does not invoke any foreseeable biases,ö and because the jury is free to discredit Ledesmaøs testimony. Amended Motion at 9. Finally, the United States maintains that the Court can provide a limiting instruction to the jury. See Amended Complaint at 10.

**3.    The August, 2013, Incident.**

The United States argues that evidence of the Gonzales incident is being offered for a proper purpose: õmotive, intent, plan, knowledge, absence of mistake, and lack of accident.ö Amended Motion at 13. The United States argues that the incident shows that Rodellaøs õmotive and intent in pursuing [Tafoya] were to harass and punish an innocent motorist, rather than to protect public safety or enforce traffic laws.ö Amended Motion at 13. Specifically, the United States contends that the Tafoya and Gonzales encounters show that Rodella sought to punish innocent motorists for not recognizing him as the sheriff -- even though he was wearing plain clothes and drove an unmarked vehicle. See Amended Motion at 13. The United States argues that the Gonzales incident shows that Rodella has a common plan to õcause motorists in Rio Arriba County to fearö him, õby making traffic stops in unmarked vehicles and trying to make

citizens recognize [him] despite his lack of prominently displayed law enforcement status," and by "threatening motorists whom he does not intend to prosecute." Amended Motion at 13. Additionally, the United States maintains that the Gonzales incident shows that Rodella knows that not everyone who travels in Rio Arriba County "instantly recognizes him as sheriff," and that Rodella did not "make a mistake or accidently forget that his identity was not apparent to all motorists when he pursued [Tafoya] in a private Jeep." Amended Motion at 13.

The United States argues that the Gonzales incident is relevant, because "it shares many features in common with the incident giving rise to the Indictment." Amended Motion at 13. The United States contends that, in both the Tafoya and the Gonzales incidents, Rodella effectuated a traffic stop while driving in a vehicle that was not a marked police vehicle; Rodella had "no good faith intent to protect the public or prosecute a traffic violation"; Rodella did not cite Gonzales' husband for anything and he let Tafoya's reckless driving citation lapse without prosecution; Rodella positioned his vehicle in front of the other vehicle; and they took place on a rural road in Rio Arriba County. Amended Motion at 14. The United States further argues that the incidents occurred about six months apart, and that they both "involved intimidation of a harmless and innocent motorist through display of" Rodella's firearm. Amended Motion at 14.

The United States contends that the probative value of the Gonzales incident is not "substantially outweighed by its potential for unfair prejudice," because its "content is not inflammatory and does not invoke any foreseeable biases." Amended Motion at 15. The United States maintains that the jury will be free to "credit or discount" Gonzales' testimony. Amended Motion at 15. Additionally, the United Sates contends that the Court may include an appropriate limiting instruction in the jury instructions. See Amended Motion at 15.

### 4. **Rodella's Response**.

Rodella responds by arguing that the United States' characterization of the Maes incident is incorrect, because Rodella did not "threaten to arrest Ms. Maes" or accuse her of road rage. Response to Notice at 2. Rodella argues that, even if the Court were to assume that the United States' allegations were true, there is no correlation between "Rodella allegedly engaging in a traffic stop of an individual for flashing her lights at him and threatening to take her to jail and allegedly using excessive force on someone with a gun and a badge during a traffic stop." Response to Notice at 2. Rodella argues that the Maes incident is not relevant or probative in establishing whether Rodella "used excessive force in this case," and that the incident is "highly prejudicial." Response to Notice at 2. Rodella contends that the "Tenth Circuit has developed rigorous criteria for admitting evidence of other crimes, wrongs or acts pursuant to Rule 404(b)." Response to Notice at 3.

Rodella argues that he "has never been charged with any wrongdoing arising out of" the Maes incident, and he denies that he engaged in "any wrongdoing whatsoever." Response to Notice at 4. Rodella argues that, if admitted, an independent investigation of the incident would be required and that he would demand a mini-trial on the incident. See Response to Notice at 4. Rodella denies that he made the alleged statements to Maes and argues that the United States' allegations have not been tested through confrontation. See Response to Notice at 4. Rodella maintains that a mini-trial is necessary, and that it "would require the presentation of numerous witnesses and documentary evidence." Response to Notice at 4. Rodella further argues that the Maes incident is "neither probative nor relevant to determine whether . . . excessive force was used in this case." Response to Notice at 4. Rodella argues that the Tafoya and Maes incidents are "wholly unrelated" and that the United States is using the Maes incident as "a backdoor to

introduce character evidence to inflame the jury against Mr. Rodella." Response to Notice at 4. Rodella further contends that the Maes incident is highly prejudicial, because no charges have been brought against Rodella, and the Maes incident is being introduced solely as "an attempt to convince the jury that Mr. Rodella is a bad person by nature." Response to Notice at 5.

Rodella also objects to admitting evidence of the Ledesma incident. <u>See</u> Response to Motion at 1. Rodella contends that, after he informed Ledesma why he was being stopped, Ledesma "promptly launched into a diatribe that he was a -neighbor and friend of Governor Susan Martinez." Response to Motion at 3. After Ledesma began this "diatribe," Rodella summoned another officer to assist in the investigation. Response to Motion at 3. Rodella also argues that the United States' assertion that the tickets against Ledesma were dismissed two weeks after issuance is "factually inaccurate and a fraud upon the Court." Response to Motion at 3. Rodella contends that Ledesma "entered a no contest plea on June 7, 2013," and that the "case was dismissed on August 7, 2013, after Mr. Ledesma finished his period of supervision following a deferred sentence." Response to Motion at 3. Rodella maintains that a no contest plea is defined as a conviction in New Mexico and that it "carries the same weight as a guilty plea." Response to Motion at 3 (citing <u>Howard v. Dickerson</u>, 34 F.3d 978, 981 n.2 (10th Cir. 1994)). Rodella argues that Ledesma's plea constitutes "guilt because he recognized that there were facts upon which he could be convicted for passing in a no passing zone." Response to Motion at 4. Rodella argues that Ledesma's acknowledgment of guilt "negates an inference of road rage on the part of the officer who witnessed Mr. Ledesma's criminal conduct." Response to Motion at 4 (internal quotation marks omitted). Rodella contends that the arrest and conviction of Ledesma "does not lend any assistance to the trier-of-fact to make it more or less probable that Mr. Rodella used excessive force in this instance." Response to Motion at 4.

Instead, Rodella contends that the Ledesma incident is "merely yet another attempt by the government to introduce inadmissible evidence which does not prove any motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident," and thus "does not remotely qualify as 404(b) evidence." Response to Motion at 4.

**5.** **The Hearing Held on September 15, 2014.**

The Court held a hearing on September 15, 2014. See Transcript[4] of Hearing at 109:18-135:18 (taken September 15, 2014)(Peña, Gorence, Court)("Tr."). The United States argued that the three incidents are similar to the charged incident and that the Huddleston factors point towards admitting the evidence. See Tr. at 110:15-11:1 (Peña). The United States directed the Court to United States v. Queen, 132 F.3d 991 (4th Cir. 1997), for the proposition that courts admit evidence that shows that a defendant indulged in the "same state of mind" in the perpetration of "both the extrinsic offense[] and the charged offense[]," which the United States contended happened in the three incidents and the charged offense. Tr. at 111:5-111:116 (Peña). The United States argued that the three incidents are not more prejudicial than probative, because, while the incidents show that Rodella engaged in wrongful conduct, they are not emotionally provocative, graphic situations, or involve discrimination. See Tr. at 111:16-112:7 (Peña).

When pressed for what purpose the evidence of the Maes incident is being offered for and what the United States will tell the jury about that incident, the United States said that the incident will be introduced to show that Rodella's motive in pursuing "the [t]arget vehicles while flashing lights" and tailgating them is "not to protect public safety." Tr. at 112:18-114:3 (Peña,

---

[4]The Court's citations to the transcripts of the hearing refer to the court reporter's original, unedited version. Any final transcripts may contain slightly different page and/or line numbers.

Court).  Rather, the United States argued that Rodella's true motive for pursuing Tafoya and Maes was that he got mad, decided to express his road rage, and wanted to use his badge to help him express his road rage.  See Tr. at 114:4-114:10 (Peña).  The Court inquired what motive the United States will tell the jury that Rodella had, and the United States responded that Rodella's motive was to express his road rage and cause a person in Rio Arriba County to submit "to his authority even though he didn't have any grounds to do so."  Tr. at 114:11-114:21 (Peña, Court).  Specifically, the United States said that Rodella's motive was "to show [who is the] boss."  Tr. at 114:21-114:23 (Peña).  The United States argued that it would tell the jury that this was also Rodella's intent in stopping Tafoya.  See Tr. at 114:24-115:4 (Peña, Court).  The United States also argued that the other incidents show that Rodella had a plan to "make everyone who steps into Rio Arriba [C]ounty recognize him even though he's not displaying his law enforcement" credentials and "to drive in a threatening and provocative manner towards other motorists to provoke them to see what's going to shake loose and to take advantage of that."  Tr. at 115:18-116:10 (Peña, Court).  The United States further argued that the incidents show a lack of accident or mistake; specifically, Rodella cannot claim that he thought Tafoya should have known that he was the sheriff, because, in the three other incidents, each person was surprised to realize that Rodella was the sheriff.  See Tr. at 118:11-119:16 (Peña, Court).  To assuage the Court's concerns that the United States would introduce evidence of the incidents and then "leave them hanging out there for an unfair inference" from the jury, the United States assured the Court that the United States would argue that the three incidents should be interpreted for the 404(b) purposes.  See Tr. at 117:3-118:7 (Peña, Court).  Furthermore, the United States argued that they must prove beyond a reasonable doubt that Rodella acted willfully, which the United States characterizes as Rodella knowing that what he was doing was wrong but choosing to do it

anyways.  See Tr. at 134:13-134:22 (Neda).  The United States assured the Court that it would only use the three prior incidents to help prove that element.  See Tr. at 134:21-134:22 (Neda). The United States argued that a lot of Rodella's arguments in opposition to the evidence are questions are more appropriate for cross-examination, but do not require a mini-trial.  See Tr. at 131:9-131:13 (Peña).

Rodella responded by arguing that Maes, Ledesma, and Gonzales did not make a report or complaint against Rodella, and by arguing that the Court should hold a mini-trial to determine if the three incidents are admissible under Rule 403.  See Tr. at 121:7-121:22 (Gorence). Rodella directed the Court to a New Mexico state statute, N.M. Stat. Ann. § 4-41-10, which states that a Sheriff is considered to be discharging his duties at all times and is allowed to carry firearms on his person, for the proposition that Rodella was on duty for each of the incidents. See Tr. 120:21-121:6 (Gorence).  Rodella argued that the Maes incident is not similar to the Tafoya incident, because in the Maes incident, Rodella was driving a marked police vehicle, there was no chase or violence, and Maes acted impermissibly by flashing her head-lights at him. See Tr. at 123:24-124:14 (Gorence).  In the same way, Rodella argued that the Ledesma incident is not similar, because it did not involve a chase, there were no allegations of excessive force, there was no violence or physical force used, it took place during the day, and Ledesma pled no contest to the citation.  See Tr. at 125:1-126:22 (Gorence).  As for the Gonzales incident, Rodella argued that it did not involve road rage or violence and there was no chase.  See Tr. at 127:22-127:24 (Gorence).  Instead, Rodella maintained that the incident merely involved a person speeding, and the sheriff stopping him and warning him not to speed.  See Tr. at 127:24-128:2 (Gorence).  Rodella argued that the three incidents do not involve rule 404(b), but rather involve

people, "who might have an ax to grind with the sheriff," coming out to tell their story about being stopped or being issued a ticket by Rodella.  Tr. at 129:7-129:18 (Gorence).

## LAW REGARDING RULE 404(b)

Under rule 404(b), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show action in conformity therewith.  See Fed. R. Evid. 404(b).  Rule 404(b) provides:

**(b)** **Crimes, Wrongs, or Other Acts.**

**(1)** **Prohibited Uses.**  Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

**(2)** **Permitted Uses; Notice in a Criminal Case.**  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  On request by a defendant in a criminal case, the prosecutor must:

**(A)** provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and

**(B)** do so before trial -- or during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b).  "In other words, one cannot present evidence the relevance of which is based on the forbidden inference: the person did X in the past, therefore he probably has a propensity for doing X, and therefore he probably did X this time, too."  Wilson v. Jara, No. 10-0797 JB/WPL, 2011 WL 6739166, at *5 (D.N.M. Nov. 1, 2011)(Browning, J.).  "The rule, however, has a number of ÷exceptionsø -- purposes for which such evidence will be admissible." Wilson v. Jara, 2011 WL 6739166, at *5.  Those purposes include proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  See Fed. R.

Evid. 404(b). The Supreme Court of the United States has enunciated a four-part process to determine whether evidence is admissible under rule 404(b). <u>See</u> <u>Huddleston</u>, 485 U.S. at 691-92. The Tenth Circuit has consistently applied that test:

> To determine whether Rule 404(b) evidence was properly admitted we look to [a] four-part test . . . : (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

<u>United States v. Zamora</u>, 222 F.3d 756, 762 (10th Cir. 2000)(citing <u>United States v. Roberts</u>, 185 F.3d 1125 (10th Cir. 1999)). <u>See</u> <u>United States v. Higgins</u>, 282 F.3d 1261, 1274 (10th Cir. 2002); <u>United States v. Hardwell</u>, 80 F.3d 1471, 1488 (10th Cir. 1996)(citing <u>Huddleston</u>, 485 U.S. at 691-92).

Rule 404(b)'s prohibition finds its source in the common-law protection of the criminal defendant from risking conviction on the basis of evidence of his character. <u>See</u> <u>Wynne v. Renico</u>, 357 F.3d 599, 611 (6th Cir. 2004)(citing <u>United States v. Dudek</u>, 560 F.2d 1288 (6th Cir. 1977)); 22 C. Wright & K Graham, <u>Federal Practice and Procedure: Evidence</u> § 5239, at 428, 436-37, 439 (1991). In <u>United States v. Phillips</u>, 599 F.2d 134 (6th Cir. 1979), the United States Court of Appeals for the Sixth Circuit noted, in addressing rule 404(b)'s limitations and requirements, that the rule addresses two main policy concerns: (i) that the jury may convict a "bad man" who deserves to be punished, not because he is guilty of the crime charged, but because of his prior or subsequent misdeeds; and (ii) that the jury will infer that, because the accused committed other crimes, he probably committed the crime charged. <u>United States v. Phillips</u>, 599 F.2d at 136. "[W]hen other-act evidence is admitted for a proper purpose and is relevant, it may be admissible even though it has 'the potential impermissible side effect of

allowing the jury to infer criminal propensity." United States v. Moran, 503 F.3d 1135, 1145 (10th Cir. 2007)(quoting United States v. Cherry, 433 F.3d 698, 701 n.3 (10th Cir. 2005)). See United States v. Romero, No. CR 09-1253 JB, 2011 WL 1103862, at *12 (D.N.M. March 9, 2011)(Browning, J.)("Rule 404(b) evidence almost always has some propensity evidence.").

When bad act evidence is both relevant and admissible for a proper purpose, "the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the bad act." United States v. Morley, 199 F.3d 129, 133 (3d Cir. 1999)(alterations omitted). The Tenth Circuit has also stated that district courts must "identify specifically the permissible purpose for which such evidence is offered and the inferences to be drawn therefrom." United States v. Youts, 229 F.3d 1312, 1317 (10th Cir. 2000)(citing United States v. Kendall, 766 F.2d 1426, 1436 (10th Cir. 1985)).

> The Government must articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the evidence of other acts. In addition, the trial court must specifically identify the purpose for which such evidence is offered and a broad statement merely invoking or stating Rule 404(b) will not suffice.

United States v. Romine, 377 F. Supp. 2d 1129, 1132 (D.N.M. 2005)(Browning, J.)(quoting United States v. Kendall, 766 F.2d 1426, 1436 (10th Cir. 1985)). Rules 401-403 and the conditional relevancy rules in Rule 104(b) govern the applicable burden the proponent must meet to successfully offer evidence under rule 404(b). See Huddleston v. United States, 485 U.S. at 686-691.

The Tenth Circuit has recognized the probative value of uncharged, unrelated acts to show motive, intent, and knowledge, when the uncharged, unrelated acts are similar to the charged crime and sufficiently close in time. See United States v. Olivo, 80 F.3d 1466, 1468-69

(10th Cir. 1996)(finding the district court did not abuse its discretion when it admitted evidence about an event over one year after a defendant's arrest); <u>United States v. Bonnett</u>, 877 F.2d 1450, 1461 (10th Cir. 1989)(holding that evidence about events over a year after the charged conduct was not "too remote in time and unrelated to the transactions with which he was charged").  This similarity may be shown through "physical similarity of the acts or through the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic offense and charged offenses."  <u>United States v. Queen</u>, 132 F.3d 991, 996 (4th Cir. 1997)(quoting <u>United States v. Beechum</u>, 582 F.2d 898, 911 (5th Cir. 1978)).  <u>See</u> <u>United States v. Bonnett</u>, 877 F.2d at 1461 ("The closeness in time and the similarity in conduct [are] matters left to the trial court, and [its] decision will not be reversed absent a showing of abuse of discretion.").  The more similar the act or state of mind, the more relevant the evidence becomes.  <u>See</u> <u>United States v. Queen</u>, 132 F.3d at 996.  Moreover, when establishing probative value, although the uncharged crime must be similar to the charged offense if it is unrelated to the charged offense, it need not be identical.  <u>See</u> <u>United States v. Gutierrez</u>, 696 F.2d 753, 755 (10th Cir. 1982).

**LAW REGARDING THE RELEVANCY OF EVIDENCE**

"The rules of evidence contemplate the admission of relevant evidence, and the exclusion of irrelevant and potentially prejudicial evidence."  <u>Train v. City of Albuquerque</u>, 629 F. Supp. 2d 1243, 1247 (D.N.M. 2009)(Browning, J.)(citing Fed. R. Evid. 401, 402, 403).  "Relevant evidence is evidence that has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  <u>United States v. Gutierrez-Castro</u>, No. CR 10-2072 JB, 2011 WL 3503321, at *3 (D.N.M. Aug. 6, 2011)(Browning, J.)(citing Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without

the evidence; and (b) the fact is of consequence in determining the action.")).  "The standard for relevancy is particularly loose under rule 401, because '[a]ny more stringent requirement is unworkable and unrealistic.'"  United States v. Ganadonegro, 854 F. Supp. 2d 1088, 1127 (D.N.M. 2012)(Browning, J.)(quoting Fed. R. Evid. 401 advisory committee's note).  Irrelevant evidence, or that evidence which does not make a fact of consequence more or less probable, however, is inadmissible.  See Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

## LAW REGARDING RULE 403

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice.  See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989).  "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]."  United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991))(internal quotation marks omitted).  "In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value."  Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d 1262, 1274 (10th Cir. 2000).  The "[e]xclusion of otherwise admissible evidence under Rule 403 'is an extraordinary remedy and should be used sparingly.'"  United States v. Smalls, 752 F.3d 1227, 1238 n. 4 (10th Cir. 2014)(quoting United States v. Tan, 254 F.3d at 1211).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's

discretion to balance possible unfair prejudice against probative value is broad, see United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980).  As the Supreme Court of the United States has noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . .  This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(citation omitted).

Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response from the jury, or if the evidence otherwise tends to adversely affect the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged.  See United States v. Rodriguez, 192 F.3d 946, 951 (10th Cir. 1999).  "Evidence is not unfairly prejudicial simply because it is damaging to an opponent's case." United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008)(quoting United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003)).  Rather, "[t]o be unfairly prejudicial, the evidence must have -an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"  United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee notes).

## DEFINITION OF WILLFULLY UNDER 18 U.S.C. § 242

Section 242 prohibits a defendant from "willfully subject[ing]" a person "to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or the laws of the United States."  18 U.S.C. § 242.  The deprivation of a constitutional or federal right, and that such deprivation was done willfully, are two separate elements.  See United States

v. Reese, 2 F.3d 870, 884 (9th Cir. 1993)("[T]he violation of a federally protected right and the specific intent to violate that right are *separate* elements of the crime established by the statute." (emphasis in original)).

> To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:
>
> . . . .
>
> Second: the defendant deprived [name of person] of [his] [her] right to [name right], which is a right secured by the Constitution or laws of the United States.
>
> Third: the defendant acted willfully, that is, the defendant acted with a bad purpose, intending to deprive [name of person] of that right.

Tenth Circuit Pattern Jury Instructions Criminal § 2.17, at 103-104 (2011).

The Supreme Court, in Screws v. United State, 325 U.S. 91 (1945)("Screws"),[5] defined the term "willfully" in the § 242 context.[6]  The Supreme Court explained that the term "willful" is a word of "many meanings, its construction often being influenced by its context."  Screws, 325 U.S. at 101 (quoting Spies v. United States, 317 U.S. 492, 497 (1943)).  The Supreme Court also noted that, in a criminal statute, willfully "generally means an act done with a bad purpose" and that it requires something more than merely doing "the act required by the statute."  325 U.S. at 101.  For 18 U.S.C. § 242, the Supreme Court held that "the presence of a bad purpose or evil

---

[5]The opinion in Screws was a plurality opinion.  See Screws, 325 U.S. at 91.  A majority of the Supreme Court, however, has subsequently adopted the Screws reasoning.  See Williams v. United States, 341 U.S. 97, 81-82 (1951); United States v. Guest, 383 U.S. 745, 753-54 (1966); United States v. Price, 383 U.S. 787, 793 (1966); Anderson v. United States, 417 U.S. 211, 223 (1974).  See also United States v. Johnstone, 107 F.3d 200, 213 n.8 (3d Cir. 1997); United States v. Reese, 2 F.3d at 896 n.16.

[6]The Supreme Court in Screws construed the predecessor statute to 18 U.S.C. § 242 -- 18 U.S.C. § 52.  Courts interpret Screws' construction of the term "willfully" in the former § 52 as applicable to § 242.  See United States v. Johnstone, 107 F.3d at 207-09; United States v. Bradley, 196 F.3d 762, 769 (7th Cir. 1999); United States v. Reese, 2 F.3d at 896; United States v. Couch, No. 94-3292 (6th Cir. June 20, 1995)(unpublished).

intentö by itself is insufficient to satisfy the õwillfullyö element.  325 U.S. at 103.  To ensure that

defendants are not punished for violating an unknown constitutional or federal right, the Court

construed õwillfullyö as requiring a defendant to either õknow or act[] in reckless disregardö in

depriving a person õof a defined constitutional or other federal right.ö  325 U.S. at 104.  Or as the

Supreme Court stated, õ[w]hen they act willfully in the sense in which we use the word, they act

in open defiance or in reckless disregard of a constitutional requirement which has been made

specific and definite.ö  325 U.S. at 105.

Accordingly, a conviction under § 242 requires proof that the defendant acted with the

specific intent to deprive a person of some constitutional right.  See Screws, 325 U.S. at 105.

õ[I]t [is] not sufficient that the defendants may have had a general bad purpose; . . . it [is]

necessary that they have the actual purpose of depriving [victim] of the constitutional rights

enumerated in the indictment . . . .ö  Apodaca v. United States, 188 F.2d 932, 937 (10th

Cir. 1951).

## ANALYSIS

The Court will grant the Motion and Amended Motion, because the United States has

established proper purposes for its 404(b) evidence, because the evidence is relevant, and

because the risk of potential unfair prejudice does not substantially outweigh the probative value

of the evidence.  The Court will, however, require the United States during closing arguments to

state with particularity the proper purposes for which the jury may consider the evidence of the

three prior incidents to ensure that the jury does not use the evidence for an improper purpose --

mainly, so that the jury does not use the three prior incidents to form an opinion that, because

Rodella is a õbad man,ö he deserves to be punished, or that because he was involved in the prior

three incidents, he must be guilty of the crime charged.  See United States v. Phillips, 599 F.2d at 136.

The crimes with which Rodella is charged require that he acted öwillfully,ö 28 U.S.C. § 242, and as with every element of a crime, the United States is required to prove this element beyond a reasonable doubt, see Patterson v. United States, 432 U.S. 197, 210 (1977)(ö[T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged.ö); United States v. Moore, 708 F.3d 639, 645 (5th Cir. 2013)(öTo prove a violation of Section 242, the government must prove beyond a reasonable doubt that the defendant: (1) willfully; (2) deprived another of a federal right; (3) under color of law.ö).  Willfully, in the § 242 context, is defined as having more than a ögenerally bad purposeö and as having the purpose to deprive a person of a constitutional right.  Screws, 325 U.S. 91, 107 (1945)(defining öwillfullyö for the predecessor statute to 18 U.S.C. § 242).  The United Statesø proffered purposes for introducing evidence of the three prior incidents may go towards proving the element of willfulness.  See United States v. Romine, 377 F. Supp. 2d at 1132.

Scienter is always difficult to prove.  It is almost always proved by circumstantial evidence rather than direct evidence.  Borchardt Rifle Corp. v. Cook, 727 F. Supp. 2d 1146, 1163 n.9 (D.N.M. 2010)(Browning, J.)(öRarely is there direct evidence of scienter, and generally scienter is proved by circumstantial evidence.ö).  This proof problem is particularly acute when the United States must prove that the defendant acted öwillfully.ö  See Tenth Circuit Pattern Jury Instructions Criminal § 1.38, at 61-62 (2011)(**WILLFULLY-TO ACT**)(öThe Committee does not recommend any general instructions defining the term ‑willfullyø because no single instruction can accurately encompass the different meanings this term has in federal law.ö).  See

also Screws, 325 U.S. at 101 (stating that "willfully" is "a word of many meanings, its construction often being influenced by its context." (quoting Spies v. United States, 317 U.S. at 497)).

In an attempt to meet the difficult burden of proving willfulness to deprive Tafoya of his constitutional right not to be subject to an unreasonable seizure by a law enforcement officer, the United States has represented to the Court that it will prove at trial Rodella's motive, intent, and plan and that he did not make mistakes or accidents in his actions. Accordingly, the United States submits three purposes for introducing evidence of the three prior incidents. First, the United States argues that one of the purposes of introducing evidence of the three incidents is to show motive and intent. See Amended Motion at 4, 8, 13. Specifically, the United States contends that the three prior incidents show that Rodella's motive and intent in pursuing Tafoya was to express his road rage, and to punish Tafoya for showing disrespect and for not recognizing that Rodella was the sheriff, rather than to protect public safety or enforce traffic laws. See Amended Motion at 4, 8, 13. Second, the United States argues that the three prior incidents show that Rodella had a plan to drive in a threatening and provocative manner, and then force other motorists to recognize him as sheriff and submit to his authority, despite not displaying any markings of a law enforcement officer. See Amended Motion at 4, 8, 13; Tr. at 115:5-116:10 (Peña, Court). Third, the United States argues that the three prior incidents show that Rodella knew that other motorists in Rio Arriba County do not instantly recognize that he is the sheriff and that he did not mistakenly pursue Tafoya under the belief that Tafoya recognized that Rodella was the sheriff. See Amended Motion at 4, 8, 13.

These three purposes, if they are the United States' true purposes, are legitimate purposes under Rule 404(b) and would assist the jury in determining whether Rodella acted willfully. In

an attempt to meet its high burden of proof on two elements of its cause of action, the United States has assumed additional burdens: to prove motive, intent, a plan, absence of mistake, and lack of accident.[7] In meeting these additional burdens, it wants to use the evidence of the three prior incidents.

In his briefs, Rodella does not argue that these would be improper purposes to prove willfulness, but instead argues that these purported purposes and that evidence of the prior incidents are not relevant and are highly prejudicial. See Response to Notice at 1-5; Response to Motion at 1-5. Even at the hearing, while refusing to concede that these purposes are legitimate in the case, Rodella nonetheless focused on the 403 prong. See Tr. at 121:7-121:22 (Gorence)(õ[E]ven if [the Court] find[s] it probative itøs subject to a 403ö). In any case, Rodella does not meet the purpose prong.

As to the relevance of the prior incidents, the similarities between the prior incidents and the charged crime creates a tendency that makes the likelihood that Rodella acted willfully more

---

[7]The United States also argues that the three incidents show that Rodella õknows that not everyone who travels in or through Rio Arriba County instantly recognizes him as sheriff.ö Amended Motion at 13. The United States makes an essentially identical argument concerning absence of mistake and lack of accident: Rodella did not mistakenly or accidently believe Tafoya recognized that Rodella was the sheriff. See Amended Motion at 5, 8. The Court believes that this argument is better characterized as absence of mistake or lack of accident than as knowledge. Using knowledge, the United States is attempting to argue that, because some people did not recognize that Rodella was the sheriff, Rodella knew that not everyone recognized that he was the sheriff, which the United States is using to impliedly suggest that Rodella knew that Tafoya did not recognize that he was the sheriff. This line of reasoning is fairly attenuated, but not without any force. In a case such as this one, the United States is trying to leave nothing to chance, and trying to cover every base; the argument and evidence has some relevance, in that they make one element -- willfully -- more likely than not. And given that the United States must prove that element beyond a reasonable doubt, it should be given a shot at doing so. Accordingly, the Court will admit for knowledge of both the alleged victim and of Rodella.

In any case, because the Court concludes that the United Statesø other proffered purposes -- motive, intent, absence of mistake, and lack of accident -- are proper, the Court will admit the evidence subject to the limitations and conditions set forth in this Memorandum Opinion.

probable than if evidence of the prior incidents were excluded. See United States v. Gutierrez-Castro, 2011 WL 3503321, at *3; Fed. R. Evid. 403. Each incident involves allegations that Rodella engaged in road rage, that he was shown disrespect, and that he acted out aggressively during a situation in which the other driver did not recognize that he was a law enforcement officer. Although each incident is not identical -- as Rodella notes, none of the other incidents involved a chase, use of physical force or violence, or a charge of excessive force, see Tr. at 124:10-124:14; id. at 125:1-126:2; id. at 126:19-126:22 -- they are similar enough that they affect the likelihood that Rodella acted willfully during the incident that resulted in the charged offense, see United States v. Gutierrez, 696 F.2d at 755. If anything, these distinctions help Rodella; according to the account of these alleged victims, he may be a jerk, but there is no evidence that he has inappropriately used force. These distinctions make the proffered evidence less prejudicial in their force.

Rodella argues that the United States' characterization of the prior incidents is incorrect or wrong in some aspects. This argument does not affect the relevance of the evidence. Instead, Rodella's contentions go to the credibility of the witnesses. Rodella argues that the Court will have to conduct a mini-trial for each incident that will require õnumerous witnesses and documentary evidence.ö Response to Notice at 4. The Court concludes that Rodella is exaggerating the issue. Each incident involved a small number of people. The only witnesses to the Maes incident are Rodella and Maes. See Amended Motion at 3-4. The only witnesses to the Ledesma incident are Rodella, Ledesma, and Ledesma's family. See Amended Motion at 7-8. And the only witnesses to the Gonzales incident are Rodella, Gonzales, and Gonzales' husband. See Amended Motion at 12-13.

Rodella's objections to the incidents concern the United States' characterization of the incidents or concern the credibility of the witnesses. For instance, concerning the Maes incident, Rodella argues that the part of the highway, where the incident occurred, does not allow for passing, and that Rodella passed Maes only when they reached a part of the highway that permitted him to pass her. See Tr. at 122:8-123:6 (Gorence). Rodella further argues that he did not activate his emergency lights until after Maes flashed her high-beams in his rear window, blinding him. See Tr. at 123:1-123:14 (Gorence). All of this evidence can be ascertained from Maes on cross-examination and requires no additional witnesses. As for the Ledesma incident, Rodella argues that, as soon as he stopped Ledesma, Ledesma told him that he was a neighbor and friend on the governor. See Tr. at 125:19-125:24 (Gorence). Additionally, Rodella argues that the citations issued to Ledesma were not dismissed, but rather Ledesma pled no contest. See Tr. at 126:5-126:19 (Gorence). All of this evidence likely can be ascertained on cross-examination, or Rodella can confront Ledesma on cross-examination with the copy of the disposition report of Ledesma's citation. No additional witnesses likely are required. As for the Gonzales incident, Rodella argues that Gonzales' husband was speeding and that Rodella merely stopped him and warned him not to speed. See Tr. 127:19-128:2 (Gorence). Rodella can confront Gonzales on cross-examination to ascertain this evidence likely without calling any additional witnesses -- especially considering no other witnesses saw the incident other than Gonzales' husband. As for Rodella's argument that Maes, Ledesma, and Gonzales did not file a complaint against him, see Tr. at 121:4-121:6 (Gorence), and that none of the incidents involved a chase or use of force, see Tr. at 123:24-124:14; id. at 125:1-126:22; id. at 127:22-127:24 (Gorence), once again, Rodella can confront Maes, Ledesma, and Gonzales on cross-examination. The Court concludes that there is not a real need for mini-trials and the calling of

numerous witnesses for each prior incident. The additional evidence appears marginal. Cross-examination is likely sufficient for Rodella to attempt to impeach the United States' witnesses and to introduce the relevant evidence that corresponds with his characterization of the incidents.

Regarding Rodella's argument that evidence of the three prior incidents is unfairly prejudicial, the Court concludes that, if the evidence is used solely for the purposes for which the United States assured the Court it will be used, the potential of unfair prejudice does not substantially outweigh the evidence's probative value. See United States v. Zamora, 222 F.3d at 762. This evidence is prejudicial -- as is almost all 404(b) evidence -- but prejudice, by itself, does not automatically lead to exclusion. See United States v. Archuleta, 737 F.3d 1287, 1293 (10th Cir. 2013)("Virtually all relevant evidence is prejudicial to one side or the other."). To warrant exclusion, the evidence's unfair prejudice must substantially outweigh its probative value. See Fed. R. Evid. 403; United States v. Pettigrew, 468 F.3d at 638. The United States is tasked with proving the high burden of willfulness, see 18 U.S.C. § 242, and evidence of these three prior incidents is probative to proving willfulness, if used for the proper purposes of showing motive, intent, plan, absence of mistake, and lack of accident. The unfair prejudice of the three prior incidents may substantially outweigh their probative value, if they are merely thrown at the jury without linking them to their proper purposes. See United States v. Morley, 199 F.3d at 133. Without this link, the jury will likely use the evidence for its only apparent, albeit improper, purpose -- propensity. See United States v. Morley, 199 F.3d at 133. Without this link, the probative value is low, because the evidence will not be interpreted for any purpose other than propensity, and the prejudicial effect is substantial, thus, warranting exclusion. To assuage this concern, the Court will order the United States to state to the jury its precise purpose for introducing the evidence.

If the United States chooses to introduce evidence of the three prior incidents at trial, it must state during closing arguments that the jury may consider the evidence of the three incidents only for the specific purposes that the United States asserted in the Amended Motion. Specifically, during closing arguments, the United States must state <u>verbatim</u> the following:

(i)     Rodella's[8] motive and intent for pursuing Tafoya[9] was to express his road rage, punish disrespect, and force Tafoya to submit to his authority and not to enforce any traffic law.

(ii)    Rodella had a plan to drive in a threatening manner towards other motorists, and if he succeeded in provoking any disrespectful act, force the motorist to submit through a display of his authority. The traffic encounters are part of a common plan Rodella had to require the citizens of Rio Arriba to submit to his authority.

(iii)   Rodella did not make a mistake or accidently forget that his identity was not apparent to all motorists when he pursued Tafoya in a private Jeep.[10]

All three of these sentences are taken from the United States' Amended Motion, with slight or no modification.[11] The United States assured the Court at the hearing on September 15,

---

[8]The United States may refer to Rodella by another term, such as "Defendant," "Mr. Rodella," or "Sheriff Rodella."

[9]The United States may use Tafoya's full name or refer to him using another term, such as "victim," "Michael," or "Mr. Tafoya."

[10]The Court will not require the United States to state all three sentences in repetition or in the order that they are listed within this Memorandum Opinion. The Court will order, however, that the United States state each sentence.

[11]"Defendant's motive and intent in pursuing M.T., which was to express his road rage and to punish any disrespect he perceived from citizens of Rio Arriba County." Amended Motion at 4. "Defendant's motive and intent was to force M.T. to submit to Defendant's authority and not to enforce any traffic law." Amended Motion at 5.

Defendant has a plan to compel citizens to submit to his authority. His plan is to drive in a threatening and provocative manner towards other motorists (in both cases, prolonged tailgating), and if he succeeds in provoking any disrespectful act (in Maes' case, flashing her lights; in M.T.'s case, driving away) he will force the

- 33 -

2014, that it would make these arguments to the jury and that these were the only purposes for which it sought to introduce the evidence. See Tr. at 114:11-115:21; id. at 116:11-117:2; id. at 117:22-118:22 (Peña, Court). The Court concludes that requiring the United States to make these particular arguments will alleviate concerns of unfair prejudice. This requirement will link the evidence of the three prior incidents to their proper purposes. Additionally, providing a limiting instruction, pursuant to rule 105, if requested by Rodella, will further rein in the jury and prevent it from using the evidence for an improper purpose. See Fed. R. Evid. 105. This requirement and limiting instruction will ensure that the evidence of the three prior incidents are used for its proper purposes of proving motive, intent, plan, absence of mistake, and lack of accident, which makes the evidence probative to showing willfulness, and at the same time lessens the likelihood that the evidence will be used for propensity. The Court, thus, concludes that, with these requirements, the unfair prejudice of the evidence does not substantially outweigh its probative value.

The Court is always slow and cautious about admitting into evidence at trial so-called 404(b) evidence, especially in a criminal trial against the defendant. See United States v. Griffin, 389 F.3d 1100, 1103 (10th Cir. 2004)(õAccordingly, trial courts should exercise caution in their admission of such testimony.ö). The genius of the Anglo-American criminal justice system is that a defendant is tried only for the crime with which the defendant is charged, and not for past crimes, uncharged criminal conduct, or bad acts. See United States v. Vigil, No. CR 05-2051 JB,

_____

motorist to submit through a display of his authority. . . . [B]oth traffic encounters, as discussed above, are part of a common plan that Defendant has to require the citizens of Rio Arriba County to submit to his authority.

Amended Motion at 5-6.
õDefendant did not make a mistake or accidently forget that his identity was not apparent to all motorists when he pursued M.T. in a private Jeep.ö Amended Motion at 8.

2006 WL 4061154, at *7 (D.N.M. Sept. 1, 2006)(Browning, J.)(õ[T]he genius of our criminal justice system is that we only try a defendant for the crime with which he or she is charged, not for other wrongs.ö). In other words, criminal defendants are tried only for the crime charged and not for being a bad person. See Montoya v. Sheldon, 898 F. Supp. 2d 1259, 1271 (D.N.M. 2012)(Browning, J.)(citing United States v. Phillips, 599 F.2d at 126). Rule 404(b) is often in tension with this fundamental notion, and the Court must guard zealously against the use of 404(b) that undermines the fundamental notion that defendants are tried only for the crime charged.

Nevertheless, the Federal Rules of Evidence make clear that rule 404(b) evidence is admissible, and the Tenth Circuit has expansively interpreted that admissibility, even reversing district courts that exclude the governmentøs 404(b) evidence. United States v. Tan, 254 F.3d at 1213-14. Indeed, the Tenth Circuit has used a liberal rule for the admission of 404(b) evidence in civil cases and cautioned against exclusion. In fact, there are cases where the admission of rule 404(b) is very appropriate in criminal cases -- where a defendant accused of killing a baby defended by arguing the baby died of Sudden Infant Death Syndrome, but he has had some other children die under similar circumstances, see Clark v. State, No. 12-12-287-CR, 2013 WL 5966464 (Tex. App. -- Tyler, Nov. 6, 2013, pet. denied)(unpublished)(reversing and rendering acquittal on other grounds); a defendant accused of killing his wife defended by saying she accidently drowned in the bathtub, but he had previous wife who died in the same manner, see Commonwealth v. Boczkowski, 846 A.2d 75, 89 (Pa. 2004); and where a defendant is caught driving a truck loaded with marijuana, denies that he knew drugs were in the vehicle, but he had been caught driving a truck filled with marijuana before, see United States v. Wallen, 376 F. Supp. 2d 1184, 1190-91 (D.N.M. 2005)(Browning, J.). In these situations, the Court is

comfortable letting in the 404(b) evidence to show lack of accident, knowledge, and other proper purposes.

Where the Court gets most concerned about 404(b) evidence becoming propensity evidence is where the United States wants to use bad acts to prove intent in the crime charged. While 404(b) evidence may have an element of propensity even when offered for a proper purpose, see United States v. Moran, 503 F.3d at 1145; United States v. Romero, 2011 WL 1103862, at *12, the Court must guard against the United States bringing in any bad conduct, and saying that the seminal conduct proves motive, intent, plan, absence of mistake, and lack of accident in this case. The Court's concern is that this fuzzy link between the 404(b) evidence and the issue in the case is just a way for the United States to get in prohibited propensity evidence against the defendant.

This case presents a proffer that calls the Court to move cautiously. Court is mindful of the high burden that the United States must prove that Rodella willfully deprived Tafoya of his constitutional rights not to be subject to an unreasonable seizure by a law enforcement officer. The Court must give the United States some leeway to try its case the best way, within the rules, that it thinks appropriate.

If the United States wants to prove "willfully" by taking on the additional burden of proving motive, intent, plan, absence of mistake, and lack of accident, the Court believes it should give the United States that leeway. On the other hand, the Court will demand that the United States stick to its plan. If the United States wants to admit these three incidents, it must also do what it said and link them specifically to its argument about motive, intent, plan, absence of mistake, and lack of accident. See United States v. Morley, 199 F.3d at 133. The Court does not want the evidence of these three incidents coming in at trial, the United States abandoning its

effort to prove motive, intent, plan, absence of mistake, and lack of accident, and then have these three incidents floating around in the courtroom, to be used by the jury for the only purpose they can make sense of them -- propensity.

The Court draws comfort in letting this evidence in by scripting what the United States must say to keep these three incidents tethered to their named purposes. Some purposes sound better written in a brief than they do in an oral argument; the United States needs to decide that issue now rather than after the evidence of the three incidents is admitted.

**IT IS ORDERED** that the Motion in Limine to Introduce Evidence Pursuant to Federal Rule of Evidence 404(b), filed September 9, 2014 (Doc. 46); and the Amended Motion in Limine to Introduce Evidence Pursuant to Federal Rule of Evidence 404(b), filed September 10, 2014 (Doc. 56), are granted. The Court further orders, that if the United States introduces evidence of the three prior incidents at trial, the United States to state <u>verbatim</u>, during closing arguments:

    (i)      Rodella's motive and intent for pursuing Tafoya was to express his road rage, punish disrespect, and force Tafoya to submit to his authority and not to enforce any traffic law.

    (ii)     Rodella had a plan to drive in a threatening manner towards other motorists, and if he succeeded in provoking any disrespectful act, force the motorist to submit through a display of his authority. The traffic encounters are part of a common plan Rodella had to require the citizens of Rio Arriba to submit to his authority.

    (iii)    Rodella did not make a mistake or accidently forget that his identity was not apparent to all motorists when he pursued Tafoya in a private Jeep.

Additionally, upon Rodella's request, the Court will give the jury an appropriate limiting instruction.

_____

UNITED STATES DISTRICT JUDGE

*Counsel:*

Damon P. Martinez
    United States Attorney
Tara C. Neda
Jeremy Peña
    Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

Robert J. Gorence
Louren M. Oliveros
Gorence & Oliveros PC
Albuquerque, New Mexico

*Attorneys for the Defendant*