IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.: 14-CR-2783 JB |
| | ) |
| THOMAS R. RODELLA, | ) |
| | ) |
| Defendant. | ) |

## MOTION FOR A NEW TRIAL

The Defendant, Thomas R. Rodella, by his attorneys, Robert J. Gorence and Louren Oliveros of Gorence & Oliveros, P.C., hereby submits his Motion for a New Trial pursuant to Fed. R. Crim. P. 33. In support of his motion, Mr. Rodella states as follows:

### FACTUAL BACKGROUND

It goes without saying that the government's key witness at trial was Michael Tafoya. In addition to Mr. Tafoya, the surprise witness, Renee Dominguez, was a critical witness when she corroborated Mr. Tafoya's events as represented in the statement that she assisted Mr. Tafoya to write shortly after his release from custody. After the trial, three witnesses have come forward with information that would have been critical for the jury to hear to evaluate the credibility of both Mr. Tafoya and Ms. Dominguez. As set forth in this motion, this newly discovered evidence, which could not have been unearthed by counsel utilizing due diligence to prepare for trial, would have the probability of changing the jury's verdict to one of an acquittal.

At trial, Mr. Tafoya testified that he was employed at a group home taking care of the aged and infirm. In her closing, AUSA Neda emphasized the fact that Mr. Tafoya's alleged goodwill towards others was reflected in his employment. Mr. Tafoya also testified that he was

1

not working at the time of the trial because of the stress related to the trial.[1]  After the trial, Mr. Tafoya's supervisor contacted a member of the Rodella family and provided information that shows that Mr. Tafoya actually *perjured* himself at trial.  Mr. Tafoya was not on leave related to his subpoena to testify against Mr. Rodella.  Instead, Mr. Tafoya had been on administrative leave following an incident that Mr. Tafoya had been physically abusive to an elderly female patient at the facility.  Mr. Tafoya was *fired* from the facility, Mirador - Easter Seals, on August 27, 2014, after the allegations of physical abuse were substantiated.  This evidence, whether or not it was known to the prosecution, contradicts Mr. Tafoya's sworn testimony and would be relevant to impeach the depiction of him as a peace-loving caregiver.  Additionally, the evidence would be relevant to show that Mr. Tafoya was in fact the aggressor on March 11, 2014, in his interaction with Mr. Rodella.  At an evidentiary hearing, and with the benefit of a subpoena, Mr. Tafoya's employment records from Mirador – Easter Seals will be presented to the Court.

Renee Dominguez testified on Wednesday, September 24, 2014.  Her testimony commenced in the afternoon and on cross-examination she acknowledged that she was first contacted by the FBI during the lunch hour that very day.  As such, Ms. Dominguez was not on a witness list, and Mr. Rodella did not object to her testimony after a quick web search revealed that she did not have any criminal convictions.  Her testimony was crucial to corroborate Mr. Tafoya's testimony that he had a black eye as well as Mr. Tafoya's two-page typed statement which was admitted as substantive evidence pursuant to Fed. R. Evid. 801(d)(1)(B) to rebut an allegation of recent fabrication.  After the trial, a neighbor and friend of Ms. Dominguez contacted the Rodella family and relayed that Ms. Dominguez had a history of dishonesty and

---

[1] Undersigned counsel has ordered the transcripts of Mr. Tafoya's and Ms. Dominguez' testimony and they have not yet been received.  Because counsel does not have the transcripts in his possession, the assertions of trial testimony is based on undersigned counsel's recollections and trial notes.  At the time of the evidentiary hearing on this matter, this motion will be amended to reflect exactly the statements made in the transcripts.

fraud.  Undersigned counsel now has information that Ms. Dominguez was fired from her employment at Walmart for theft of money from the register.  Additionally, the former regional administrator at Ms. Dominguez's other place of employment, El Centro Family Health, a rural health clinic, has provided information that Ms. Dominguez attempted to acquire unemployment benefits under a fictitious name after she had been fired from El Centro.  At an evidentiary hearing, Mr. Rodella will use the Court's subpoena power to obtain Ms. Dominguez' employment records from Walmart and El Centro and will present testimony which will demonstrate that Ms. Dominguez had been involved and engaged in acts of theft and moral turpitude.  Had this been known to counsel, at the very least, the information would have been used to impeach Ms. Dominguez and the jury would have had the benefit of evaluating her testimony in a different light.  The same is true for Mr. Tafoya.

## ARGUMENT

Under Fed. R. Crim. P. 33, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).  A motion for a new trial "grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty . . . any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b).

A motion for a new trial "is granted only with great caution, being addressed to the sound discretion of the trial court." *United States v. Allen,* 554 F.2d 398, 403 (10th Cir.), *cert. denied,* 434 U.S. 836, 98 S.Ct. 124, 54 L.Ed.2d 97 (1977).  The Tenth Circuit has an established standard for new trials based on newly discovered evidence.  To prevail on a motion for a new trial based on newly discovered evidence, a defendant must show that:

> (1) the evidence was discovered after trial; (2) the failure to learn of the evidence was not caused by his own lack of diligence; (3) the new evidence is not merely

3

>impeaching; (4) the new evidence is material to the principal issues involved; and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal.

*United States v. Herrera*, 481 F.3d 1266, 1270 (10th Cir. 2007) (citing *United States v. Sinclair,* 109 F.3d 1527, 1531 (10th Cir. 1997)).

To meet the first prong of the Rule 33 test, the evidence must have been discovered after trial. This prong is met in this case because evidence relating to both Michael Tafoya and Renee Dominguez was not discovered until after trial in this case. To satisfy the second prong of the Rule 33 test, the movant must have exercised due diligence. However, the Tenth Circuit has explained that the due diligence required to warrant a new trial is simply "reasonable diligence," such that defendants may not "keep an evidentiary trump card in the event of conviction." *United States v. LaVallee,* 439 F.3d 670, 701 (10th Cir. 2006) (quoting *United States v. Quintanilla*, 193 F.3d 1139, 1147 (10th Cir. 1999)). Had the existence of Ms. Dominguez been known prior to trial, Defendant's counsel would have certainly conducted background research and gathered information related to Ms. Dominguez. The testimony of Ms. Dominguez was only revealed shortly before her testimony in court. Although defense counsel made every effort to do so within the small amount of time allowed, the defense did not have a legitimate opportunity to look into Ms. Dominguez' past before her testimony. Moreover, Mr. Tafoya's supervisor did not come forward with information regarding Mr. Tafoya's leave from work until after the trial. Both the first and second prong are satisfied in this case, as the information was clearly not known until after trial and counsel exercised the reasonable diligence required.

Additionally, to be successful on a motion for a new trial, generally "allegedly newly discovered evidence must be more than merely impeaching or cumulative." *United States v.*

*Kelley*, 929 F.2d 582, 586 (10th Cir. 1991).  Impeachment evidence can, however, be the basis for a motion for a new trial under Rule 33.  Specifically, the Ninth Circuit has stated:

> In some situations, however, the newly-discovered impeachment evidence may be so powerful that, if it were to be believed by the trier of fact, it could render the witness' testimony totally incredible. In such a case, if the witness' testimony were uncorroborated and provided the only evidence of an essential element of the government's case, the impeachment evidence would be "material" . . . Moreover, Rule 33 permits the granting of a new trial motion "if required in the interest of justice." Fed.R.Crim.P. 33. If newly-discovered evidence establishes that a defendant in a narcotics case has been convicted solely on the uncorroborated testimony of a crooked cop involved in stealing drug money, the "interest of justice" would support a new trial under Rule 33.

*United States v. Davis*, 960 F.2d 820, 825 (9th Cir. 1992); *see also United States v. Wallach,* 935 F.2d 445 (2d Cir. 1991) (as amended) (concluding that new evidence impeaching the government's central witness was powerful enough to require a new trial); *United States v. Taglia,* 922 F.2d 413, 415 (7th Cir. 1991) (explaining that the prohibition on using impeachment evidence to secure a new trial should not be "taken at face value" and holding that a new trial would be warranted under Rule 33 if it were discovered after trial that the government's star witness was "utterly unworthy of being believed because he had lied consistently in a string of previous cases"); *Balestreri v. United States,* 224 F.2d 915, 917 (9th Cir. 1955) ("To deny in every case a motion for a new trial on the ground of newly discovered evidence for the sole reason that the evidence was 'merely impeachment' might often lead to injustice.").

In *Davis,* the defendant in a narcotics case was convicted primarily on the uncorroborated testimony of two undercover police officers. *Davis*, 960 F.2d 820, 825.  After trial, the defendant learned that one of the officers had been involved in stealing drug money and moved for a new trial.  The court held that newly discovered impeachment evidence could warrant a new trial if "newly-discovered evidence establishes that a defendant in a narcotics case has been convicted solely on the uncorroborated testimony of a crooked cop involved in stealing drug money."

*Davis,* 960 F.2d at 825. In such circumstances, the impeachment evidence, if believed, might be sufficiently powerful to render the witness's testimony "totally incredible." *Id.* In *Taglia* the key government witness was an FBI informant. *Taglia,* 922 F.2d 413, 415. After the jury convicted the defendants, it was discovered that the informant had given false testimony in an earlier case. *Id.* The court of appeals in limiting earlier cases indicating that a new trial cannot be granted on the basis of newly discovered impeachment evidence, stated that a trial court has discretion to grant a new trial when it is shown that the witness "lied consistently in a string of previous cases." *Id.*

The Third Circuit, in considering whether impeachment evidence is enough to warrant a new trial, explicitly stated that the correct question for a court to ask itself is: "was there a strong exculpatory connection between the newly discovered evidence and the facts that were presented at trial or did the newly discovered evidence strongly demonstrate that critical evidence at the trial against the defendant was very likely to have been false?" *United States v. Quiles*, 618 F.3d 383, 392-93 (3d Cir. 2010). In the instant case, the newly discovered evidence strongly demonstrates that the information presented by the government's key witnesses, Michael Tafoya and Renee Dominguez, was very likely false. The new evidence demonstrates that Michael Tafoya has an aggressive nature, with a history of adverse action due to the physical abuse of others, and that he likely perjured himself on the stand. Furthermore, the new evidence also demonstrates that Ms. Dominguez has a history of fraud, as well as falsifying information when it benefits her. This new evidence, had the jury been presented with it at trial, is the exact nature of evidence contemplated in both *Davis* and *Taglia*.

The fourth prong of the Rule 33 test is satisfied if "the new evidence is material to the principal issues involved." *United States v. Herrera*, 481 F.3d 1266, 1270 (10th Cir. 2007)

6

(citing *United States v. Sinclair,* 109 F.3d 1527, 1531 (10th Cir. 1997)).  Specifically, "[e]vidence is *material* if there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed." *United States v. Reese*, 745 F.3d 1075, 1083 (10th Cir. 2014) *cert. denied,* Sup. Ct. No. 14-5348, 2014 WL 3616208 (U.S. Oct. 6, 2014) (emphasis in original).  "A *reasonable probability* means the 'likelihood of a different result is great enough to undermine confidence in the outcome.'" *Id.* (quoting *Smith v. Cain*, 132 S. Ct. 627, 630, 181 L. Ed. 2d 571 (2012)).  "Put another way, we ask whether the absence of the withheld evidence at trial 'shakes our confidence in the guilty verdict.'" *Reese*, 745 F.3d 1075, 1083 (quoting *United States v. Cooper,* 654 F.3d 1104, 1120 (10th Cir. 2011).

Lastly, under the last prong of the Rule 33 test, a defendant is entitled to a new trial if the newly discovered evidence demonstrates "a reasonable probability of acquittal." *United States v. Gutierrez-Hermosillo,* 142 F.3d 1225, 1233 (10th Cir. 1998).  In general, courts routinely refuse to grant new trials to defendants whose newly discovered evidence does not raise reasonable doubt about the defendant's guilt. *See, e.g., United States v. Snoddy,* 862 F.2d 1154, 1156-57 (5th Cir. 1989) (a new trial was not warranted when consideration of a government agent's false testimony did not raise reasonable doubt about the defendant's guilt).  Conversely, courts have held that newly discovered evidence that is materially exculpatory raises a probability that the defendant will be acquitted at a new trial thereby establishing the defendant's right to a new trial. *See, e.g., United States v. Lloyd,* 71 F.3d 408, 412 (D.C. Cir. 1995) (new trial was warranted by newly discovered tax returns of the defendant's clients where "materially exculpatory evidence" contained therein raised reasonable probability of a different result on re-trial).

Both the fourth and the fifth elements of the Rule 33 test are met in this case.  Michael Tafoya was the government's star witness, and Renee Dominguez was the only witness to

corroborate any of Mr. Tafoya's testimony in the case against Mr. Rodella. The jury in this case found that Mr. Tafoya did not suffer any bodily injury, in contradiction to both Mr. Tafoya's and Ms. Dominguez' testimony. If the jury had information that Ms. Dominguez had a history of fraud and falsifying information, it is very likely that they would have found her testimony to be wholly uncredible. Similarly, if the jury had known that Mr. Tafoya perjured himself on the stand and had a history of being aggressive and abusing others, it very likely would have found Mr. Tafoya's testimony to be untrue. As demonstrated above by *Davis* and *Taglia*, a new trial is warranted in this case under Rule 33 because it has been discovered after trial that the government's key witnesses were utterly unworthy of being believed. If the jury in this case had been given this evidence, it is likely that the result of the trial would have been different because there was no other evidence corroborating Michael Tafoya's sequence of events. This evidence more than raises reasonable doubt as to Mr. Rodella's guilt because the sole author of the only statement introduced at trial detailing the allegations against Mr. Rodella has a history of falsifying documents to her benefit.

## CONCLUSION

WHEREFORE, Mr. Rodella requests that this Court conduct an evidentiary hearing so that the facts as set forth in this Motion can be established to the satisfaction of the Court and to then order a new trial for Mr. Rodella and for such other relief as this Court deems necessary and proper.

                                                        Respectfully submitted,

                                                        */s/ Robert J. Gorence* _____
                                                        Robert J. Gorence
                                                        Louren Oliveros
                                                        Gorence & Oliveros, P.C.
                                                        1305 Tijeras Avenue, NW
                                                        Albuquerque, NM 87102
                                                        Phone:  (505) 244-0214
                                                        Fax:  (505) 244-0888
                                                        Email:  gorence@golaw.us
                                                        Email:  oliveros@golaw.us

                                  **CERTIFICATE OF SERVICE**

       I hereby certify that a true and accurate copy of the foregoing pleading was emailed to counsel of record by CM/ECF this 17th day of October, 2014.

*/s/ Robert J. Gorence* ___
Robert J. Gorence

9