UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CRIMINAL NO. 14-2783 JB |
| | ) | |
| vs. | ) | |
| | ) | |
| **THOMAS R. RODELLA**, | ) | |
| | ) | |
| Defendant. | ) | |

## UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR NEW TRIAL (Doc. 133)

The United States opposes Defendant Thomas Rodella's Motion for New Trial (Doc. 133) because it is entirely based on false accusations as described below:

### Factual Background

**1. The defense makes incorrect claims in support of its motion for new trial.**

In support of its motion, the defense incorrectly claims that Michael Tafoya "perjured" himself when he testified that he was on leave pending the outcome of the trial. Doc. 133 at p. 2. In fact, Mr. Tafoya was on leave pending the end of the trial. A September 17, 2014, letter from the Easter Seals' Human Resources Director, stating that Mr. Tafoya was on leave of absence until September 28, 2014, is attached hereto as Exhibit 1. The defense incorrectly claims that Mr. Tafoya was "fired" from his employment with Easter Seals. *Id*. Subsequent to trial, Mr. Tafoya's leave was extended so that he could undergo hand surgery to correct the damage he sustained to his thumb and tendons during the defendant's assault. Mr. Tafoya has not been terminated, and plans to return once his cast and stitches are removed. An updated letter from the Easter Seals' Human Resources Director, stating that Mr. Tafoya remains employed by that

agency, is attached as Exhibit 2.  The defense also incorrectly claims that Mr. Tafoya falsely represented himself to be a peaceful person when, in fact, he abused the elderly.  *Id.* at pp. 2 and 8.  In fact, there has never been a substantiated incident of abuse.  To the contrary, Mr. Tafoya is considered to be "very gentle" and "extremely patient."  See Easter Seals' Incident Manager Paula Black's letter marked as Exhibit 3 attached hereto.

      The defense incorrectly claims that a prosecution witness, Renee Dominguez, was "fired from her employment at Walmart for theft of money from the register."  Doc. 133 at p. 3.  In fact, Ms. Dominguez has never been employed by Walmart, and she has never been fired from any position for theft from her employer.  The defense also incorrectly claims that Ms. Dominguez was "fired from El Centro," one of Ms. Dominguez' former employers.  *Id.*  In fact, Ms. Dominguez resigned from El Centro to accept another position.  A letter from the CEO of El Centro Family Health, stating that Ms. Dominguez was not terminated, is attached as Exhibit 4.  Finally, the defense incorrectly claims that Ms. Dominguez "attempted to acquire unemployment benefits under a fictitious name."  *Id.*  In fact, Ms. Dominguez used her lawful name (both maiden and married) to apply for unemployment benefits as is evidenced by the first page of her application for unemployment benefits, which is attached hereto.[1]  Exhibit 5.  Also attached are two emails from the District Supervisor of the New Mexico Department of Workforce Solutions (NMDWS), which is the state agency that administers the program.  Exhibits 6 and 7.  The Director expressly states: "The Department has no reason to believe that any misrepresentation was attempted by the claimant."  Exhibit 7.

---

[1] Some personal information, such as Ms. Dominguez' Social Security Number, has been redacted from the form in the interest of privacy.  However, the NMDWS verified that, in addition to providing her lawful name, Ms. Dominguez did provide her correct DOB and SSN.

**2. The defense practiced a pattern of publishing incorrect claims throughout the litigation of this case.**

The defense attorney's pattern of publishing incorrect statements can be documented well before the filing of the instant motion, and reveals a regrettable lack of professionalism. The following is a <u>non-exhaustive</u> list of incorrect claims made by the defense during the very short period from indictment in August 2014 through trial:

a. The defense claimed that Mr. Tafoya stated in the detention facility booking form that "I was never injured." August 27, 2014, press conference with defense attorneys, KQRE - 13; KOB - 4. Exhibit 8. In fact, the form, which was disclosed to the defense during discovery and introduced at trial, clearly states that Mr. Tafoya complained of pain in the back and thumb (for which he has just undergone surgery).

b. The defense announced to the media that Mr. Tafoya had "three previous arrests." Exhibit 8. In fact, Mr. Tafoya has never been arrested other than during the defendant's assault on March 11, 2014.

c. The defense incorrectly stated to the media that the United States wrongfully charged Thomas Rodella, Jr., because he was not a deputy at the time of the incident and, therefore, could not have acted under color of law. Exhibit 8. In fact, it is well-settled that private citizens can be charged under 18 U.S.C. § 242. *United States v. Price,* 383 U.S. 787, 794 (1966) ("Private persons jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of [Section 242]."); *United States v. Causey,* 185 F.3d 407 (5th Cir. 1999); *United States v. Lester,* 363 F.2d 68 (6th Cir. 1966).

d. The defense incorrectly claimed that Mr. Tafoya did not have a valid driver's license on March 11, 2014. Exhibit 8. In fact, the discovery produced to the defense and the trial evidence clearly showed that Mr. Tafoya was driving under a valid driver's license and that his

car was properly registered and insured.

e. In a press conference and a defense pleading, the defense incorrectly stated that the U.S. Attorney threatened to arrest and prosecute Defendant Thomas Rodella because he refused to deputize federal officers.  Exhibit 8, Doc. 38 at p. 2.  In fact, Jake Arnold's affidavit attached to Doc. 38 and Mr. Arnold's hearing testimony proved that U.S. Attorney Martinez only stated that any person who violates federal law would be arrested and prosecuted.  That is, U.S. Attorney Martinez did not threaten the arrest or prosecution of Defendant Rodella should he refuse to deputize federal officers.

f. The defense incorrectly claimed that Mr. Tafoya had been cited for driving an unregistered vehicle on three occasions.  (Doc. 52).  In fact, and as was proven at trial, Mr. Tafoya had only been cited once for driving an unregistered vehicle.

g. During trial, the defense incorrectly accused a prosecution witness, Lisa Gonzales, of having been arrested for assault on a police officer.  Setting aside the concern that such evidence is entirely improper under Fed. R. Evid. 404 and 609, the fact is that Ms. Gonzales has never been arrested.

h. The defense incorrectly informed the *Albuquerque Journal* on September 11, 2014, that the falsification of documents count against Defendant Rodella was dismissed because of faulty grand jury instructions from prosecutors.  Exhibit 9.  In fact, the defense had no possible basis for this claim because the defense had no knowledge of the instructions provided to the grand jury.

### Discussion

**1. Defendant cannot satisfy the Sinclair standards because the newly discovered "evidence," even if true, is merely impeaching, immaterial and certainly would not produce an acquittal.**

A motion for new trial "is not favorably regarded and should be granted only under great caution." *United States v. Orr,* 692 F.3d 1079, 1099 (10th Cir. 2012). The Tenth Circuit has established standards the defendant must meet in order to prevail on a motion for new trial. See, for example, *United States v. Sinclair,* 109 F.3d 1527, 1531 (1997). They are:

> (1) the evidence was discovered after trial;
> (2) the failure to discover the evidence was not due to the defendant's lack of due diligence;
> (3) the new evidence is not merely impeaching or cumulative;
> (4) the new evidence is material to the principal issues involved; *and*
> (5) the new evidence probably would produce an acquittal if a new trial were granted.

*Id.* (emphasis added).

The district court is not required to conduct an evidentiary hearing unless the newly discovered admissible evidence, if accepted as true, "would warrant relief as a matter of law." *United States v. Velarde,* 485 F.3d 553, 559 (10th Cir. 1997); *United States v. Kiister,* 1998 WL 982887 * 2 (10th Cir.); *United States v. Sutton,* 767 F.2d 726, 729 (10th Cir. 1985); *United States v. Brewer*, 630 F.2d 795, 803 (10th Cir. 1980). This Court's denial of a motion for new trial is reviewed for an abuse of discretion. *United States v. Hill,* 737 F.3d 683, 687 (10th Cir. 2013; *Orr*, 692 F.3d at 1099.

Here, the *Sinclair* analysis need not be conducted because Defendant's claims do not comprise admissible evidence. "Implicit in a claim of newly discovered evidence is that there is new *evidence* - that is, material that is admissible at trial." *Hill,* 737 F.3 at 687 (emphasis in original). Newly discovered evidence that is inadmissible or incorrect cannot support a motion for new trial. *United States v. Redcorn,* 528 F.3d 727, 744-45 (10th Cir. 2008). As the exhibits

to the United States' response reveal, all of the defendant's claims are incorrect and, therefore, cannot be used in support of a motion for new trial. *Id.* Putting aside the fact that these accusations are false, Fed. R. Evid. 404(a) would prohibit the introduction of evidence that witnesses were fired from their employment. Furthermore, the defendant's false accusation that Ms. Dominguez used a fictitious name to obtain unemployment benefits is not admissible as substantive evidence. Fed. R. Evid. 608(b).

In any event, the defendant cannot satisfy the last three *Sinclair* standards.[2] In his motion, the defendant admits that he would use this "evidence" to impeach the credibility of Mr. Tafoya and Ms. Dominguez. Doc. 133 at P. 1. The third *Sinclair* standard clearly states, and the Tenth Circuit has repeatedly held, that mere impeaching evidence is insufficient to warrant a new trial. *United States v. Tolliver,* 730 F.3d 1216, 1228 (10th Cir. 2013) (impeachment evidence "cannot serve as the basis for a new trial"); *United States v. Gwanthney,* 465 F.3d 1133, 1143-44 (10th Cir. 2006); *United States v. Combs,* 267 F.3d 1167, 1177 (10th Cir. 2001); *United States v. Youngpeter,* 986 F.2d 349, 356 (10th Cir. 1993); *United States v. Kelley,* 929 F.2d 582, 586 (10th Cir. 1991); *Brewer,* 630 F.2d at 803.

Clearly, the Tenth Circuit case law does not support the defendant's argument that newly discovered impeachment evidence supports a new trial. Therefore, the defendant resorts to other circuit case law to argue his claim. Even if these cases were controlling, they do not support the defendant's motion for new trial because he cannot demonstrate that his purported impeachment evidence is unusually powerful. For example, *United States v. Davis,* 960 F.2d 820 (9th Cir. 1992) held that the impeachment evidence must be "so powerful that … it could render the

---

[2] The United States does not challenge the defendant's representation that this so-called evidence came to him after the close of trial. Furthermore, since the accusations are false, the defendant could not have discovered it prior to trial had he exercised due diligence. Of course, the defense should not have made these accusations without exercising due diligence in determining the accuracy of these claims. Therefore, the United States does not argue that the first two *Sinclair* standards were not established.

6

witness' testimony totally incredible." *Id*. at 825.  In that case, however, the court determined that even the subsequent indictment and conviction of an undercover agent, whose testimony was central to the prosecution's case, was not "so powerful."  In *United States v. Taglia,* upon which the defendant also relies, the fact that the central witness who testified he saw the defendant deliver drugs had falsely testified he saw a defendant in possession of drugs in a previous trial was not sufficiently powerful to warrant a new trial.  922 F.2d 413, 415 (7th Cir. 1991). Similarly, newly discovered evidence that the prosecution's witness was a convicted child rapist was insufficiently powerful to warrant a new trial.  *United States v. Quiles,* 618 F.3d 383, 392-93 (3rd Cir. 2010).  Here, even if the defendant's accusations that Mr. Tafoya and Ms. Dominguez were fired were true, they would not be admissible under the rules of evidence, and they certainly do not present evidence "so powerful" to render the witness' testimony "totally incredible."  Consequently, Defendant Rodella cannot satisfy the third *Sinclair* standard under the controlling Tenth Circuit case law or that of other circuits.

Furthermore, the claimed impeachment evidence is not material to the principal issues involved in this case.  If accepted as true, the newly discovered "evidence" would only impeach Mr. Tafoya and Ms. Dominguez on a collateral matter.  A witness' termination of employment is not material to the *principal* issue of whether the defendant unlawfully assaulted Mr. Tafoya with a firearm under the color of law.  Given that the newly discovered "evidence" is false, inadmissible and immaterial to the principal issues of the case, it cannot be said that such evidence would probably produce an acquittal.  Consequently, the latter two *Sinclair* standards cannot be met.

**2. An evidentiary hearing on the defendant's motion for new trial is not necessary.**

As discussed above, a hearing is not required unless the newly discovered evidence, if accepted as true, would warrant a new trial as a matter of law.  *Velarde*, 485 F.3d at 559.

Impeachment evidence, standing alone, does not warrant a new trial as a matter of law under prevailing Tenth Circuit case law because it is not material to the principal issues of the case. Of course, it is difficult to even accept the "evidence" as true given that the defense has not attached witness statements that detail the newly discovered evidence. Indeed, the defense also has chosen not to identify the source of its accusations. Therefore, the defendant's motion for new trial merely lists accusations, not evidence.

The second section of the United States' Factual Background lists many other incidents in which the defense published false accusations throughout this litigation. This defense attorney's proffer carries no weight with the United States and should carry no weight with the Court because of this documented pattern of making false statements regarding this case, *see* Factual Background part 2, *supra*, and because the proffer is entirely refuted by the witness statements attached to the United States' Response. Based on the history of this case, the United States respectfully submits that the defense attorney's proffer – standing alone, omitting its sources and bases, and in contravention of readily established facts – cannot possibly justify an evidentiary hearing. In stark contrast, the United States has attached statements from competent witnesses that directly refute the claims raised in the defendant's motion for new trial.

## Conclusion

Unless and until the defense makes a *prima facie* showing to suggest that the *Sinclair* criteria can be satisfied, the United States respectfully requests that this Court deny Defendant's Motion for New Trial (Doc. 133) and deny his request for an evidentiary hearing as well.

Respectfully submitted,

DAMON P. MARTINEZ
United States Attorney

*/s/ Filed Electronically*
TARA C. NEDA
JEREMY PEÑA
Assistant United States Attorneys
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274

I HEREBY CERTIFY that on October 31, 2014, I filed the foregoing electronically through the CM/ECF system, which caused the below counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

Robert J. Gorence and Louren Oliveros
Attorneys for Thomas R. Rodella

*/s/ Filed Electronically*
Tara C. Neda, Assistant U.S. Attorney