UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CRIMINAL NO. 14-2783 JB |
| | ) | |
| vs. | ) | |
| | ) | |
| **THOMAS R. RODELLA**, | ) | |
| | ) | |
| Defendant. | ) | |

## SUPPLEMENTAL RESPONSE TO DEFENDANT'S MOTION
## FOR NEW TRIAL (DOC. 133)

The United States submits the following to supplement its Response to Defendant's Motion for New Trial (Doc. 134), and to address issues raised in the hearing conducted on November 13, 2014:

### Introduction

Throughout this prosecution, the United States exercised restraint (1) during the defendant's motion to disqualify the United States Attorney's Office, which relied on baseless and reckless allegations; (2) following defense counsel's numerous false statements about the law and the facts that were made to the media immediately before trial, which presented a real danger of tainting the jury panel; and (3) during the defense counsel's inappropriate personal attack on the prosecution[1] during his closing argument. Now, in pursuing his Motion for New

---

[1] For example, the Court may recall defense counsel describing undersigned counsel as a mere government employee who cares nothing about the truth.

Trial, defense counsel has attacked the reputation and character of the victim and a prosecution witness, and he has done so in bad faith. Consequently, the United States must respond.[2]

## Discussion

1. Defense counsel's accusations against a prosecution witness, Renee Dominguez, are clearly false.

It is inexplicable that the defense persisted in arguing that Ms. Dominguez had been fired from El Centro after the United States produced a letter signed by El Centro's CEO, denying such a claim. Moreover, the defense persisted by improperly serving subpoenas on El Centro employees. The last-minute service caused unreasonable inconvenience and unnecessary expense in attorney fees for this non-profit organization.

The evidence indisputably proved that Ms. Dominguez was not fired, but voluntarily left her employment to accept another position. Furthermore, the El Centro personnel files and the New Mexico Department of Workforce Solutions records reveal that Ms. Dominguez used her lawful name, and not a fictitious name. It is extremely troubling that defense counsel represented to the Court that his good faith basis for the claim that Ms. Dominguez had (1) been terminated from El Centro and (2) used a fictitious name in applying for unemployment

---

[2] In Defendant's Reply to United States (sic) Response to Defendant's Motion for New Trial (Doc. 136), the defense raised a new issue by attaching a letter from Dr. Elizabeth Davidson's stating that Thomas Rodella, Jr., is not psychotic. The defense was fully aware of Thomas Rodella, Jr.'s mental illness given that it was the basis for his dismissal from the original indictment. Furthermore, the medical records were easily available from Thomas Rodella, Jr.'s counsel as is evidenced by the bench conference during trial. Trial Tr. of Thomas Rodella, Jr.s' testimony at pp. 76-78, attached hereto as Exhibit 15. Thomas Rodella, Jr., testified about his confusion, inability to control aggression and unprovoked episodes of violence. Nothing in Dr. Davidson's proposed testimony could be considered material in light of Thomas Rodella, Jr.'s own admissions. Consequently, the defense cannot meet <u>any</u> of the *Sinclair* factors. Incidentally, defense counsel specifically represented to the Court that he did not ask Dr. Davidson to write the letter, that "Nobody else asked for it," and that "It was written by virtue of her own doing." Tr. at 73-74, attached hereto as Exhibit 16. In keeping with the well-established pattern, this assertion from the defense turns out to be utterly false. If called upon, Dr. Davidson would testify that Thomas Rodella, Jr., requested that she write the letter.

insurance[3] was a former El Centro employee.  *See* Exhibit 16 at p. 66.  Yet, defense counsel ***did not have that former El Centro employee testify at the hearing.***

It is equally inexplicable that defense counsel persisted in accusing Ms. Dominguez of being fired from Walmart – where she has never worked.  Yet, the defense failed to subpoena Walmart, which would have reported the absence of personnel records for Ms. Dominguez.  *See* attached Exhibits 12(a) and 12(b), which state that Ms. Dominguez has never been a Walmart employee.  During the hearing, defense counsel identified Charlene Salazar as his source that Ms. Dominguez had been fired by Walmart for theft.  Exhibit 16 at p. 81.  Yet, defense counsel ***did not have Ms. Salazar testify at the hearing.***

2.  Defense counsel's accusations against the victim, Michael Tafoya, are clearly false.

Despite a letter from Easter Seals' Human Resources Director Lisa Bronowicz, stating that Michael Tafoya had not been terminated from his employment, defense counsel persisted in his claim.  Many Easter Seals employees were subpoenaed – all improperly – to appear at the hearing.  Those who did appear confirmed that Mr. Tafoya was placed on leave for two days while an allegation from a client was reviewed and determined to be unsubstantiated.  Then, as Mr. Tafoya testified at trial, he was placed on leave pending the end of trial because of the demands of trial preparation.

Defense counsel persisted in his claim that Mr. Tafoya had exhibited a pattern of elder abuse even though Easter Seals Incident Manager Paula Black submitted a detailed statement denying such a claim.[4]  In fact, Ms. Black described Mr. Tafoya as "very gentle" and "extremely patient."  Doc. 134, Exhibit 3.  The United States has attached Exhibit 10, which is an affidavit

---

[3]  Ms. Dominguez' Unemployment Insurance application for 2012 is attached to this Supplement as Exhibit 9.  Only Ms. Dominguez' 2003 application was attached to the United States Response (Doc. 134).  Both applications reveal that Ms. Dominguez used her lawful names.
[4]  Easter Seals COO Patsy Romero testified that the client who defense counsel claimed was a victim of Mr. Tafoya's elder abuse is a frequent complainer, and <u>only 35 years old</u>.

3

signed by Ms. Black confirming the accuracy of Exhibit 3. The United States also attaches Exhibit 11, which is an affidavit signed by Ms. Black attesting that her medical condition prevented her from attending the hearing on Defendant's Motion for New Trial. Of course, Ms. Black had no legal duty to attend because defense counsel failed to comply with Fed. R. Crim P. 17.

In argument regarding the Easter Seals incidents, defense counsel stated, "I want all of the individual**s** who actually witnessed this, because according to them, it was anything but unsubstantiated." Exhibit 16 at pp. 12-13 (emphasis added). Only one individual – the individual who was fired for making false accusations – could have been defense counsel's source. This is so because, as Exhibit 14 reveals, the credible individuals in position to have witnessed the incidents were never contacted by the defense.

Defense counsel improperly served subpoenas on two employees of Las Cumbres. Las Cumbres is where Mr. Tafoya testified he had worked as a caregiver for mentally disabled adults before his position at Easter Seals. Defense counsel subpoenaed Las Cumbres in order to further his baseless argument that Mr. Tafoya has exhibited a pattern of elder abuse. Las Cumbres' Human Resources Director Clara Smith and Operations Manager Nanette Martinez did appear at court with Mr. Tafoya's personnel file in spite of the improper subpoena service. Yet, defense counsel ***never spoke with these witnesses, never requested Mr. Tafoya's personnel file, never called them to testify, never informed them they could receive witness fees and reimbursement for fuel, and never even informed them they were free to go once the hearing ended.*** *See* Exhibit 13 attached hereto.

3. The defense mischaracterized trial testimony to support yet another attempt to smear the reputation of Mr. Tafoya.

The defense brought Mr. Tafoya's stepfather – a witness not previously revealed – to testify at the hearing. The stepfather, who appeared quite confused, began to testify about Mr. Tafoya's teen years. In response to the United States' objection, defense counsel claimed that Mr. Tafoya "is an alcoholic, drinks repeatedly…" Exhibit 16 at p. 24. When the Court asked defense counsel how this relates to Mr. Tafoya's trial testimony, defense counsel misrepresented to the Court: "He was asked the questions <u>I just pulled it up</u>. He was asked did he use drugs or alcohol. He said, 'I don't, <u>never have</u>.'" *Id.* (emphasis added). In fact, the trial testimony went as follows: "Q. And do you abuse alcohol? A. No, no. Q. Do you drink alcohol? A. No." Trial Tr. of Michael Tafoya's testimony at pp. 4-5, attached hereto as Exhibit 17. Clearly, defense counsel misquoted the trial testimony, which is particularly worrisome given that he represented to the Court that he had just referred to the transcript. Moreover, the stepfather has not seen Mr. Tafoya for at least one year, and is in no position to know whether Mr. Tafoya drinks or uses illegal drugs. *See* Exhibit 16 at p. 35. Even if the stepfather could testify to what defense counsel claims, and even if the Tenth Circuit recognized impeachment evidence as grounds for a new trial, the testimony lacks foundation and does not impeach Mr. Tafoya's trial testimony.

It is worth mentioning that the stepfather testified he never spoke about his son or the issues of this case with the defense or Debbie Rodella, and that he did not reach out to anyone regarding this matter. Exhibit 16 at pp. 37-42. Yet, in order to support his argument that the evidence was newly discovered, defense counsel represented to this Court during a bench conference that the stepfather had reached out two days before the hearing, and had called

Debbie Rodella. Exhibit 16 at pp. 26-27. This direct conflict casts great doubt on the validity of the claims and the value of the proposed testimony.

4. The defense never had a good faith basis for any of the false accusations made against Mr. Tafoya and Ms. Dominguez.

Defense counsel's failure to properly serve any witness in support of his Motion for New Trial not only demonstrates an extraordinary lack of consideration for these non-profit organizations and their mission, it also demonstrates the defense had no expectation of proving his claims. The defense never subpoenaed Walmart for Ms. Dominguez's personnel files. Moreover, the defense failed to bring Charlene Salazar to testify even though she was the claimed basis for the accusation that Ms. Dominguez was fired from Walmart for theft. The defense failed to bring Cindy Gallegos to testify even though she was the claimed basis for the accusation that Ms. Dominguez was fired from El Centro and had used a fictitious name in applying for unemployment benefits. Defense counsel completely ignored the Las Cumbres' witnesses and the subpoenaed personnel file.

Of great concern is the damage such a campaign to smear victims and witnesses can cause. Trampling the reputations and character of witnesses undeniably creates a chilling effect that serves only to dissuade other potential witnesses from coming forward with the truth in a criminal matter. Where the defendant's conduct was an assault on the victim, defense counsel's conduct is an assault on the criminal justice system.

## Conclusion

Defense counsel permitted himself to be the means through which the defendant could attack the reputations of the victim and witness in order to retaliate and vent frustration over his conviction. The evidence demonstrates that the defense counsel never had a good faith belief that these accusations were true. Even if true, their admissibility is highly questionable, and they

6

could not support a motion for new trial. The United States respectfully requests that the Court end this spectacle by denying Defendant's Motion for New Trial without further hearings.

Respectfully submitted,

DAMON P. MARTINEZ
United States Attorney

*/s/ Filed Electronically*
TARA C. NEDA
JEREMY PEÑA
Assistant United States Attorneys
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274

I HEREBY CERTIFY that on November 20, 2014, I filed the foregoing electronically through the CM/ECF system, which caused the below counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

Robert J. Gorence and Louren Oliveros
Attorneys for Thomas R. Rodella

*/s/ Filed Electronically*
Tara C. Neda, Assistant U.S. Attorney