IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.: 14-CR-2783 JB |
| | ) |
| THOMAS R. RODELLA, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S OBJECTIONS TO THE PRESENTENCE REPORT AND SENTENCING MEMORANDUM**

The Defendant, Thomas R. Rodella, by his attorneys, Robert J. Gorence and Louren Oliveros of Gorence & Oliveros, P.C., hereby submits his Objections to the Presentence Report and his Sentencing Memorandum. In support of his objections, Mr. Rodella submits the following:

**FACTUAL OBJECTIONS:**

1. Mr. Rodella objects to paragraph no. 20 of the PSR. The jury found that Mr. Tafoya did not suffer injury to his thumb as a result of Mr. Rodella's actions. Mr. Tafoya's medical records have not been provided to Mr. Rodella and there is no testimony that Mr. Tafoya's October 7, 2014 surgery or medical expenses were causally related to the conduct of Mr. Rodella.

2. Mr. Rodella objects to paragraph nos. 23 and 24 of the PSR. The bases for this objection is the same as what was set forth with regard to paragraph no. 20 of the PSR.

3. Mr. Rodella objects to paragraph no. 44 of the PSR insofar as his father is 75 years old and his mother is 72 years old.

4. Mr. Rodella objects to paragraph no. 47 as it is incomplete. Mr. Rodella has a

1

brother, Gabriel Rodella, age 27, Espanola, NM, who is employed at Metzger's. This needs to be added to the PSR.

5. Mr. Rodella objects to paragraph no. 49 in that he resided in Santa Fe in 1982.

6. Mr. Rodella objects to paragraph no. 52 as inaccurate. Ms. Gomez was born in 1946 and died in May 1997.

7. Mr. Rodella objects to paragraph no. 53 as inaccurate. Thomas Rodella, Jr., has been diagnosed with PTSD and continues to get treatment at the VA.

8. Mr. Rodella objects to paragraph no. 55 as inaccurate. Mr. Rodella never received health treatment at the University of New Mexico Hospital in Albuquerque.

9. Mr. Rodella objects to paragraph no. 60 as incorrect. Mr. Rodella states that he experimented with marijuana when he was younger.

10. Mr. Rodella objects to paragraph no. 61 insofar as he also has an Associate's Degree in Criminal Justice from Northern New Mexico College.

11. Mr. Rodella objects to paragraph no. 62 as partially inaccurate. Copies of Mr. Rodella's certificates have now been provided to the Probation Department.

12. Mr. Rodella objects to paragraph no. 63 as inaccurate as his tenure as Sheriff of Rio Arriba County began on January 1, 2011.

13. Mr. Rodella objects to paragraph nos. 66 and 68. Mr. Rodella was licensed as an agent for a family business, Ayuda Bail Bonding in Espanola between 1999 and 2010. Mr. Rodella did not work in the family business during the time he served as magistrate judge.

14. Mr. Rodella objects to paragraph no. 70 as inaccurate. Mr. Rodella does not have military service. He was a civilian employee with the National Guard in Santa Fe.

15.     Mr. Rodella objects to paragraph no. 93.  Mr. Rodella disagrees with the statement that the suspensions by NMSP involved abuse of power.  Mr. Rodella further states that he was not removed on two occasions from the bench.  He was only removed once.  The first time he served as magistrate judge was when he was appointed by the Governor and he resigned.  It was after that, that Mr. Rodella ran for the magistrate judge position and was elected.

**LEGAL OBJECTIONS TO BASE OFFENSE LEVEL:**

Mr. Rodella objects to paragraph no. 88 of the Presentence Investigation Report (PSR) regarding restitution by virtue of the jury finding that Mr. Tafoya was not injured.  Therefore, restitution should not be ordered for any alleged medical expenses.  Specifically, there has been no testimony that anything regarding Mr. Tafoya's hand was caused by Mr. Rodella.  Moreover, Mr. Tafoya's lost wages were a result of his choice not to work.  There is no basis for the $3,200 figure requested.

The PSR calculates Mr. Rodella's base offense level as nineteen (19).  *See* PSR, ¶ 27.  The PSR uses the aggravated assault guideline to calculate this base offense level.  *Id.*  Pursuant to U.S.S.G. § 2A2.2, the base offense level for a person convicted of aggravated assault is fourteen (14).  This level is increased by five levels under the guideline only if the victim sustained serious bodily injury.  *See* U.S.S.G. § 2A2.2(3).  The jury specifically found that there was no bodily injury.  *See* Doc. 127.  Thus, the PSR's application of a five-level increase is incorrect.  At most, Mr. Rodella's base offense level is fourteen (14), if this Court applies the aggravated assault guidelines.

However, that guideline is not appropriate.  The guidelines define aggravated assault as follows: "'[a]ggravated assault' means a felonious assault that involved (A) a dangerous weapon

3

with the intent to cause bodily injury (i.e., not merely to frighten) with that weapon; (B) serious bodily injury; (C) strangling, suffocating, or attempting to strangle or suffocate; or (D) an intent to commit another felony." *See* U.S.S.G. 2A2.2, Commentary.  Because the jury in this case found that no bodily injury occurred, and inherently that no dangerous weapon was used with the intent to cause bodily injury, Mr. Rodella's conviction does not support the use of the aggravated assault guideline.  The jury found that Mr. Rodella used or threatened to use a firearm, but there was no finding that he intended to cause bodily injury.  *See* Doc. 127.  The extent of injury is a very important consideration in determining which guideline to apply, between the aggravated assault guideline and the civil rights guideline.  *See United States v. Cozzi*, 613 F.3d 725 (7th Cir. 2010) (court applies aggravated assault guideline where officer shackles man to wheelchair and repeatedly bludgeoned him in the head and face with a sap).  The aggravated assault guideline is not applicable.  Because the jury found that Mr. Tafoya suffered no bodily injury, and because the jury findings were based primarily on Mr. Rodella depriving Mr. Tafoya of his rights, U.S.S.G. §2H1.1 should be used.  Under U.S.S.G. §2H1.1(a)(3), Mr. Rodella's base offense level is ten (10).

**OBJECTION TO VICTIM RELATED ADJUSTMENT:**

Mr. Rodella should not receive a two level increase under U.S.S.G. §3A1.3.  The PSR recommends that two levels be added to Mr. Rodella's base offense level because "the victim was physically restrained after he was removed from his vehicle and handcuffs were placed on him."  *See* PSR ¶ 29.  Section 3A1.3 provides that "[i]f a victim was physically restrained in the course of the offense, increase by 2 levels."  *See* U.S.S.G. § 3A1.3.  "An upward adjustment for restraint is to be made in the context of an act which adds to the basic crime." *United States v. Old Chief,* 571 F.3d 898, 900-01 (9th Cir. 2009) (quoting *United States v. Mikalajunas,* 936 F.2d

153, 156 (4th Cir. 1991)). At trial, the evidence showed that Thomas Rodella Jr., whose charges were dismissed, restrained Mr. Tafoya after the initial struggle for the gun between his dad and Mr. Tafoya.  At that point, any civil rights violation had concluded, and for the safety of everyone, restraint of Mr. Tafoya was not a crime, but was important for the safety of everyone. Handcuffs were placed on Mr. Tafoya after the struggle was complete and as he was taken into custody.  This is not sufficient to warrant a two level increase to Mr. Rodella's base offense level. *See United States v. Infelise,* 835 F. Supp. 1466, 1490-91 (N.D. Ill. 1993) (holding that where there is no evidence which sufficiently demonstrates that a victim was restrained during the course of the offense, the two point enhancement pursuant to Section 3A1.3 is not warranted).

*United States v. Checora*, 175 F.3d 782, 790 (10th Cir. 1999), recognized that "[i]f a word in the Sentencing Guidelines is not specifically defined and does not have an established common-law meaning, the word must be given its ordinary meaning." *Checora,* 175 F.3d 782, 790 (citing *Chapman v. United States*, 500 U.S. 453, 461-62, 111 S.Ct. 1919, 114 L.Ed.2d 254 (1991)).  In recognizing these principles, *Checora* defined both "forcible" and "restraint" as they are used in the guidelines.  Specifically the Court concluded that by using the term 'forcible,' "the Commission meant the *defendant* must use physical force or another form of compulsion to achieve the restraint." *Checora,* 175 F.3d 782, 790 (emphasis added). Similarly, the *Checora* court concluded that "the Commission intended 'restraint' to mean the *defendant's* conduct must hold the victim back from some action, procedure, or course, prevent the victim from doing something, or otherwise keep the victim within bound or under control.  *Id*. at 791 (emphasis added).  That is not the case here, and as such, a two-level increase is not warranted.

**OBJECTION TO ADJUSTMENT FOR ROLE IN THE OFFENSE:**

The PSR calls for a two-level enhancement in Mr. Rodella's base offense level based on his role in the criminal activity. *See* PSR, ¶ 30. U.S.S.G. §3B1.1(c) calls for an increase of two levels "if the defendant was an organizer, leader, manager, or supervisor in any criminal activity." The PSR supports this by stating: "[d]uring the defendant's interview with the Federal Bureau of Investigation on June 4, 2012, he admitted he ordered his son to help him pull the victim from the vehicle in order to restrain him and arrest him." *See* PSR, ¶ 30.

While U.S.S.G. § 3B1.1(c) allows for a two level increase for a person's role in a criminal venture, it is not appropriate here. The Sentencing Guidelines, Tenth Circuit and other courts have stated that the nature of U.S.S.G. § 3B1.1(c) requires that there be more than one "criminal participant" in the criminal activity in order to justify a two level enhancement. *See United States v. Bauer*, 995 F.2d 182, 183 (10th Cir. 1993) ("All of the roles defined by § 3B1.1 require the involvement of more than one participant."). A "participant" is one who is "criminally responsible," although not necessarily convicted. U.S.S.G. § 3B1.1, cmt. n.1, 2. *E.g., United States v. Ramos-Paulino*, 488 F.3d 459, 463 (1st Cir. 2007) (leadership enhancement not applied to immigrant smuggler because government agent not criminally responsible for helping transport immigrants).

Before trial, the United States dismissed the charges against Thomas Rodella Jr. because he was not criminally responsible for his lack of ability to form criminal intent, because of his medical conditions incurred during his service in the military. After doing so, the United States cannot come back now and argue that Mr. Rodella Jr. was a "criminal participant." The United States is bound by its prior determination and estopped from arguing that this guideline is inapplicable. It is not applicable on its face because Thomas Rodella Jr. was not a "criminal participant." *Cf. United States v. Reneslacis*, 349 F.3d 412, 416-17 (7th Cir. 2003) (undercover

6

government agents not participants because not criminally responsible); *United States v. Williams*, 527 F.3d 1235, 1249 (11th Cir. 2008) (husband was not participant in wife's wire fraud and federal funds theft because he did not demonstrate requisite intent to defraud and steal by preponderance of evidence).

Moreover, a § 3B1.1 adjustment can only be considered when the defendant has a role in the offense for which "relative responsibility" can be allocated. *See* Guidelines § 3B1.1 Background; *see also United States v. Williams*, 891 F.2d 921, 926 (D.C. Cir. 1989); *United States v. Daughtrey,* 874 F.2d 213, 216 (4th Cir. 1989). The *Williams* court stated specifically that the "offense of conviction itself must involve more than one participant." *Williams,* 891 F.2d 921, 926. In *Williams,* the court found that the defendant should not be assigned a § 3B1.1 adjustment because the offense of the conviction was possession of a sawed-off shotgun, something only the defendant could do. *Id*. The Court reasoned that since possessing a sawed-off shotgun "did not involve more than one participant, the district court had no cause to allocate relative responsibility and, therefore, improperly assessed the two-level increase." *Id.*

The reasoning in *Williams* should be applied to this case. Here, Mr. Rodella is convicted in Count One of willfully depriving Michael Tafoya of his constitutional rights to be free from unreasonable seizure by a law enforcement officer. This is something that only Mr. Rodella, and not his son, could participate in. Tommy Rodella, Jr., Mr. Rodella's son, is not a law enforcement officer and like the defendant in *Williams*, he cannot be a participant in acting under color of law to deprive a person of his constitutional rights to be free from the unreasonable seizure of a law enforcement officer. Similarly, Mr. Rodella's possession and brandishing of a firearm, for which he was convicted under Count Two of the Indictment, is also something with

7

which Tommy Rodella, Jr., could not participate.  As such the two level increase in Mr. Rodella's base offense level for his role in the criminal activity is not warranted.

**OBJECTION TO ADJUSTMENT FOR OBSTRUCTION OF JUSTICE:**

Section 3C1.1 of the sentencing guidelines mandates a two-level increase in offense level if a defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense."  U.S.S.G. § 3C1.1.  This adjustment, however, is not warranted and the United States has the burden to prove such.  In order to apply this enhancement, clear factual findings are required.  *See United States v. Mason*, 168 F. App'x 905, 907 (11th Cir. 2006) (citing *United States v. Alpert*, 28 F.3d 1104, 1107-08 (11th Cir. 1994) (en banc)).  When a district court applies the obstruction of justice enhancement, "it should note specifically what each did, why that conduct warrants the enhancement, and, if applicable, how that conduct actually hindered the investigation or prosecution of the offense."  *Mason*, 168 F. App'x 905, 907 (quoting *Alpert*, 28 F.3d 1104, 1108).

Mr. Rodella did not obstruct justice.  The PSR bases the enhancement on the allegations that Mr. Rodella "falsified a report regarding the events of the instant offense after hearing that the New Mexico State Police were investigating [Mr. Tafoya's] complaint."  *See* PSR, ¶ 31.  The record does not show that Mr. Rodella willfully obstructed or impeded any investigation.  He filed the police report in accordance with his duties as a law enforcement officer.  The report contains Mr. Rodella's observations.  If those conflicted from other persons, that does not mean that they were false, or that they obstructed an investigation.  Every eyewitness to a situation will have a different perception of events.  That does not mean anyone is lying or obstructing justice.  It just means that because of the point of view, or angle, or mental state, that person may have

perceived things differently from another. If the United States seeks to uphold this enhancement, it should be required to prove how any action by Mr. Rodella hindered the investigation.

**REQUEST FOR A VARIANCE OR DOWNWARD DEPARTURE FROM THE SENTENCING GUIDELINE RANGE APPLICABLE TO COUNT 1:**

Congress directs the district court to impose a sentence sufficient, but not greater than necessary, to satisfy the statutory purposes of sentencing. 18 U.S.C. §3553(a). In determining the particular sentence to be imposed, the sentencing court must consider: the nature and circumstances of the offense and the history and characteristics of the defendant [§3553(a)(1)]; the need to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense [§3553(a)(2)(A)]; the adequacy of deterrence to criminal conduct [§3553(a)(2)(B)]; protection of the public from further crimes of the defendant [§3553(a)(2)(C)]; the need for educational or vocational training, medical care, or other correctional treatment in the most effective manner [§3553(a)(2)(D)]; the kinds of sentences available [§3553(a)(3)]; the applicable guidelines or policy statements issued by the Sentencing Commission [§3553(a)(4)]; any pertinent policy statements [§3553(a)(5)]; and the need to avoid unwarranted sentence disparities among defendants with similar records with similar conduct [§3553(a)(6)].

The Tenth Circuit has recognized that downward departures are allowable in the following circumstances:

> . . . pursuant to USSG § 5K2.0, which provides for downward departures if
>
> the court finds, pursuant to 18 U.S.C. 3553(b)(1), that there exists an aggravating or mitigating circumstance ... of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. 3553(a)(2), should result in a sentence different from that described.
>
> USSG § 5K2.0 (policy statement). The commentary to § 5K2.0 explains that departures are intended for "*extraordinary* case[s] that, because of a combination

of such characteristics or circumstances, differ[ ] significantly from the heartland cases covered by the guidelines."

Mr. Rodella requests that he be sentenced on Count 1 to one year, which consecutively served to the mandatory 7 year sentence he must receive pursuant to Count 2, yields a total sentence of 8 years (96 months). In support of this request, Mr. Rodella has submitted over 300 letters from individuals in the community attesting to his character. Additionally, Mr. Rodella has submitted numerous certificates and letters of commendation related to his law enforcement activities. Specifically, Mr. Rodella was commended on multiple occasions in high profile cases by both the FBI, fellow law enforcement, and District Attorneys. During his law enforcement career, Mr. Rodella did not have a history of excessive force. Significantly, the Fed. R. Evid. 404(b) witnesses who testified at trial *never* indicated that Mr. Rodella employed excessive force against them in any one of their traffic stops.

Additionally, Mr. Rodella's health conditions warrant a variance. As set forth in paragraphs 56 and 57 of the PSR, Mr. Rodella suffers from a serious blood disorder of hemochromatosis. Dr. Chan has treated Mr. Rodella for the condition for a period of time. Medical records from Dr. Chan will be submitted *in camera* to the Court in order to comply with Mr. Rodella's privacy interest and HIPAA. The condition is serious as the PSR indicates, including "leading to life-threatening conditions such as, cancer, heart arrhythmias and cirrhosis." *See* PSR at ¶ 56. Mr. Rodella asserts that this condition coupled with the arthritic injuries set forth in paragraph 55 which were incurred as a result of his law enforcement activities, provide a sufficient basis for a downward departure.

The final basis for a downward departure is the essence of the structured framework of the sentencing guidelines "that similarly situated defendants should be treated the same." In this case, a sentence of 16 to 17 years would be grossly excessive for a case involving excessive

force where the victim, Michael Tafoya, did not suffer a bodily injury. A review of multiple other cases involving an allegation of law enforcement officers sentenced following a conviction for 18 U.S.C. § 242, shows that a 16 to 17 year sentence would be grossly disproportionate for the facts that were established at trial.

In *United States v. Livoti*, 196 F.3d 322 (2nd Cir. 1999), Officer Livoti of the New York City Police Department (NYPD) and three other officers parked their patrol cars on a street in South Bronx where three brothers were playing football in the street several days before Christmas. The kids were not "Romoesque" in their accuracy and two errant passes struck the patrol cars. Livoti "yelled and cursed at the brothers, ordering them to go home." *Id.* at 324. The brothers continued playing the game but switched end zones on the street. Livoti again got out of his patrol car and cursed the brothers and challenged them to a fight. When one of the brothers said he would not leave, Livoti handcuffed, put him in the back of the patrol car, and told him that he would be spending Christmas at Rikers Island. Another brother began protesting his brother's arrest. Livoti then attempted to handcuff that brother's hands behind his back and then continued by putting the young man in a chokehold. Livoti kept him in the chokehold until he fell limp to the ground where he was pronounced dead after being driven to a nearby hospital. Based upon that egregious conduct, Judge Scheindlin sentenced Livoti to 90 months incarceration based upon Livoti's "violent and unprovoked behavior" which "caused the death of an innocent man." *Id.* at 330. The 90-month sentence was upheld by the Second Circuit Court of Appeals.

In *United States v. Brugman*, 364 F.3d 613 (5th Cir. 2004), Brugman a border patrol agent assisted in the arrest of multiple illegal aliens not far from the border. Brugman picked out two of the aliens and, after asking the question, "do you like to run?", proceeded to kick and

knock both to the ground despite any lack of resistance or movement. Upon conviction, Brugman was sentenced to 27-months imprisonment, a sentence was upheld by the Fifth Circuit Court of Appeals.

In *United States v. Christian*, 342 F.3d 744 (7th Cir. 2003), Christian participated in the arrest of an individual following a bar fight. While the arrestee was at the jail and Christian was in the process of doing paperwork, the arrestee uttered the N-word racial epithet at Christian. Christian then had two other officers push the jailer aside and pin the arrestee to the chair while "Christian forcibly kneed and punched Kail in the face several times." *Id.* at 746. Upon conviction, Christian received a 33-month sentence, a penalty which was upheld by the Seventh Circuit Court of Appeals.

In *United States v. Mohr,* 318 F.3d 613 (4th Cir. 2003), the Defendant was a Maryland police officer who released her police dog on two homeless individuals after they trespassed onto the roof of a commercial building. When the homeless men followed the directives of the officers and climbed down the roof keeping their hands in the air and were eventually surrounded by officers with guns drawn, Mohr released her dog following a directive from her boss that the dog can "get a bite." *Id.*at 616. Based on this conduct, Judge Chasanow sentenced Mohr to 120-months imprisonment, a sentence that was upheld by the Fourth Circuit Court of Appeals.

In *United States v. Wilson*, 344 Fed.Appx.134 (2009), Wilson was a jail administrator in White County, Tennessee, with a disruptive and unruly inmate. Wilson ordered that the inmate be kept in boxer shorts and a straight-jacket 23-hours a day and that, when not in the straight-jacket, the inmate had to be handcuffed and shackled. Wilson also ordered that the inmate could not have a blanket or a mattress in his cell. The inmate was also forced, in essence, to urinate

and defecate in his cell which did not include a toilet. Wilson kept the inmate in those conditions for approximately three weeks. Following conviction, Wilson was sentenced to 33-months, a sentence which was upheld by the Sixth Circuit Court of Appeals.

In *United States v. Frazier*, 2013 WL 499245 (2013), a matter previously handled by this Court, Frazier, pursuant to a plea agreement, was sentenced to three-years probation and $10,300.00 fine for conduct that involves swinging a flashlight two times at close range into a detainee, which struck him in the head and neck area. Frazier then pushed the detainee to the ground and struck him three more times with the flashlight.

The import of these cases, particularly *Livoti*, is that a 16-17 year sentence would be grossly disproportionate to other cases where excess force eventually resulted in injury or death to the victim. Here, with a non-injured victim, it is submitted that an eight-year sentence is sufficient but not greater than necessary to achieve the goals of 18 U.S.C. § 3553.

WHEREFORE Mr. Rodella requests this Court to grant his objections, to revise his base and adjusted offense levels accordingly, and to grant his request for a downward variance and for whatever other relief this Court deems just and proper.

Respectfully submitted,

*/s/ Robert J. Gorence*
Robert J. Gorence
Louren Oliveros
Gorence & Oliveros, P.C.
1305 Tijeras Avenue, NW
Albuquerque, NM 87102
Phone: (505) 244-0214
Fax: (505) 244-0888
Email: gorence@golaw.us
Email: oliveros@golaw.us

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing pleading was emailed to counsel of record by CM/ECF this 12th day of January, 2015.


*/s/ Robert J. Gorence*
Robert J. Gorence