IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | CRIMINAL NO. 14-2783 JB |
| **THOMAS R. RODELLA**, | ) ) ) | |
| Defendant. | ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTIONS
TO THE PRESENTENCE REPORT ( Doc. 157)**

The United States submits the following response to Defendant's objections to the presentence report (PSR).[1]

**Discussion**

1. <u>The victim sustained serious bodily injury as a result of the defendant's criminal conduct</u>.

Defendant disputes the PSR's determination that the applicable guideline is §2A2.2 rather than §2H1.1. He claims that although he used a dangerous weapon, he did not do so "with intent to cause bodily injury." He further claims that, because the jury acquitted on the bodily injury enhancement, this court at sentencing cannot find that his offense "involved" serious bodily injury. Defendant construes §2A2.2 too narrowly. Section 2A2.2 applies to felonious assaults that "involved (A) a dangerous weapon with intent to cause bodily injury with that weapon; (B) serious bodily injury; (C) strangling, suffocating, or attempting to strangle or suffocate; or (D) an intent to commit another felony." U.S.S.G. §2A2.2, Application Note 1. What Defendant does

---

[1] The United States notes that the PSR was submitted on December 3, 2014. The defendant's objections were due on December 17, 2014 - nearly one month ago.

not address is the clearest route to the applicability of §2A2.2: The jury found that Defendant acted with intent to deprive the victim of his civil rights, contrary to 18 U.S.C. § 242. That fact alone should cement the application of §2A2.2.

Additionally, §2A2.2 should apply – and restitution should be ordered – because Defendant's crime resulted in serious bodily injury. Defendant argues that U.S.S.G. §2H1.1 should apply and that restitution should not be ordered because the jury did not find beyond a reasonable doubt that the victim sustained an injury. His position is clearly wrong. "[A] sentencing court may consider conduct of which a defendant has been acquitted." *United States v. Watts*, 519 U.S. 148, 154 (1997). "[A] sentencing court should not be precluded from considering conduct for which the jury acquitted the defendant but for which there is still a preponderance of the evidence." *United States v. Todd*, 515 F.3d 1128, 1137-38 (10th Cir. 2008). On point is *United States v. McIntosh*, 2007 WL 1098677 at *4 - 5 (10th Cir.) where the Tenth Circuit upheld the sentencing court's enhancement for use of a dangerous weapon under U.S.S.G. §2A2.2(b)(2)(B) even though the jury acquitted the defendant of that element. Accordingly, this Court should apply U.S.S.G. §2A2.2 and its applicable enhancements. *See* U.S.S.G. §2H1.1(a)(1). In doing so, the Court may consider the serious bodily injury sustained by the victim for purposes of sentencing and restitution.

The victim testified at trial that he sustained an injury to his right thumb during the assault. Additionally, the victim reported the injury to the Rio Arriba Detention Facility, where he was booked the night of this offense. The Inmate Screening form, which was introduced into evidence at trial, documents the victim's report of an injury to his thumb and back. Trial Exhibit 11, p. 4, attached hereto. Because the victim was in a state of panic during the chaotic assault, he could not be certain exactly how he sustained the injury to his thumb. Whether it occurred

during his struggle with the defendant to prevent the gun from being pointed at his head or whether it occurred when the defendant's son tackled him at the defendant's instructions is not certain. The fact is, however, it can be shown by a preponderance of the evidence that the victim's "injury *resulted from* the acts Mr. Rodella committed." Doc. 130, Jury Instruction No. 12 (emphasis added). Accordingly, the defendant's sentence must take into account the injury.

The definition of serious bodily injury includes an "injury involving extreme physical pain or the protracted impairment of a function of a bodily member," or an injury that requires "medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. §1B1.1, Application Note 1. The victim continues to experience protracted impairment of his right hand. Moreover, the victim underwent surgery and physical therapy to correct the injury resulting from the defendant's criminal conduct. See Exhibit 1, attached hereto. Consequently, Section 1B1.1's definition of serious bodily injury is clearly met.

Defendant also objects to paragraph 88, which provides for restitution for the victim's lost wages. He claims that the victim chose not to return to work. However, during the hearing on Defendant's motion for new trial, Human Resources Director Lisa Bronowicz testified that Easter Seals placed the victim on unpaid administrative leave because of the demands of the investigation and trial preparation. Following the examination of the victim's right thumb, he was placed in a splint pending surgery, which prevented him from returning to work after the trial concluded.[2] Exhibit 1, p. 2. The victim continues to be on medical leave due to his surgery and ensuing physical therapy. Exhibit 1, p. 12.[3]

---

[2] The Court may recall that there are physical requirements in the victim's work, such as bathing and dressing the participants. Having an immobilized right hand prevents the victim from performing these tasks.
[3] Exhibit 1, p. 12 states that the date of injury is October 7, 2014, which is the date of surgery.

2. <u>Defendant's sentenced is properly enhanced by two levels pursuant to U.S.S.G. §3A1.3 because he was restrained during the course of the offense</u>.

In an exercise of twisted logic, Defendant argues that his sentence should not be enhanced for restraint of the victim because the handcuffs were for the "safety of everyone." Doc. 157 at p. 5. The reality is, however, that Defendant instructed his son to restrain the victim as the assault was underway, and he instructed his deputies to handcuff and arrest the victim. This Court instructed the jury, in part, as follows:

> The United States alleges that Mr. Rodella deprived this constitutional right [unlawful seizure] in two ways: (i) that Mr. Rodella arrested Mr. Tafoya without probable cause; and (ii) that Mr. Rodella used unreasonable force on Mr. Tafoya.
>
> A police offer violates a person's Fourth Amendment right to be free of unreasonable seizure if the officer makes an arrest without probable cause. Whenever an officer restrains the freedom of a person to walk or drive away, the officer has seized that person. Probable cause exists if facts and circumstances within the arresting officer's knowledge would have led a reasonable officer to believe that the arrestee has committed or is committing an offense. There is no seizure until the person actually submits to a show of authority.

Doc. 130, Instruction No. 14. Since Defendant unlawfully arrested the victim, the two-level sentence enhancement under U.S.S.G. §3A1.3 is justified.

3. <u>The defendant's enlistment of his son in this offense warrants a two-level enhancement under U.S.S.G. §3B1.1(c)</u>.

Defendant objects to a sentence enhancement for instructing his son to assist him in this criminal conduct. He first argues that since his son was dismissed from the indictment, he could not have been criminally responsible. Of course, a prosecutor's exercise of discretion in dismissing a defendant cannot equate to a legal finding of that defendant's incompetence. Naturally, Defendant cites to no case law to support his claim, and it deserves no further comment. Second, Defendant argues that since the son was not a law enforcement officer, he could not have been a participant to the crime. This argument is in direct conflict with the law. *See United States v. Price,* 383 U.S. 787, 794 (1966) ("Private persons jointly engaged with state

4

officials in the prohibited action, are acting 'under color' of law for purposes of [Section 242]."); *United States v. Causey*, 185 F.3d 407 (5th Cir. 1999); *United States v. Lester*, 363 F.2d 68 (6th Cir. 1966). Since Defendant instructed his son to assist him in this crime, a two-level enhancement is justified pursuant to U.S.S.G. §3B1.1(c).

4. <u>The defendant obstructed justice by falsifying reports and by concealing financial assets</u>.

Undersheriff Vince Crespin testified at trial (and in grand jury) that Defendant brought two witness statements for inclusion into the Rio Arriba County Sheriff's Office official file involving the arrest of the victim. One statement was signed by Defendant and the other was purported to be written by Defendant's son. As Mr. Crespin noted, both witness statements are nearly identical. Defendant appeared with these two documents immediately after the New Mexico State Police (NMSP) initiated an investigation against him. Both recount a version favorable to Defendant, which the jury obviously rejected.

Section 3C1.1 provides for a two-level enhancement for obstruction of justice. The production of false documents during an official investigation qualifies as obstruction of justice under the guidelines. U.S.S.G. §3C1.1, Application Note 4 (C). Consequently, Defendant's sentence was properly enhanced under this provision.

There is another aspect of Defendant's conduct that warrants an upward enhancement for obstruction of justice. As discussed in the United States' Supplemental Sentencing Memorandum (Doc. 158), Defendant's willful failure to disclose all assets justifies a two-level enhancement under U.S.S.G. §3C1.1. U.S.S.G. §5E1.2, Application Note 2. Since Defendant willfully failed to disclose his assets, which includes ownership of his residence located at 9419 Endee Rd. NW, Albuquerque, NM, he is eligible for a two-level enhancement in his sentence.

5. <u>A downward departure or variance is not warranted</u>.

The applicable guideline range is "entitled to considerable deference." *United States v. Hernandez-Castillo*, 2007 WL 1302577 *3 (D.N.M.). If the sentencing court properly considers the relevant guidelines and issues a sentence "within that range, the sentence is presumptively reasonable." *United States v. Kristl*, 437 F.3d 1050, 1055 (10th Cir. 2006). "[O]nce this presumption is established, the burden shifts to the defendant to demonstrate why the sentence is unreasonable." *Hernandez-Castillo*, 2007 WL at *3. At the district court level, the defendant has the burden of showing he is eligible for a downward variance or departure. *United States v. Vigil*, 832 F.Supp.2d 1304, 1332 (D.N.M. 2011). Defendant in this case cannot show that his circumstances, character or other factors justify a downward departure or variance.

Defendant's first ground for mitigation in his sentence is his character. He cites to over 300 letters in support of a downward adjustment in his sentence. However, even if Defendant submitted over 300,000 letters, they would not change the true facts of his life. As the United States' Sentencing Memorandum (Doc. 148) describes, Defendant abused his position repeatedly while serving in the NMSP. He repeatedly brutalized his former wife, using his service weapon to assault her and another relative. He even used his NMSP vehicle to run his former wife off the road. Defendant had 24 officers under his supervision either dismiss or mitigate traffic tickets in exchange for votes for his current wife. Also, while serving in the NMSP, Defendant abused alcohol and marijuana, falsified leave records, violated tribal poaching laws and abused his position to cover up the latter offense. As a magistrate, Defendant showed favoritism, obstructed justice and repeatedly lied under oath in official proceedings. As a sheriff, he bullied citizens who dared to challenge his authority. This woeful list of horrible acts, made even more horrible because of the positions of trust that he held, justifies an upward adjustment in Defendant's sentence.

6

Next, Defendant claims that his health status warrants a downward adjustment in his sentence. However, Defendant does not suggest that his ailments are extraordinary as is contemplated under U.S.S.G. §5H1.4. Indeed, Defendant's ailments certainly did not prevent him from physically attacking the victim in this case. Furthermore, Defendant has not demonstrated that the Bureau of Prisons is incapable of adequately addressing his medical needs.

Defendant's last argument in support of a downward adjustment in his sentence is a claim of disparity. However, Defendant compares apples to oranges in his recitation of case law. None of the § 242 cases upon which Defendant relies involve an additional charge under § 924(c). That conviction alone requires a consecutive term of seven years of imprisonment. When Defendant's offense level for his § 242 conviction is compared to the cited cases, no clear disparity is evident. For example, the defendant in *United States v. Mohr*, 318 F.3d 613 (4th Cir. 2003) received a 120-month sentence for permitting her dog to bite the leg of the victim. Here, Defendant's offense level is 31, which provides the same sentence as in *Mohr*. However, unlike Mohr, Defendant also enlisted the assistance of another in the crime, falsified documents and concealed assets.

Interestingly, one of the cases cited by Defendant actually supports an upward adjustment. In *United States v. Livoti*, 196 F.3d 322, 28-29 (2nd Cir. 1999), the court upheld an upward departure partially based on the fact that the defendant created the violent situation. In this case, Defendant created the violent situation, sustained it throughout the chase, and pursued it even when he could have broken off the chase when the victim drove onto a dead-end road. Defendant did not stop there. He followed the victim onto the dead-end road, blocked the victim's car from escaping, and dove into the victim's car while thrusting a gun at the victim's head. The gun, which was not equipped with a safety mechanism, could easily have discharged

during the ensuing struggle. Sheer luck that the gun did not discharge is hardly a basis for arguing lenient treatment.

## Conclusion

Defendant's objections to the PSR are meritless. Furthermore, he cannot meet his burden by a preponderance of the evidence that a downward variance/departure is warranted. Indeed, the circumstances of this offense, Defendant's character, his willful failure to disclose financial records, and the unaddressed criminal conduct of his past all support an upward adjustment from the applicable guideline range.[4]

Respectfully submitted,

DAMON P. MARTINEZ
United States Attorney

*/s/ Filed Electronically*
TARA C. NEDA
JEREMY PEÑA
Assistant United States Attorneys
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274

I HEREBY CERTIFY that on January 14, 2015, I filed
the foregoing electronically through the CM/ECF system,
which caused the below counsel of record to be served by
electronic means, as more fully reflected on the Notice of
Electronic Filing.

Robert J. Gorence and Louren Oliveros
Attorneys for Thomas R. Rodella

*/s/ Filed Electronically*
Tara C. Neda, Assistant U.S. Attorney

---

[4] The United States has not filed a formal request for an upward adjustment because the applicable guideline range already exceeds the statutory maximum.