# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE DISTRICT OF NEW MEXICO

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| vs. | ) | Case No.: 14-CR-2783 JB |
| THOMAS R. RODELLA, | ) |  |
| Defendant. | ) |  |

## SECOND MOTION FOR A NEW TRIAL

The Defendant, Thomas R. Rodella, by his attorneys, Robert J. Gorence and Louren Oliveros of Gorence & Oliveros, P.C., hereby submits his Second Motion for a New Trial pursuant to Fed. R. Crim. P. 33. In support of his motion, Mr. Rodella states as follows:

## FACTUAL BACKGROUND

Two eyewitnesses testified to the interaction between Mr. Rodella and Mr. Tafoya. The government called Michael Tafoya, the alleged victim, and his testimony was deemed sufficient to submit the case to the jury on the allegations set forth in the Indictment. Mr. Rodella called as a witness his son, Thomas Rodella, Jr. Obviously, the testimony between the two was in stark contrast. Without exception, the jury had to resolve the credibility and competency issues between the two. At the conclusion of Mr. Rodella, Jr.'s direct examination, the government heavily focused its cross-examination of him with the use of his VA medical records following his treatment for a traumatic brain injury suffered while he was on active duty with the New Mexico National Guard. Incredulously, these medical records had never been produced to Mr. Rodella. Instead, the colloquy at the bench was as follows:

> MR. GORENCE: I know they were provided to Mr. Bowles and then the case was dismissed. I have never seen the medical reports and she's cross-examining on it, and I would like all of them.

| | |
|---|---|
| MS. NEDA: | That's right, I am cross-examining him. I gave it to Mr. Bowles and I said, "Please give this to Mr. Gorence. I don't want to make that decision of invading the privacy of his client." |
| | Now, you know Mr. Bowles and Mr. Gorence work together. And you know Mr. Gorence knew full well I was going to come in here with this information. |

\* \* \* \* \*

| | |
|---|---|
| MS. NEDA: | This is cross-examination. There's no requirement that I give it to him, but I did give it to Mr. Bowles, telling him if he wished, he could give it to Mr. Gorence. |

\* \* \* \* \*

| | |
|---|---|
| MR. GORENCE: | I have never been provided a copy by Mr. Bowles. |

*See* Exhibit A, Transcript of Excerpted Testimony of Thomas Rodella, Jr. (Rodella Tr.), 76:19-77:6, 79:13-16, and 79:24-25.

Counsel for Mr. Rodella informed AUSA Neda that he did not receive the records from Mr. Bowles. Clearly, AUSA Neda was legally mistaken in her assertion that Mr. Bowles had a duty to produce discovery to Mr. Rodella. Obviously, Fed. R. Crim P. 16(a) imposes an obligation on the government to produce what the rule requires, not from a lawyer who previously was co-counsel who may or may not happen to be an acquaintance or even a friend. The Court's only remedy to the government's blatant discovery violation was for undersigned counsel to review the 417 pages of medical records over the lunch hour. That amount of time was clearly insufficient to understand the true nature of the information, particularly all of the test results. Obviously, undersigned counsel for Mr. Rodella is a lawyer and is not trained in psychology or psychiatry much less the manifestations of a traumatic brain injury that would result in any degree of a lack of mental competence. More significantly, Mr. Rodella did not have adequate time to prepare for that line of cross-examination and, most particularly, did not

have time to consult and retain an expert who would rebut the allegations made by AUSA Neda in her questioning that Mr. Rodella was incompetent as a witness by virtue of his diminished mental capacity.

The psychological report of Dr. Samuel Roll (attached as Exhibit B) sets forth the gross miscarriage of justice by virtue of AUSA Neda's non-production of required Rule 16 material. The report speaks for itself, but unmistakably AUSA Neda used medical records inappropriately and Mr. Rodella did not have the opportunity to rebut her egregiously false insinuations.

## LEGAL ANALYSIS

The law with regard to new trials was set forth at length in Mr. Rodella's first Motion for a New Trial (Doc. 133). The five factors which must be met in order for a new trial to be granted are set forth in *United States v. Sinclair*, 109 F.3d 1527, 1531 (10th Cir. 1997):

> (1) the evidence was discovered after trial; (2) the failure to learn of the evidence was not caused by his own lack of diligence; (3) the new evidence is not merely impeaching; (4) the new evidence is material to the principal issues involved; and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal.

The five *Sinclair* factors will be addressed in turn. First, the evidence in the form of Dr. Roll's report was clearly discovered after trial. As stated previously, undersigned counsel is neither a psychologist nor a psychiatrist and he did not have the ability to discern the egregiously misleading nature of AUSA Neda's questions in the midst of trial.

Second, AUSA Neda's representation that "Mr. Gorence knew . . . [she] was going to come in here with this information" Exhibit A, Rodella Tr. 77:4-6, is simply not true. Undersigned counsel was not provided with Mr. Rodella, Jr.'s VA medical records pursuant to Fed. R. Crim. P. 16. Undersigned counsel does not "work with" Mr. Bowles. AUSA Neda knows that undersigned counsel is a partner in the firm of Gorence & Oliveros, while Mr.

3

Bowles is the sole proprietor of the Bowles Law Firm. Undersigned counsel could not have known of the substance and import of Dr. Roll's opinion as an expert and what was needed to rebut AUSA Neda's misleading questions on the second to last day of trial. Obviously, Mr. Rodella's defense team needed to consult with an expert with regard to what Mr. Rodella, Jr.'s VA records meant, yet there was clearly insufficient time to do that when the records were not produced prior to trial as required by Fed. R. Crim. P. 16(a).

Third, AUSA Neda was successful in undermining Mr. Rodella, Jr.'s credibility with the use of his medical records and psychiatric testimony. The entire trial transcript has now been ordered, but at this point, AUSA Neda's closing arguments have not been transcribed. Upon recollection and belief, AUSA Neda spent an enormous amount of time in her closing disparaging Mr. Rodella, Jr., and his testimony based on her misleading and, as Dr. Roll opines, her patently false use of his VA records in cross-examination. Dr. Roll's opinions should have been presented to the jury and his opinions would not have been merely impeachment evidence. Instead his opinions go to the essence of whether or not Mr. Rodella, Jr., was a competent witness and, therefore, whether his testimony was credible.

The fourth factor could not seriously be disputed. Dr. Roll's opinions, if presented to the jury, would have been material to the principal issue in the case because the evidence would have been relevant, if not critical, to address the credibility of an eyewitness with regard to the interaction between Mr. Rodella and Mr. Tafoya. Mr. Rodella, Jr.'s testimony was not cumulative because he directly contradicted Mr. Tafoya's testimony of what transpired on March 11, 2014.

Finally, the fifth factor is met here because Dr. Roll's testimony, had it been presented to the jury, would probably have produced an acquittal given that the jury obviously did not find

Mr. Tafoya completely credible because the jury did not accept his testimony that he had in fact been injured. Thus, had the jury been presented with Dr. Roll's testimony, the jury probably would have completely disregarded Mr. Tafoya's testimony and not guilty verdicts would have been rendered.

## CONCLUSION

Mr. Rodella requests an evidentiary hearing on this motion so that Dr. Roll can testify and be cross-examined concerning his report. Additionally, undersigned counsel will call Dr. Elizabeth Davidson, whose letter was attached to Defendant's Reply to United States Response to Defendant's Motion for New Trial (Doc. 136). For the Court's convenience, Dr. Davidson's letter is attached as Exhibit C to this motion. Dr. Davidson has informed undersigned counsel that if properly served, she would be allowed to testify to matters that were within her knowledge as Mr. Rodella, Jr.'s treating psychiatrist. At the conclusion of the evidentiary hearing, Mr. Rodella requests the Court to grant this motion, set aside the jury verdict, and order a new trial.

WHEREFORE, Defendant Thomas Rodella respectfully requests that this Court conduct an evidentiary hearing so that the facts as set forth in this Motion can be established to the satisfaction of the Court, to then set aside the jury verdict and order a new trial and for such other relief as this Court deems necessary and proper.

Respectfully submitted,

*/s/ Robert J. Gorence*
Robert J. Gorence
Louren Oliveros
Gorence & Oliveros, P.C.
1305 Tijeras Avenue, NW
Albuquerque, NM 87102
Phone: (505) 244-0214
Fax: (505) 244-0888
Email: gorence@golaw.us
Email: oliveros@golaw.us

## CERTIFICATE OF SERVICE

   I hereby certify that a true and accurate copy of the foregoing pleading was emailed to counsel of record by CM/ECF this 15th day of January, 2015.

*/s/ Robert J. Gorence*
Robert J. Gorence