IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | CRIMINAL NO. 14-2783 JB |
| **THOMAS R. RODELLA**, | ) ) | |
| Defendant. | ) | |

## UNITED STATES' RESPONSE TO DEFENDANT'S SECOND MOTION FOR A NEW TRIAL ( Doc. 160)

The United States submits the following response to Defendant's Second Motion for a New Trial (Doc. 160), and requests that this Court deny the motion without hearing or testimony.

## Discussion

A motion for new trial "is not favorably regarded and should be granted only under great caution." *United States v. Orr*, 692 F.3d 1079, 1099 (10th Cir. 2012). The Tenth Circuit has established standards the defendant must meet in order to prevail on a motion for new trial. *See United States v. Sinclair*, 109 F.3d 1527, 1531 (10th Cir. 1997). They are:

(1) the evidence was discovered after trial;
(2) the failure to discover the evidence was not due to the defendant's lack of due diligence;
(3) the new evidence is not merely impeaching or cumulative;
(4) the new evidence is material to the principal issues involved; *and*
(5) the new evidence probably would produce an acquittal if a new trial were granted.

*Id.* (emphasis added).

The district court is not required to conduct an evidentiary hearing unless the newly discovered admissible evidence, if accepted as true, "would warrant relief as a matter of law."

*United States v. Velarde*, 485 F.3d 553, 559 (10th Cir. 1997); *United States v. Kiister*, 1998 WL 982887 * 2 (10th Cir.); *United States v. Sutton*, 767 F.2d 726, 729 (10th Cir. 1985); *United States v. Brewer*, 630 F.2d 795, 803 (10th Cir. 1980). This Court's denial of a motion for new trial is reviewed for an abuse of discretion. *United States v. Hill*, 737 F.3d 683, 687 (10th Cir. 2013; *Orr*, 692 F.3d at 1099.

1. <u>As a matter of law, Defendant has not identified "newly discovered evidence" sufficient to satisfy *Sinclair*.</u>

Here, Defendant's *Sinclair* claim fails as a matter of law because neither Dr. Roll's report nor the underlying medical records comprises admissible evidence. "Implicit in a claim of newly discovered evidence is that there is new *evidence* – that is, material that is admissible at trial." *Hill*, 737 F.3 at 687 (emphasis in original). Newly discovered evidence that is inadmissible or incorrect cannot support a motion for new trial. *United States v. Redcorn*, 528 F.3d 727, 744-45 (10th Cir. 2008).

Dr. Roll's opinions as described in his "Psychological Report" are not admissible evidence. For starters, the report is not a "psychological report" because it is purely Dr. Roll's commentary on the cross-examination. Dr. Roll did not evaluate Thomas Rodella, Jr., but rather reviewed records and the transcript of Rodella, Jr.'s testimony. According to the report, he would testify regarding Rodella, Jr.'s "competence or credibility," and would offer opinions about how certain materials "were used in the cross-examination of Mr. Rodella, Jr." Neither category of opinions would be admissible at trial. The "credibility of witnesses is generally not an appropriate subject for expert testimony." *United States v. Adams*, 271 F.3d 1236 (10th Cir. 2001) (affirming exclusion of expert testimony regarding credibility of witnesses on Fed. R. Evid. 403 and 702 grounds). The notion that an expert may not comment on the propriety of an attorney's questioning during cross-examination needs no citation.

2

Nor does Defendant's post-trial commissioning of a report from a new expert witness constitute "discovery of new evidence." If Dr. Roll's opinions were sufficient to warrant a new trial, all defendants would simply order new expert reports following convictions. Defendant created (inadmissible) evidence following his conviction; that cannot be a basis for a new trial.

2.  <u>Defendant could have obtained the medical records and Dr. Roll's report well before trial with an exercise of due diligence.</u>

Defendant had knowledge of the underlying medical issue well before trial. The United States provided notice that it has serious concerns about Rodella, Jr.'s cognitive abilities when it moved to dismiss the charges against him on August 27, 2014. *See* Doc. 30. Moreover, the United States identified the source of its concerns as certain medical records that the United States had obtained subsequent to the original indictment. *Id*. The United States offered the records for *in camera* review. *Id*. Defendant had clear notice that if he intended to offer testimony from Rodella, Jr. at trial, the United States would cross-examine Rodella, Jr. about his cognitive abilities as recorded in the medical records.

This situation is similar to the one the 11th Circuit confronted in *United States v. Perez*, 503 Fed. App'x 688 (11th Cir. 2013). In *Perez*, the United States contended that the voice on an incriminating phone call was the defendant's. *Id*. at 689-90. After trial, the defendant obtained a new expert report opining that the voice was not the defendant's. *Id*. at 691. But because he was on notice that the identity of the speaker was going to be an issue at trial, the district court held that the defendant's choice not to retain a voice recognition expert "[did] not render the subsequently created report new evidence he could not have discovered with due care," and the 11th Circuit affirmed. *Id*.

Evidently Defendant did not ask anyone for the medical records. He could have asked his son. He could have asked Rodella, Jr.'s attorney, who was in possession of the records. He

3

could have asked the United States for the records; he did not. He could have subpoenaed the records directly. He could have moved to compel the United States to produce them. Defendant took none of those steps.

Defendant repeatedly implies that Fed. R. Crim. P. 16 required the United States to provide the medical records directly to him. He does not attempt to explain this argument, and he has not made any motion based on a discovery violation or prosecutorial misconduct. That is because, as a matter of hornbook law, the United States need not turn over evidence that merely impeaches a defense witness. *See, e.g., United States v. Presser*, 844 F.2d 1275, 1285 (6th Cir. 1988) ("[T] the government need not disclose impeaching material in its possession relating to any potential defense witness where that impeaching material does not meet the Brady test of being material and exculpatory."). The United States voiced its concern about Rodella, Jr.'s cognitive abilities early on, put Defendant on notice of the existence of medical records generating that concern, dismissed the charges against Rodella, Jr. and most importantly, did not call Rodella, Jr. as a witness at trial. The United States had no duty to provide the medical records to Defendant, and Defendant has no excuse for his failure to retain an expert to rebut the impeachment material contained in the records.

3. <u>Defendant cannot satisfy the Sinclair standards because the "newly discovered evidence" merely rebuts impeachment</u>.

Defendant cannot satisfy *Sinclair*'s third element either. The third *Sinclair* standard clearly states, and the Tenth Circuit has repeatedly held, that mere impeaching evidence is insufficient to warrant a new trial. *United States v. Tolliver,* 730 F.3d 1216, 1228 (10th Cir. 2013) (impeachment evidence "cannot serve as the basis for a new trial"); *United States v. Gwanthney,* 465 F.3d 1133, 1143-44 (10th Cir. 2006); *United States v. Combs,* 267 F.3d 1167,

1177 (10th Cir. 2001); *United States v. Youngpeter,* 986 F.2d 349, 356 (10th Cir. 1993); *United States v. Kelley,* 929 F.2d 582, 586 (10th Cir. 1991); *Brewer,* 630 F.2d at 803.

The evidence that Defendant now wishes to use would go solely to Rodella, Jr.'s credibility, and Defendant does not argue otherwise. The United States used the medical records to impeach Rodella, Jr., which undermined his credibility. Defendant wishes to rebut that impeachment with a newly-minted report that comments on the use of the records in cross-examination, with the ultimate goal of rehabilitating Rodella, Jr.'s testimony. *Sinclair*'s prohibition against granting a new trial based on mere impeachment evidence does not distinguish between impeachment and rehabilitation. *See Gwathney*, 465 F. 3d at 1144. Dr. Roll's report at best would merely rebut impeachment, which is even more peripheral. There is no reason for courts to value rebuttal of impeachment material higher than the impeachment material itself. *Sinclair*'s reference to impeachment material should be read to encompass all material that goes solely to credibility of a witness.

4. <u>The new evidence would not produce an acquittal</u>.

Most of the damage to Rodella, Jr.'s credibility came from testimony not referenced in Dr. Roll's report. His credibility evaporated after the first line of cross-examination, in which Rodella, Jr. testified that he was "110 percent sure" that Defendant did not draw a firearm during the relevant encounter, but then admitted that he had previously stated that Defendant had a firearm drawn. *See* Exhibit 1, Transcript of Excerpted Testimony of Thomas Rodella, Jr., 55:4-13. Rodella, Jr. told the jury that he didn't have a firearm with him, a fact that was contradicted by both the victim and Lieutenant Randy Sanches. *Id*. at 60:2-21. He claimed he was in 60 air assaults and was under repeatedly under enemy fire while stationed in Kosovo in 2011. *Id*. at 70:11-21; 73:20-74:13. He testified that he lives on $300 per month and yet receives no support from his father. *Id*. at 88:16-23.

5

As to Rodella, Jr.'s cognitive impairments, the most significant impeachment came from Rodella, Jr.'s own testimony. He testified that he sleeps with a gun every night. *Id*. at 61:15-18. He testified that he has severe concentration problems and irritability, which affect pretty much everything he does. *Id*. at 75:9-76:4; 82:9-83:9. He testified that he was prone to extreme angry outbursts without provocation. *Id*. at 86:4-22; 90:20-91:8. The source for all of this information was Rodella, Jr. himself.

Beyond the specific testimony referenced above, there were other problems with Rodella, Jr.'s testimony. His bias was self-evident and overwhelming. He came across as a witness who had been coached so completely that his testimony was no longer his own. His testimony was not consistent with known facts or common sense. Dr. Roll could not save Rodella, Jr.'s credibility by elaborating on the Physician's Desk Reference (PDR). To the extent that Dr. Roll's opinion is that Rodella, Jr. "is not the most valid and reliable source of information," that opinion hardly improves Rodella, Jr.'s credibility. *See* Doc. 160-2, p. 2.

Rodella, Jr.'s credibility was far from the only issue at trial. The victim testified with surpassing credibility. If the jury had not believed the victim, the jury would have acquitted Defendant, regardless of whether or not they believed Rodella, Jr. But the jury also heard extensive testimony that Defendant's behavior was utterly inconsistent with the training he had received. And the jury heard from three unrelated witnesses who had each suffered mistreatment by Defendant under similar circumstances. The PDR references were a minor part of a complete picture that established Defendant's guilt beyond a reasonable doubt. Adding Dr. Roll's testimony to the trial would not affect the outcome.

**Conclusion**

As discussed above, a hearing is not required unless the newly discovered evidence, if accepted as true, would warrant a new trial as a matter of law. *Velarde*, 485 F.3d at 559. Unless and until the defense makes a *prima facie* showing to suggest that the *Sinclair* criteria can be satisfied, the United States respectfully requests that this Court deny Defendant's Second Motion for New Trial (Doc. 160) on the pleadings, and deny his request for an evidentiary hearing as well.

Respectfully submitted,

DAMON P. MARTINEZ
United States Attorney

*/s/ Filed Electronically*
TARA C. NEDA
JEREMY PEÑA
Assistant United States Attorneys
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274

I HEREBY CERTIFY that on January 16, 2015, I filed
the foregoing electronically through the CM/ECF system,
which caused the below counsel of record to be served by
electronic means, as more fully reflected on the Notice of
Electronic Filing.

Robert J. Gorence and Louren Oliveros
Attorneys for Thomas R. Rodella

*/s/ Filed Electronically*
Jeremy Peña, Assistant U.S. Attorney