1

```
1            IN THE UNITED STATES DISTRICT COURT
2              FOR THE DISTRICT OF NEW MEXICO
3    UNITED STATES OF AMERICA,
4                Plaintiff,
5        vs.             NO:  14-CR-2783-JB
6    THOMAS RODELLA, SR., et al.,
7                Defendants.
8
9        Excerpted testimony of Thomas Rodella, Jr.,
10   Transcript of Jury Trial before The Honorable James
11   O. Browning, United States District Judge,
12   Albuquerque, Bernalillo County, New Mexico, on
13   September 25, 2014.
14
15   For the Plaintiff:  Ms. Tara C. Neda
16                       Mr. Jeremy Pena
17   For the Defendant Thomas Rodella, Sr.:
18                       Ms. Louren M. Oliveros
19                       Mr. Robert J. Gorence
20
21
22         Mary Abernathy Seal, RDR, CRR, NM CCR 69
                    Bean & Associates, Inc.
23           Professional Court Reporting Service
            201 Third Street, Northwest, Suite 1630
24             Albuquerque, New Mexico 87102
25
```

**GOVERNMENT EXHIBIT 1**



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

Bean & Associates, Inc.
PROFESSIONAL COURT REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

55

```
 1         A.    Yes, I did.
 2         Q.    And you signed it?
 3         A.    Yes, I did.
 4         Q.    Okay.  Now, are you 100 percent certain
 5   that your dad did not draw his firearm?
 6         A.    I'm 110 percent sure, Ms. Neda.
 7         Q.    And do you recall saying in your signed
 8   statement that "While walking in front of the green
 9   Mazda, I observed the male subject grabbing at my
10   father's drawn sidearm"?
11         A.    Yes, I did write that.  I never saw him
12   draw the firearm.  It was already drawn by the time
13   I got to the car.
14         Q.    Okay.  So you don't know when he drew it.
15         A.    I do not know.
16         Q.    Okay.  Now, you recall the interview with
17   Agent McCandless, you indicated.
18         A.    Yes, I remember.
19         Q.    He's an FBI agent.
20         A.    Yes, ma'am.
21         Q.    And he said, "But he never once draws his
22   weapon, even with a car hitting -- car darned near
23   hitting him, he never draws his weapon," and you
24   said, "No."  Did you mean to say no?
25         A.    I meant to say no.  I never saw him draw
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  didn't conduct it.
 2       Q.   Okay.  You also, when you were
 3  interviewed, stated you didn't have a gun on you
 4  that night; right?
 5       A.   No, I did not have a weapon.
 6       Q.   Okay.  Now, you're aware now that
 7  Lieutenant Randy Sanches has testified he saw you
 8  with your weapon that night; right?
 9       A.   Excuse me?
10       Q.   Lieutenant Randy Sanches testified he saw
11  you with the weapon.  Do you remember that?
12            MR. GORENCE:  I'm just going to object,
13  Your Honor.  He said he has a weapon.  He didn't
14  testify he had one that day.
15            THE COURT:  I'll let you clear it up on
16  redirect.
17            Ms. Neda.
18       Q.   (By Ms. Neda)  Lieutenant Randy Sanches --
19  do you know that he testified he saw you with your
20  weapon that night?
21       A.   I was not aware of that, no.
22       Q.   Okay.  And as a matter of fact, it is a
23  black square semiautomatic pistol.
24       A.   It's not square.
25       Q.   Okay.  Is it a black semiautomatic pistol?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Yes, it is.
 2        Q.    Now, you say you didn't have it that
 3   night; right?
 4        A.    That's correct.
 5        Q.    So Sanches is wrong; right?
 6        A.    Yes.
 7        Q.    Okay.  Now, haven't you stated in the past
 8   that you are hypervigilant and you actually sleep
 9   with your gun and that you have obsessive rituals
10   about it?
11             MR. GORENCE:  What page are you on,
12   Counsel?
13             MS. NEDA:  197.
14        A.    That's from a medical record.
15        Q.    (By Ms. Neda)  Sure is.  But we'll get
16   into that a lot more, but did you report that you
17   sleep with your gun, you're so hypervigilant?
18        A.    Yes, I do.  That's a true statement.
19        Q.    Yes.  All right.  But on this particular
20   night you weren't feeling so hypervigilant.
21        A.    I didn't have my weapon because we were
22   just coming back from filing for candidacy.  I can't
23   carry a weapon inside the courtroom where they were
24   filing for candidacy, so I didn't see it necessary
25   for me to take a weapon.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  bupropion causes delusions?
 2       A.   I'm not aware of that.
 3       Q.   What about hallucinations?  Are you aware
 4  of that?
 5       A.   No, I'm not.
 6       Q.   But you have suffered hallucinations,
 7  haven't you?
 8       A.   No.
 9       Q.   And delusions?
10       A.   No.
11       Q.   Didn't you tell the VA medical staff on
12  repeated occasions that you were in 60 air assaults?
13       A.   Yes.
14       Q.   But you weren't.  Do you know that?
15       A.   Yes, I was.
16       Q.   You also told the VA medical staff that
17  you were in a whole bunch of fire fights; right?
18       A.   I don't recall saying that I was in fire
19  fights.  I was around when people were firing.
20       Q.   You weren't in any fire fights; right?
21       A.   I never returned fire.
22       Q.   Because you saw the interview.  Did your
23  counsel show you the interview of your commanding
24  officer, Sergio Hand?
25            THE COURT:  Hold on.  Mr. Gorence.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. PENA:  So we've got the citation the
 2   Perky versus Green, which is 28 Fed. Appx. 736, star
 3   4, note 4.  That's the Tenth Circuit 2001 case.
 4            THE COURT:  Okay.
 5            MR. PENA:  We have other -- just one
 6   other.  US versus Moseley, 672 fed 3d 586, at 591,
 7   which is an Eighth Circuit 2012 case.
 8            THE COURT:  All right.
 9            (The following proceedings were held in
10   open court.)
11            THE COURT:  All right, Ms. Neda.
12            MS. NEDA:  Thank you, Your Honor.
13       Q.   (By Ms. Neda)  I was asking you if you
14   have been shown your commanding officer's interview
15   named Captain Sergio Hand.
16       A.   I have never seen a copy of it, but I have
17   heard about it.
18       Q.   So you know what he says.
19       A.   I got just the gist of it.
20       Q.   And you still say today under oath that
21   you have been in fire fights?
22       A.   Excuse me?
23       Q.   And you still say today you have been in
24   fire fights?
25       A.   I have never returned fire, but I have
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   been fired upon, yes.
 2        Q.   And does anybody say that's true, besides
 3   you?
 4        A.   Yes.
 5        Q.   Sergio Hand?
 6        A.   There's a soldier over there that was
 7   deployed with me.
 8        Q.   And the 60 air assaults?  What about the
 9   60 air assaults?  You did those, as well?
10        A.   Yes.
11        Q.   This wasn't a war; this was 2011 in
12   Kosovo; is that right?
13        A.   That's correct.
14        Q.   Okay.  Now, do you also believe that you
15   were in Iraq?
16        A.   I never said I was in Iraq.
17        Q.   Okay.  Did you ask to look into filing a
18   claim for being subjected to chemicals in Iraq?
19        A.   I never said I was in Iraq.
20        Q.   Okay, but that was not my next question.
21   My next question:  Did you ask to look into a -- to
22   file a claim for chemical exposure in Iraq?
23        A.   I never said I was in Iraq, but yes, I did
24   look for a registry that I had seen on TV about
25   being introduced to chemical...
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1       Q.   Okay.  Now, you have repeatedly reported
 2  that your concentration is very poor.  You rate it
 3  as severe.  Do you agree that you reported that?
 4       A.   Before I got on medication, yes.
 5       Q.   Well, no, you have been on medication --
 6  you were on medication in March 2014; right?
 7       A.   I should have been, yes.
 8       Q.   You were on.  The most recent statement
 9  was June 2014.  Did you make that -- that you have
10  severe concentration problems?
11       A.   Sometimes I do, yes.
12       Q.   Severe?
13       A.   When they happen, yes.
14       Q.   In fact, in that same session, did you not
15  report that your irritability gets really bad and
16  it's a problem always?  Did you tell them that?
17       A.   Yes.
18       Q.   You're easily annoyed; is that correct?
19       A.   Some instances, yes.
20       Q.   Well, not some.  Didn't you say that
21  "That's pretty much everything I do.  I suffer from
22  those problems," quote/unquote.  "Pretty much
23  everything I do"?
24       A.   Yes.
25       Q.   Okay.  And also in your life, pretty much
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  everything you do, you suffer from the poor
 2  concentration that we've already talked about;
 3  right?
 4       A.   Oh, yes.
 5       Q.   Okay.  And then you have problems with
 6  your memory.  Although I heard you testify earlier
 7  you don't, but you have difficulties with your
 8  memory, don't you?  Both short- and long-term and
 9  you have reported that, didn't you?
10       A.   Not that I recall, no.
11       Q.   Okay.
12            MR. GORENCE:  Your Honor?  At this point
13  can I get a copy of the -- can we approach for a
14  second?
15            THE COURT:  You may.
16            (The following proceedings were held at
17  the bench.)
18            THE COURT:  Do you have a copy of it?
19            MR. GORENCE:  I know they were provided to
20  Mr. Bowles and then the case was dismissed.  I have
21  never seen the medical reports and she's
22  cross-examining on it, and I would like all of them.
23            MS. NEDA:  That's right, I am
24  cross-examining him.  I gave it to Mr. Bowles and I
25  said, "Please give this to Mr. Gorence.  I don't
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

Bean & Associates, Inc.
PROFESSIONAL COURT REPORTING SERVICE

```
 1  seated.
 2            All right, Ms. Neda, if you wish to
 3  continue your cross-examination.
 4            Mr. Rodella, I remind you you're still
 5  under oath.
 6            THE WITNESS:  Yes, Your Honor.
 7                CONTINUED CROSS-EXAMINATION
 8  BY MS. NEDA:
 9       Q.   Mr. Rodella, since everything's gotten a
10  little disjointed here, let me just ask you again,
11  you have complained repeatedly of poor concentration
12  to your doctors, your psychiatrists; right?
13       A.   Yes, I have.
14       Q.   And you have indicated it's very difficult
15  for you to do day-to-day tasks because of that.
16       A.   Yes.
17       Q.   And it's difficult for you to get along
18  with people at times.
19       A.   Sometimes, ma'am.
20       Q.   And you have indicated that you -- if you
21  had to classify, you would classify it as severe.
22  Your poor concentration.
23       A.   Most of the time, yes, ma'am.
24       Q.   Okay.  With respect to your irritability,
25  at times that really gets bad; right?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1       A.   Sometimes, yes, ma'am.
2       Q.   And when you classify it, you classify it,
3  your irritability, as severe; is that right?
4       A.   Yes, most of the time, yes, ma'am.
5       Q.   And you have indicated that your -- just
6  like your severe poor concentration problem, your
7  severe irritability problem affects you in your life
8  in pretty much everything you do.
9       A.   Yes, most things I do, yes, ma'am.
10      Q.   Now, let's move on to your memory.  You
11 have problems with your memory; right?
12      A.   Not too much, ma'am.
13      Q.   Okay.  Let me go through that then slowly.
14 My slight delay is because of all the argument going
15 on while the jury was out, I don't have my notes.
16           So just give me a second here.  All right.
17 Let's move on to memory.  Let's see.  You have
18 reported memory problems to your psychiatrist.
19      A.   I had, and they gave me an initial test,
20 and they found nothing wrong with my memory, ma'am.
21      Q.   Okay.  Go to -- well, as of January 2014,
22 you said they found no problem with your memory?
23      A.   That's what the doctor had told me, ma'am.
24      Q.   Are you sure they did not find an
25 impairment of short- and long-term memory?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  not right next to the microphone.  Have you reported
 2  troubles controlling your frustration?
 3       A.   There were times at the beginning, yes.
 4       Q.   Okay.  Well, let me get current.  Now, did
 5  you report having -- we've already talked about
 6  irritability, but also having angry outbursts?  Did
 7  you report that to your psychiatrist?
 8       A.   If I did, it was very few times.
 9       Q.   Very few times?
10       A.   Yes, ma'am.
11       Q.   Well, did you remember ranking it as to
12  from -- with 5 being extreme, and you indicated it
13  was 5?
14       A.   I believe maybe at the time it was a 5.
15  I'm not too sure, ma'am.
16       Q.   All right.  Excuse me.  And have you
17  reported that your irritability and your angry
18  outbursts can come about with little or even no
19  provocation?  Have you reported that to your
20  psychiatrist?
21       A.   Yes, I believe at that time it was
22  occurring, yes, ma'am.
23       Q.   And have you said that no one can be
24  trusted, the world is completely dangerous?
25       A.   I'm sorry, ma'am?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  you.
 2                CONTINUED CROSS-EXAMINATION
 3  BY MS. NEDA:
 4       Q.   Just as an initial matter, Mr. Rodella, we
 5  just had a hour, maybe hour-ten break.  You didn't
 6  visit with the defense attorneys about your
 7  testimony, did you, during that break?
 8       A.   No, ma'am.
 9       Q.   Okay.  Now, the other thing is, I'd like
10  to cover -- you indicated you live with your father
11  and your mother?
12       A.   I'm sorry, I couldn't hear you.
13       Q.   Did you indicate you lived with your
14  father and your mother?
15       A.   That's correct.
16       Q.   And your dad supports you; right?
17       A.   No.
18       Q.   How much do you make?
19       A.   Just a drill check.
20       Q.   That's $300 a month; right?
21       A.   Roughly, yes.
22       Q.   And so you live on $300 a month?
23       A.   Yes.
24       Q.   Now, do you recall being interviewed in a
25  criminal investigation by the New Mexico State
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


Bean & Associates, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   That's what you think you were?  That's
 2   what you're thinking now, is that you were?
 3        A.   Oh, I was, ma'am.
 4        Q.   Okay.  So you wanted to sign up for the
 5   registry for being exposed to burning refuse in
 6   Iraq.
 7        A.   No, it's part of the OIF, OEF, Iraqi
 8   Freedom and Enduring Freedom.  The Kosovo mission
 9   falls under Enduring Freedom.
10        Q.   So your psychiatrist has that wrong, you
11   didn't mean to say you wanted to enter the registry
12   for the Iraq war.
13        A.   I never said anything about Iraq to her.
14        Q.   Oh, you didn't?  Or you just don't
15   remember?
16        A.   I have never been to Iraq, and I don't
17   think I would bring up Iraq to my psychiatrist,
18   ma'am.
19        Q.   Okay.  All right.
20             Well, let's see.  Going back to your
21   frustration tolerance, you did say that you do have
22   poor frustration tolerance, right?  Poor frustration
23   tolerance?
24        A.   At one point, I did, yes, ma'am.
25        Q.   And you also have reported, as recently as
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


Bean & Associates, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  January 2014, angry outbursts where there's no
 2  provocation; right?  Angry outbursts where there's
 3  no provocation.
 4       A.   At that point in time, yes, ma'am.
 5       Q.   Okay.  Also, as of January 2014, you
 6  indicated that your unprovoked irritability leads to
 7  periods of violence; is that right?
 8       A.   At that time, yes, ma'am.
 9       Q.   Okay.  And also in January 2014, you
10  indicated that the drugs you were taking, the
11  Mirtazapine -- you know what I mean.  You'll have to
12  give me that name.
13       A.   I'm not sure which one.
14       Q.   The -- I call it Remeron, the common name,
15  but it's the Mirtazapine?
16       A.   The Mirtazapine.
17       Q.   And the bupropion.  Those two.  You were
18  taking those in January 2014, among others; right?
19       A.   I believe so, ma'am.
20       Q.   And you indicated that those drugs did not
21  control the symptoms; is that right?
22       A.   Not to my recollection, they weren't
23  helping.
24       Q.   They weren't helping.
25       A.   No.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com