# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                            No. CR 14-2783 JB

THOMAS R. RODELLA and
THOMAS R. RODELLA, JR.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Objections to United States' Requested Jury Instructions, filed September 14, 2014 (Doc. 77)("Objections"). The Court did not have a hearing solely on the Objections, but heard arguments on the Court's proposed jury instructions, which incorporated some of the United States' Requested Jury Instructions, filed September 10, 2014 (Doc. 60)("U.S. Instructions"), during trial. See Transcript of Trial at 2:23-12:21 (taken September 23, 2014)("2d Day of Trial Tr.")(Peña, Gorence, Court);[1] 2d Day of Trial Tr. at 334:16-341:14 (Peña, Gorence, Oliveros, Court); Transcript of Trial at 1:9-4:19 (taken September 24, 2014)("3d Day of Trial Tr.")(Gorence, Clerk, Court); 3d Day of Trial Tr. at 308:6-329:9 (Peña, Gorence, Court); Transcript of Trial at 3:1-6:2 (taken September 25, 2014)("4th Day of Trial Tr.")(Peña, Court); 4th Day of Trial Tr. at 72:5-76:2 (Peña, Oliveros, Court); 4th Day of Trial Tr. at 130:20-146:15 (Neda, Peña, Oliveros, Court); 4th Day of Trial Tr. at 247:15-252:10 (Neda, Peña, Oliveros, Court); 4th Day of Trial Tr. at 257:4-260:6 (Peña, Oliveros, Court); 4th Day of Trial Tr. at 261:11-264:2 (Peña, Court); 4th Day of Trial Tr. at

---

[1]The Court's citations to the transcripts of trial refer to the court reporter's original, unedited versions. Any final transcripts may contain slightly different page and/or line numbers.

297:7-299:13 (Neda, Peña, Gorence, Oliveros, Court); 4th Day of Trial Tr. at 301:2-307:18 (Neda, Peña, Gorence, Court); Transcript of Trial at 77:3-78:16 (taken September 26, 2014)(Peña, Gorence, Clerk, Court). The primary issue is whether the Court should use the proposed jury instructions from the U.S. Instructions, in the Court's final jury instructions. Because some of Plaintiff United States of America's proposed jury instructions deviate significantly from the Tenth Circuit Pattern Jury Instructions, and because some of the proposed instructions may mislead the jury, the Court will not include them in the Court's final jury instructions. The Court will, however, use other requested instructions that accurately state the law and will not mislead the jury. Accordingly, the Court will sustain the Objections in part and overrule them in part.

## FACTUAL BACKGROUND

The Superseding Indictment, filed September 9, 2014 (Doc. 55)("Indictment"), alleges that, on March 11, 2014, in Rio Arriba County, New Mexico, Defendant Thomas R. Rodella, while acting under color of state law, subjected a person -- Michael Tafoya -- to "unreasonable seizure by a law enforcement officer." Indictment at 1. Specifically, Rodella allegedly used unreasonable force and caused an "unlawful arrest by deputies of the Rio Arriba County Sheriff's Office." Indictment at 1. "This offense resulted in bodily injury" to a person, and included the "use and threatened use of a dangerous weapon." Indictment at 1. The Indictment further alleges that Rodella carried and brandished a firearm "during and in relation to a crime of violence for which the defendant may be prosecuted in a court of the United States," and that, "in furtherance of such crime, possessed and brandished said firearm." Indictment at 1-2.

# PROCEDURAL BACKGROUND

On September 10, 2014, the United States and Rodella filed proposed jury instructions to which they stipulated that the Court should include in its final instructions. <u>See</u> Stipulated Jury Instructions, filed September 10, 2014 (Doc. 59). That same day, the United States filed additional jury instructions. <u>See</u> U.S. Instructions at 1. Rodella objects to these additional instructions. <u>See</u> Objections, *passim*.

The United States' Requested Instruction Number 1 states:

> You have heard the testimony of [name of witness], who was a witness in the [government's] [defense] case. You also heard testimony from others concerning [their opinion about his character for truth-telling] [his reputation, in the community where he lives, for telling the truth]. It is up to you to decide from what you heard here whether [name of witness] was telling the truth in this trial. In deciding this, you should bear in mind the testimony concerning his [reputation for] truthfulness.

U.S. Instructions at 3. Its Requested Instruction Number 2 states:

> You have heard evidence of other [crimes] [acts] [wrongs] engaged in by Mr. Rodella. You may consider that evidence only as it bears on Mr. Rodella's [e.g., motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident] and for no other purpose. Of course, the fact that the defendant may have previously committed an act similar to the one charged in this case does not mean that the defendant necessarily committed the act charged in this case.

U.S. Instructions at 4.

Rodella objects to both of these two instructions by arguing that they "are not applicable to this case." Objections at 1. He asserts that they are appropriate only if the evidence at trial warrants their inclusion, and that they are irrelevant and prejudicial if they are given without any character or similar-acts evidence being introduced at trial. <u>See</u> Objections at 1.

The United States' Requested Instruction Number 3 states:

> Rio Arriba Sheriff's Office policies and procedures have been introduced into evidence. These are the sheriff's department's rules governing the conduct of

vehicle pursuits by members of the department. Likewise, you have heard evidence regarding generally accepted police practices, and the training Mr. Rodella personally received. This evidence has been admitted for a limited purpose. You may use it only to determine whether Mr. Rodella acted willfully, that is, with a bad purpose to violate a right protected by the Constitution or laws of the United States. It is, of course, wholly up to you to determine whether any department rules, policies or accepted practices were violated in this case.

I caution you that not every instance of inappropriate behavior on the part of a sheriff or deputy rises to the level of a federal constitutional violation. It is possible for a law enforcement officer to violate state law or policy, or act contrary to the officer's training, without violating the United States Constitution, just as it is possible for an officer to violate the Constitution without violating a specific state law or policy.

In other words, if you determine that Mr. Rodella violated any Rio Arriba Sheriff's Office policies or generally accepted law enforcement practices or acted contrary to the training he received, you should consider that evidence only in determining whether Mr. Rodella acted willfully and not consider this evidence in determining whether his actions violated the Constitution in the first instance.

U.S. Instructions at 5.

Rodella objects to this instruction by stating that he objects to it for the reasons set forth in the Defendant's Motion to Strike Expert Testimony of Manuel T. Overby, filed September 9, 2014 (Doc. 50)("Motion to Strike"), and the Defendant's Response in Opposition to United States' Motion in Limine to Permit Evidence of Rio Arriba County Sheriff Office Procedures as Part of the Training Materials, filed September 12, 2014 (Doc. 72)("Opposition to SOPs"). Objections at 1-2. Rodella contends that, because the Rio Arriba Sheriff Department's standard operating procedures ("SOPs") and training materials are not relevant and are inadmissible, the Court should not give this instruction.

The United States' Requested Instruction Number 4 states:

Mr. Rodella is charged in Count 1 with a violation of 18 U.S.C. § 242.

This law makes it a crime for anyone acting under color of law willfully to deprive someone of a right secured by the Constitution or laws of the United States.

To find Mr. Rodella guilty of this crime you must be convinced that the United States has proved each of the following beyond a reasonable doubt:

First: Mr. Rodella was acting under color of law when he committed the acts charged in the indictment.

Second: Mr. Rodella deprived M.T. of his right to be free from unreasonable seizure by a law enforcement officer, which is a right secured by the Constitution or laws of the United States.

Third: the defendant acted willfully.

U.S. Instructions at 6. Its Requested Instruction Number 5 states:

**Element One -- Under Color of Law**

The first element that the United States must prove with regard to Count 1 is that Mr. Rodella acted under "color of law." "Under color of law" means acts done under any state law, county or city ordinance, or other governmental regulation, and includes acts done according to a custom of some governmental agency. It means that the defendant acted in his official capacity or else claimed to do so, but abused or misused his power by going beyond the bounds of lawful authority. The defendant need not be on duty to act under color of law.

U.S. Instructions at 7. The United States' Requested Instruction Number 6 states:

**Element Two -- Deprivation of a Protected Right**

The second element that the United States must prove with regard to Count 1 is that Mr. Rodella deprived M.T. of a right secured or protected by the Constitution or the laws of the United States. Specifically, the Indictment alleges that the Mr. Rodella deprived M.T. of his right to be free from unreasonable seizures and unreasonable use of force by a law enforcement officer. You are instructed that this right is protected and secured by the Fourth Amendment to the United States Constitution.

A police officer violates an arrestee's Fourth Amendment right to be free of unreasonable seizure if the officer makes an arrest without probable cause. Whenever an officer restrains the freedom of a person to walk away, he has seized that person. Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense. Although you may take into account factors such as whether the officer reasonably interviewed witnesses readily available at the scene, whether he investigated basic evidence or whether he

inquired if a crime had been committed at all before invoking the power of warrantless arrest and detention, the primary concern is whether a reasonable officer would have believed that probable cause existed to arrest the defendant based on the information possessed by the arresting officer.

Police officers can violate the Fourth Amendment by employing unreasonable force when making a seizure or an arrest. The inquiry into whether this right was violated requires a balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.

Whether the force used by police officers is reasonable is an objective inquiry depending on the facts and circumstances of each particular case. A law enforcement officer is justified in using only that amount of force which he reasonably believes to be necessary to accomplish a legitimate law enforcement purpose such as holding a person who has been arrested in custody, preventing escape, or defending himself from bodily harm. An officer may not use more force than is reasonably necessary to accomplish such legitimate purposes. Retribution, retaliation, and deterrence are not legitimate law enforcement purposes. Thus, you may find that force which was for the purpose of retribution, retaliation, or deterrence was unreasonable. Drawing a firearm or brandishing a firearm toward a citizen may constitute unreasonable force even though no physical injury is inflicted.

In determining whether Mr. Rodella's actions toward M.T. were reasonable, you should consider all the circumstances from the point of view of an ordinary and reasonable officer on the scene. You should consider the severity of the crime at issue, whether M.T. posed an immediate threat to the safety of Mr. Rodella or others, and whether M.T. actively resisted arrest or attempted to evade arrest by flight. If, after considering all the circumstances, you find that the defendant unreasonably seized M.T. or used unreasonable force against M.T., then you may find that this element of the offense is satisfied with respect to Count I.

U.S. Instructions at 8-9. The United States' Requested Instruction Number 7 states:

### Element Three -- Willfulness

The third element that the United States must prove with regard to Count 1 is that the defendant acted willfully. An act is done willfully if it is done voluntarily and intentionally, and with the specific intent to do something the law forbids, or to fail to do something that the law requires to be done; that is, with a bad purpose to disobey or disregard the law. In this case, it means with the specific intent to deprive the victim of a right secured or protected by the Constitution.

Intent is a state of mind and can be proven by circumstantial evidence. Indeed, it can rarely be established by any other means. In determining whether the defendant acted with the required specific intent, you may consider all the circumstances of the case. In determining the issue of what a person intended at a particular time, you may consider any statements made or any acts done by that person and all other facts and circumstances received in evidence which may aid in your determination of that person's knowledge and intent.

You may infer that a person ordinarily intends all the natural and probable consequences of an act knowingly done. In other words, you may infer and find that the defendant intended all the consequences that a sheriff's department officer, standing in like circumstances and possessing like knowledge, should have expected to result from his acts knowingly done.

It is not necessary to show or prove that a defendant was thinking in Constitutional terms at the time of the incident. You may find that the defendant acted with the required specific intent even if you find that he had no real familiarity with the Constitution or with the particular Constitutional right involved, provided that you find that the defendant willfully and consciously did the act which deprived the victim of his constitutional rights.

In order to establish a willful deprivation, the United States need not show that the acts of the defendant were premeditated or of long duration. If you find that the defendant knew what he was doing and that he intended the consequences of his acts, and if you find that what he did constituted a deprivation of a constitutional right, then you may conclude that the defendant acted with the specific intent to deprive the victim of that constitutional right.

U.S. Instructions at 11-12.

Rodella objects to these four instructions. See Objections at 2-3. He argues that these instructions are not accurate statements of law and stray from the Tenth Circuit Pattern Jury Instructions Criminal No. 2.17, at 103-02 (2011). See Objections at 2. Rodella asserts that the United States' requested instructions fail to use the Fifth Circuit Pattern Jury Instructions on excessive force and unlawful arrest. See Objections at 2 (citing Fifth Circuit Pattern Jury Charges §§ 10.1, 10.2 (2006)). He asserts that, because he is not contesting that he acted under the color of law, a separate color of law instruction is unnecessary. See Objections at 2. Rodella argues that the section on retribution, retaliation, and deterrence does not apply in this case,

because there are no allegations of retribution, retaliation, or deterrence.  <u>See</u> Objections at 2-3.

He contends that the United States' language that "drawing a firearm or brandishing a firearm

toward a citizen may constitute unreasonable force even though no physical injury is inflicted" is

an incorrect statement of law, because a law enforcement officer may use a reasonable amount of

force, including using a firearm, to effect an arrest.  Objections at 3 (alterations omitted)(internal

quotation marks omitted)(quoting U.S. Instructions at 9)(citing <u>Medina v. Cram</u>, 252 F.3d 1124,

1133 (10th Cir. 2001)("Moreover, the reasonableness standard does not require that officers use

alternative less intrusive means."  (citation omitted)(internal quotation marks omitted)).

The United States' Requested Instruction Number 8 states:

> If you find that the United States has proven the crime of Deprivation of
> Rights as charged in Count 1, you then must an answer an interrogatory, or
> question, on the verdict form, as to whether the United States has proven beyond a
> reasonable doubt that Mr. Rodella's actions resulted in bodily injury.  Your
> answer must be unanimous.
>
> The United States need not prove that the defendant intended to cause
> bodily injury.  Instead, the United States need only prove that some degree of
> bodily injury, no matter how slight or temporary, resulted from the defendant's
> unlawful conduct.
>
> Bodily injury includes any injury to the body, such as a cut, abrasion,
> bruise, burn, or disfigurement or simply physical pain.

U.S. Instructions at 14.  Its requested Instruction Number 9 states:

> If you find that the United States has proven the crime of Deprivation of
> Rights as charged in Count 1, you then must an answer an interrogatory, or
> question, on the verdict form, as to whether the United States has proven beyond a
> reasonable doubt that Mr. Rodella used or threatened to use a dangerous weapon
> in the course of depriving M.T. of his constitutional rights.  Your answer must be
> unanimous.

U.S. Instructions at 15.

Rodella objects to these two instructions.  <u>See</u> Objections at 3-4.  He argues that both

instructions refer to the verdict form and that the United States' proposed verdict form does not

correctly state the elements of the alleged offenses.  <u>See</u> Objections at 3.  Rodella maintains that the word "simply" in the last sentence of the United States' Requested Instruction Number 8 should be omitted, because it is an inaccurate statement of law, and because it may mislead the jury into believing that there is almost no threshold for the United States to prove a bodily injury. <u>See</u> Objections at 3-4.  He asserts that the word simply misstates the fact of the case, unfairly prejudices him, and would confuse the jury.  <u>See</u> Objections at 4.

The United States' Requested Instruction Number 10 states:

Mr. Rodella is charged in Count 2 with a violation of 18 U.S.C. § 924(c).

This law makes it a crime to use or carry a firearm during and in relation to any crime of violence for which a person may be prosecuted in a court of the United States.

To find Mr. Rodella guilty of this crime you must be convinced that the United States has proved each of the following beyond a reasonable doubt:

First: Mr. Rodella committed the crime of deprivation of civil rights, as charged in Count 1 of the indictment.  You are instructed that deprivation of civil rights is a crime of violence;

Second: Mr. Rodella used or carried a firearm and brandished that firearm;

Third: the use or carrying of the firearm was during and in relation to the crime of deprivation of civil rights;

The phrase "during and in relation to" means that the firearm played an integral part in the underlying crime, that it had a role in, facilitated (i.e., made easier), or had the potential of facilitating the underlying crime.

A defendant knowingly "uses" a firearm when it (1) is readily accessible and (2) is actively employed during and in relation to the underlying crime.

A defendant knowingly "carries" a firearm when he (1) possesses the firearm through the exercise of ownership or control and (2) transports or moves the firearm from one place to another.

A defendant knowingly "brandishes" a firearm when he displays all or part of the firearm, or otherwise makes the presence of the firearm known to

another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person.

In determining whether Mr. Rodella knowingly used or carried and brandished a firearm during and in relation to the underlying crime, you may consider all of the facts received in evidence including the nature of the crime, the usefulness of a firearm to the crime, the extent to which a firearm actually was observed before, during and after the time of the crime, and any other facts that bear on the issue.

A firearm plays an integral part in the underlying crime when it furthers the purpose or effect of the crime and its presence or involvement is not the result of coincidence. The United States must prove a direct connection between Mr. Rodella's use or carrying of the firearm and the underlying crime but the crime need not be the sole reason Mr. Rodella used or carried the firearm.

The term "firearm" means any weapon that will or is designed to or may readily be converted to expel a projectile by the action of an explosive. The term "firearm" also includes the frame or receiver of any such weapon, or any firearm muffler or firearm silencer, or destructive device.

U.S. Instructions at 16-17.

Rodella objects to this instruction by arguing that it is not an accurate statement of law and does not conform to the Tenth Circuit Pattern Jury Instructions Criminal No. 2.45, at 153-54 (2011). See Objections at 4. He contends that the instruction does not fully define the terms within the instruction and that it does not accurately state the elements of the alleged offense. See Objections at 4. Rodella argues that the instruction misstates the definition of brandishing a firearm, asserting that a "person 'brandishes' a firearm when he acts with the intent to intimidate another person." Objections at 4 (citing United States v. Bowen, 527 F.3d 1065, 1073 (10th Cir. 2008)("§ 924(c)'s definition of brandishing a firearm requires a defendant act with the intent to intimidate another . . . ." (internal quotation marks omitted)). He asserts that the instruction is misleading and will confuse the jury. See Objections at 4. Rodella contends that the Court should use his proposed instruction number 2 rather than the United States' Requested

Instruction Number 10.  <u>See</u> Objections at 4 (referring to Defendant's Proposed Jury Instructions at 4-5, filed September 10, 2014 (Doc. 63)("Rodella's Instructions")).

The United States proposed the following verdict form:

**<u>COUNT 1</u>**

WE, the jury, find the defendant, THOMAS R. RODELLA, _____ (guilty or not guilty) as charged in Count 1 of the indictment.

If your verdict on Count 1 is "guilty," do you also find beyond a reasonable doubt that the defendant caused M.T. to suffer bodily injury? _____ (yes or no)

If your verdict on Count 1 is "guilty," do you also find beyond a reasonable doubt that the defendant used or threatened to use a dangerous weapon? _____ (yes or no)

**<u>COUNT 2</u>**

WE, the jury, find the defendant, THOMAS R. RODELLA, _____ (guilty or not guilty) as charged in Count 2 of the indictment.

U.S. Instructions at 18.

Rodella objects to the use of this verdict form.  <u>See</u> Objections at 4-5.  He argues that the form does not accurately reflect the elements of the charged offenses and misstates the law.  <u>See</u> Objections at 4.  Rodella asserts that the United States' proposed verdict form does not require the jury to find a civil rights violation, a bodily injury, or the use of a weapon before finding him guilty or not guilty of Count 1.  <u>See</u> Objections at 4-5.  He argues that the verdict form also allows the jury to determine whether Rodella is guilty or not guilty as to Count 2 without instructing the jury that they must first find that he committed the crime of violence charged in Count 1.  <u>See</u> Objections at 5.  Rodella requests that the Court use his proposed verdict form. <u>See</u> Objections at 5 (referring to Rodella's Instructions at 14-15).

Before trial, the United States moved to introduce evidence of other bad acts pursuant to rule 404(b) of the Federal Rules of Evidence. See Motion in Limine to Introduce Evidence Pursuant to Federal Rule of Evidence 404(b), filed September 9, 2014 (Doc. 46); Amended Motion in Limine to Introduce Evidence Pursuant to Federal Rule of Evidence 404(b), filed September 10, 2014 (Doc. 56)("404(b) Motion"). The Court granted the 404(b) Motion. See United States v. Rodella, No. CR 14 2783 JB, 2014 WL 6911573 (D.N.M. Sept. 21, 2014)(Browning, J.). In granting the 404(b) Motion, the Court stated the specific purposes for which the jury may use the evidence of the other acts:

(i)     Rodella's motive and intent for pursuing Tafoya was to express his road rage, punish disrespect, and force Tafoya to submit to his authority and not to enforce any traffic law.

(ii)    Rodella had a plan to drive in a threatening manner towards other motorists, and if he succeeded in provoking any disrespectful act, force the motorist to submit through a display of his authority. The traffic encounters are part of a common plan Rodella had to require the citizens of Rio Arriba to submit to his authority.

(iii)   Rodella did not make a mistake or accidently forget that his identity was not apparent to all motorists when he pursued Tafoya in a private Jeep.

United States v. Rodella, 2014 WL 6911573, at *1.

During the trial, Rodella stated that, in light of the Court's ruling on the 404(b) Motion, he did not object to including a limiting instruction on the use of the 404(b) evidence, similar to the United States' Requested Instruction Number 2. See 3d Day of Trial Tr. at 318:21-25 (Oliveros, Court); 4th Day of Trial Tr. at 247:15-25 (Oliveros, Court).

## LAW REGARDING JURY INSTRUCTIONS

With regard to jury instructions, the United States Court of Appeals for the Tenth Circuit has held: "We do not require perfection, but we must be satisfied that, upon hearing the instructions, the jury understood the issues to be resolved and its duty to resolve them."

Gonzales v. Duran, 590 F.3d 855, 859 (10th Cir. 2009). "An erroneous jury instruction requires reversal 'only if the error is determined to have been prejudicial, based on a review of the record as a whole.'" Sherouse v. Ratchner, 573 F.3d 1055, 1059-60 (10th Cir. 2009)(quoting Durflinger v. Artiles, 727 F.2d 888, 895 (10th Cir. 1984)). See Townsend v. Lumbermens Mut. Cas. Co., 294 F.3d 1232, 1242 (10th Cir. 2002)("A faulty jury instruction requires reversal when (1) we have substantial doubt whether the instructions, considered as a whole, properly guided the jury in its deliberations; and (2) when a deficient jury instruction is prejudicial." (citations omitted)(internal quotation marks omitted)). The inquiry is "not whether the instruction was completely faultless, but whether the jury was misled in any way." Coleman v. B-G Maint. Mgmt. of Colo., Inc., 108 F.3d 1199, 1202 (10th Cir. 1997).

In cases where the district court has given a legally erroneous jury instruction, and where the jury might have based its verdict on the erroneous instruction, prejudice exists, and reversal is required. See Adams-Arapahoe Joint Sch. Dist. No. 28-J v. Cont'l Ins. Co., 891 F.2d 772, 779-80 (10th Cir. 1989)(finding prejudice that required reversal where (a) a jury instruction incorrectly placed the burden of proof on the defendant rather than on the plaintiff and (b) the jury might have based its verdict thereon); Guidance Endodontics, LLC v. Dentsply Int'l, Inc., No. 08-1101 JB/RLP, 2011 WL 1330781, at *10-11 (D.N.M. Mar. 30, 2011)(Browning, J.). Since Adams-Arapahoe Joint School District No. 28-J v. Continental Insurance Co., the Tenth Circuit has repeatedly restated this formulation. See, e.g., Level 3 Commc'ns, LLC v. Liebert Corp., 535 F.3d 1146, 1159 (10th Cir. 2008)("Where an appellate court determines that the district court has given a legally erroneous jury instruction, the judgment must be reversed if the jury might have based its verdict on the erroneously given instruction." (emphasis added)(internal quotation marks omitted)); Wankier v. Crown Equip. Corp., 353 F.3d 862, 867

(10th Cir. 2003)("Where an appellate court determines that the district court has given a legally erroneous jury instruction, the judgment must be reversed 'if the jury might have based its verdict on the erroneously given instruction.'"); Townsend v. Lumbermens Mut. Cas. Co., 294 F.3d at 1242 ("Thus, where a jury instruction is legally erroneous, we reverse if the jury might have based its verdict on the erroneously given instruction."); Coleman v. B-G Maint. Mgmt. of Colo., Inc., 108 F.3d at 1202 ("Thus, '[w]here a jury instruction is legally erroneous, we must reverse if the jury might have based its verdict on the erroneously given instruction.'" (alteration in original)); City of Wichita v. U.S. Gypsum Co., 72 F.3d 1491, 1495 (10th Cir. 1996)("Where a jury instruction is legally erroneous, we must reverse if the jury might have based its verdict on the erroneously given instruction."); SEC v. Peters, 978 F.2d 1162, 1167 (10th Cir. 1992)("Where a jury instruction is legally erroneous, we must reverse if the jury might have based its verdict on the erroneously given instruction.").

Most recently, the Tenth Circuit explained further that "[t]he might have threshold, as its language suggests, requires reversal even if that possibility is very unlikely. Only when the erroneous instruction could not have changed the result of the case can we say the error is harmless and does not require reversal." Level 3 Commc'ns, LLC v. Liebert Corp., 535 F.3d at 1158 (emphasis in original)(citations omitted)(internal quotation marks omitted). In Wankier v. Crown Equipment Corp., for example, the district court declined to instruct the jury that the plaintiff in a products liability action bore the burden of showing that an alternative, safer design was available. See 353 F.3d at 868. The Tenth Circuit found that "there is no doubt that the erroneous instruction regarding Plaintiff's burden to show a safer alternative design may have misled the jury." 353 F.3d at 868. Accordingly, the Tenth Circuit vacated the judgment entered on the jury verdict. See 353 F.3d at 868.

Level 3 Communications, LLC v. Liebert Corp. involved a contract dispute where the district court instructed the jury that the contract at issue was not ambiguous as a matter of law. See 535 F.3d at 1153. On appeal, after reaching the opposite conclusion -- that the contract was ambiguous as a matter of law -- the Tenth Circuit recognized that the district court had given a legally erroneous instruction and held: "To conclude the error is not harmless, we must determine the error might have affected the jury's verdict." 535 F.3d at 1158-59. The Tenth Circuit held that, with its erroneous instruction, "the district court virtually assured that the jury would find for Level 3 on the breach of contract claim." 535 F.3d at 1159. The Tenth Circuit therefore reversed and remanded the case for a new trial. See 535 F.3d at 1161.

In contrast to both Wankier v. Crown Equipment Corp. and Level 3 Communications, LLC v. Liebert Corp., the Tenth Circuit has found reversal was not required despite erroneous instructions. In Sherouse v. Ratchner, 573 F.3d 1055 (10th Cir. 2009), a case involving claims that police officers violated the civil rights of two young women suspected of robbery, the district court instructed the jury that "[a] police officer's probable cause determination is not negated if the officer reasonably but mistakenly believed that probable cause existed at the time of arrest." 573 F.3d at 1059. The Tenth Circuit found this instruction to be legally incorrect, because, "[w]hile an officer's reasonable but mistaken understanding of the facts justifying a search or seizure does not negate the legitimacy of a probable cause determination, an officer's reasonable but mistaken understanding of the applicable law he is enforcing does." 573 F.3d at 1059. Despite the erroneous instruction, the Tenth Circuit found no prejudice, because the only evidence as to any mistake in the case was the officer's misidentification of the plaintiffs -- a mistake of fact -- and "the plaintiffs [did] not identif[y] any misinterpretation of law that could have been pertinent to the officers' actions." 573 F.3d at 1060.

The Tenth Circuit similarly declined to reverse the district court's judgment despite a legally erroneous jury instruction in <u>Gonzales v. Lopez</u>, 590 F.3d 855 (10th Cir. 2009).  In that case, the Tenth Circuit found the district court's instructions on qualified immunity were incorrect, but deemed the error harmless, because the special interrogatories to the jury revealed that the jury intended to find for the defendants on the merits of the case, without the need to consider the affirmative defense of qualified immunity.  <u>See</u> 590 F.3d at 862.

## **DEFINITION OF WILLFULLY UNDER 18 U.S.C. § 242**

Section 242 prohibits a defendant from "willfully subject[ing]" a person "to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or the laws of the United States."  18 U.S.C. § 242.  The deprivation of a constitutional, or other federal right, and the willfulness of such deprivation, are two separate elements.  <u>See</u> <u>United States v. Reese</u>, 2 F.3d 870, 884 (9th Cir. 1993)("[T]he violation of a federally protected right and the specific intent to violate that right are *separate* elements of the crime established by the statute." (emphasis in original)).

> To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:
>
> . . . .
>
> Second: the defendant deprived [name of person] of [his] [her] right to [name right], which is a right secured by the Constitution or laws of the United States.
>
> Third: the defendant acted willfully, that is, the defendant acted with a bad purpose, intending to deprive [name of person] of that right.

Tenth Circuit Pattern Jury Instructions Criminal No. 2.17, at 103-104 (2011).

The Supreme Court of the United States of America, in <u>Screws v. United States</u>, 325 U.S. 91 (1945)("<u>Screws</u>"),[2] defined the term "willfully" in the § 242 context.[3]  The Supreme Court explained that the term "'willful' is a word of 'many meanings, its construction often being influenced by its context.'"  <u>Screws</u>, 325 U.S. at 101 (quoting <u>Spies v. United States</u>, 317 U.S. 492, 497 (1943)).  The Supreme Court also noted that, in a criminal statute, willfully "generally means an act done with a bad purpose" and that it requires something more than merely doing "the act required by the statute."  <u>Screws</u>, 325 U.S. at 101.  For 18 U.S.C. § 242, the Supreme Court held that "the presence of a bad purpose or evil intent" by itself is insufficient to satisfy the "willfully" element.  <u>Screws</u>, 325 U.S. at 103.  To ensure that the defendants are not punished for violating an unknown constitutional or federal right, the Court construed "willfully" as requiring a defendant to either "know or act[] in reckless disregard" in depriving a person "of a defined constitutional or other federal right."  325 U.S. at 104.  As the Supreme Court stated, "[w]hen they act willfully in the sense in which we use the word, they act in open defiance or in reckless disregard of a constitutional requirement which has been made specific and definite."  325 U.S. at 105.

---

[2]The opinion in <u>Screws</u> was a plurality opinion.  <u>See</u> <u>Screws</u>, 325 U.S. at 91.  A majority of the Supreme Court, however, has subsequently adopted the <u>Screws</u> reasoning.  <u>See</u> <u>Williams v. United States</u>, 341 U.S. 97, 100 (1951); <u>United States v. Guest</u>, 383 U.S. 745, 753-54 (1966); <u>United States v. Price</u>, 383 U.S. 787, 793 (1966); <u>Anderson v. United States</u>, 417 U.S. 211, 223 (1974).  <u>See also</u> <u>United States v. Johnstone</u>, 107 F.3d 200, 213 n.8 (3d Cir. 1997); <u>United States v. Reese</u>, 2 F.3d at 896 n.16.

[3]The Supreme Court in <u>Screws</u> construed the predecessor statute to 18 U.S.C. § 242 -- 18 U.S.C. § 52.  Courts interpret <u>Screws</u>' construction of the term "willfully" in the former § 52 as applicable to § 242.  <u>See</u> <u>United States v. Johnstone</u>, 107 F.3d 200, 207-09 (3d Cir. 1997); <u>United States v. Bradley</u>, 196 F.3d 762, 769 (7th Cir. 1999); <u>United States v. Reese</u>, 2 F.3d at 896; <u>United States v. Couch</u>, 59 F.3d 171, No. 94-3292, at *3-4 (6th Cir. June 20, 1995)(table opinion)(unpublished).

Accordingly, a conviction under § 242 requires proof that the defendant acted with the specific intent to deprive a person of some constitutional right. See Screws, 325 U.S. at 105. "[I]t [is] not sufficient that the defendants may have had a general bad purpose; . . . it [is] necessary that they have the actual purpose of depriving [the victim] of the constitutional rights enumerated in the indictment . . . ." Apodaca v. United States, 188 F.2d 932, 937 (10th Cir. 1951).

## LAW REGARDING RULE 404(B)

Under rule 404(b), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show action in conformity therewith. See Fed. R. Evid. 404(b). Rule 404(b) provides:

**(b)** **Crimes, Wrongs, or Other Acts.**

> **(1)** **Prohibited Uses.** Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> **(2)** **Permitted Uses; Notice in a Criminal Case.** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:
>
>> **(A)** provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
>>
>> **(B)** do so before trial -- or during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b). "In other words, one cannot present evidence the relevance of which is based on the forbidden inference: the person did X in the past, therefore he probably has a

propensity for doing X, and therefore he probably did X this time, too." Wilson v. Jara, No. 10-0797 JB/WPL, 2011 WL 6739166, at *5 (D.N.M. Nov. 1, 2011)(Browning, J.). "The rule, however, has a number of 'exceptions' -- purposes for which such evidence will be admissible." Wilson v. Jara, 2011 WL 6739166, at *5. Those purposes include proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. See Fed. R. Evid. 404(b). The Supreme Court of the United States has enunciated a four-part process to determine whether evidence is admissible under rule 404(b). See Huddleston v. United States, 485 U.S. 681, 691-92 (1988). The Tenth Circuit has consistently applied that test:

> To determine whether Rule 404(b) evidence was properly admitted we look to [a] four-part test . . . : (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000)(citing United States v. Roberts, 185 F.3d 1125 (10th Cir. 1999)). See United States v. Higgins, 282 F.3d 1261, 1274 (10th Cir. 2002); United States v. Hardwell, 80 F.3d 1471, 1488 (10th Cir. 1996)(citing Huddleston, 485 U.S. at 691-92).

Rule 404(b)'s prohibition finds its source in the common-law protection of the criminal defendant from risking conviction on the basis of evidence of his character. See Wynne v. Renico, 357 F.3d 599, 611 (6th Cir. 2004)(citing United States v. Dudek, 560 F.2d 1288 (6th Cir. 1977)); 22 C. Wright & K Graham, Federal Practice and Procedure: Evidence § 5239, at 428, 436-37, 439 (1991). In United States v. Phillips, 599 F.2d 134 (6th Cir. 1979), the United States Court of Appeals for the Sixth Circuit noted, in addressing rule 404(b)'s limitations and requirements, that the rule addresses two main policy concerns: (i) that the jury may convict a

"bad man" who deserves to be punished, not because he is guilty of the crime charged, but because of his prior or subsequent misdeeds; and (ii) that the jury will infer that, because the accused committed other crimes, he probably committed the crime charged. United States v. Phillips, 599 F.2d at 136. "'[W]hen other-act evidence is admitted for a proper purpose and is relevant, it may be admissible even though it has 'the potential impermissible side effect of allowing the jury to infer criminal propensity.'" United States v. Moran, 503 F.3d 1135, 1145 (10th Cir. 2007)(quoting United States v. Cherry, 433 F.3d 698, 701 n.3 (10th Cir. 2005)). See United States v. Romero, No. CR 09-1253 JB, 2011 WL 1103862, at *12 (D.N.M. March 9, 2011)(Browning, J.)("Rule 404(b) evidence almost always has some propensity evidence.").

When bad act evidence is both relevant and admissible for a proper purpose, "the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the bad act." United States v. Morley, 199 F.3d 129, 133 (3d Cir. 1999)(alterations omitted). The Tenth Circuit has also stated that district courts must "identify specifically the permissible purpose for which such evidence is offered and the inferences to be drawn therefrom." United States v. Youts, 229 F.3d 1312, 1317 (10th Cir. 2000)(citing United States v. Kendall, 766 F.2d 1426, 1436 (10th Cir. 1985)).

> The Government must articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the evidence of other acts. In addition, the trial court must specifically identify the purpose for which such evidence is offered and a broad statement merely invoking or stating Rule 404(b) will not suffice.

United States v. Romine, 377 F. Supp. 2d 1129, 1132 (D.N.M. 2005)(Browning, J.)(quoting United States v. Kendall, 766 F.2d 1426, 1436 (10th Cir. 1985)). Rules 401 to 403 and the conditional relevancy rules in rule 104(b) govern the applicable burden the proponent must meet

to successfully offer evidence under rule 404(b). See Huddleston v. United States, 485 U.S. at 686-91.

The Tenth Circuit has recognized the probative value of uncharged, unrelated acts to show motive, intent, and knowledge, when the uncharged, unrelated acts are similar to the charged crime and sufficiently close in time. See United States v. Olivo, 80 F.3d 1466, 1468-69 (10th Cir. 1996)(finding the district court did not abuse its discretion when it admitted evidence about an event over one year after a defendant's arrest); United States v. Bonnett, 877 F.2d 1450, 1461 (10th Cir. 1989)(holding that evidence about events over a year after the charged conduct was not "too remote in time and unrelated to the transactions with which he was charged"). This similarity may be shown through "physical similarity of the acts or through the 'defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic offense and charged offenses.'" United States v. Queen, 132 F.3d 991, 996 (4th Cir. 1997)(quoting United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978)). See United States v. Bonnett, 877 F.2d at 1461 ("The closeness in time and the similarity in conduct [are] matters left to the trial court, and [its] decision will not be reversed absent a showing of abuse of discretion."). The more similar the act or state of mind, the more relevant the evidence becomes. See United States v. Queen, 132 F.3d at 996. Moreover, when establishing probative value, although the uncharged crime must be similar to the charged offense if it is unrelated to the charged offense, it need not be identical. See United States v. Gutierrez, 696 F.2d 753, 755 (10th Cir. 1982).

## LAW REGARDING STANDARD OPERATING PROCEDURES

In Whren v. United States, 517 U.S. 806 (1996), the Supreme Court of the United States examined the application of SOPs in traffic-stop cases to determine whether an officer made a pretextual stop. See 517 U.S. at 813-14. In concluding that the Fourth Amendment to the

Constitution of the United States of America's reasonableness requirement "allows certain actions to be taken in certain circumstances," despite the police officer's subjective intent, the Supreme Court stated:

> Indeed, it seems to us somewhat easier to figure out the intent of an individual officer than to plumb the collective consciousness of law enforcement in order to determine whether a "reasonable officer" would have moved to act upon a traffic violation. While police manuals and standard procedures may sometimes provide objective assistance, ordinarily one would be reduced to speculating about the hypothetical reaction of a hypothetical constable -- an exercise that might be called virtual subjectivity.
>
> Moreover, police enforcement practices, even if they could be practicably assessed by a judge, vary from place to place and time to time. We cannot accept that the search and seizure protections of the Fourth Amendment are so variable and can be turned upon trivialities.

517 U.S. at 815 (citations omitted).

The Supreme Court has additionally stated that "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provisions." Davis v. Scherer, 468 U.S. 183, 194 (1984)(footnote omitted). Consistent with other United States Courts of Appeals, the Tenth Circuit has held that the violation of a state law or of an SOP will not turn an otherwise constitutional use of force into a constitutional violation. See Tanberg v. Sholtis, 401 F.3d 1151, 1167 (10th Cir. 2005)("Even if [the defendant officer] violated the SOPs, this violation would not create a violation of a clearly established constitutional right ex nihilo."); Medina v. Cram, 252 F.3d at 1133 (excluding expert affidavit which stated that the "officers' use of force did not conform with accepted police guidelines and practices," because "claims based on violations of state law and police procedure are not actionable under § 1983"); Romero v. Bd. of Cnty. Comm'rs, 60 F.3d 702, 704 (10th Cir. 1995)("[V]iolations of state law and police procedure generally do not give rise to a § 1983 claim.")(citations omitted). See also Greenridge v. Ruffin, 927 F.2d

789, 792 (4th Cir. 1991)(upholding district court's decision to exclude evidence of officer's failure to follow standard arrest procedures, because it was not relevant to whether the officer acted reasonably); Diaz v. Salazar, 924 F. Supp. 1088, 1097 (D.N.M. 1996)(Hansen, J.)("The fact that their conduct may not have conformed with police regulations or training does not operate to create constitutional liability under Section 1983.").

The clearly established law also does not permit introduction of evidence that officers violated SOPs to establish a constitutional violation. See, e.g., Tanberg v. Sholtis, 401 F.3d at 1167-68. Clearly established law requires the exclusion of any evidence regarding the violation of SOPs, because such evidence is irrelevant to the Fourth-Amendment inquiry. See Tanberg v. Sholtis, 401 F.3d at 1168. In Tanberg v. Sholtis, the Tenth Circuit, in an opinion that the Honorable Michael W. McConnell, United States Circuit Judge for the Tenth Circuit, authored, and Judges Lucero and Anderson joined, discussed the propriety of admitting SOPs as evidence of a constitutional violation in an excessive-force and an assault-and-battery case. See 401 F.3d at 1167-68. The Tenth Circuit held that the proffered SOP was irrelevant to the issues in the case:

> In the exclusionary rule context, the Supreme Court has rejected the use of local police regulations as a standard for evaluating constitutionality of police conduct, on the ground that such a "basis of invalidation would not apply in jurisdictions that had a different practice." Wren v. United States, 517 U.S. 806, 815 (1996). That logic would seem to apply equally to damage suits under § 1983. This Court has consistently held that the violation of police regulations is insufficient to ground a § 1983 action for excessive force. Marquez v. City of Albuquerque, 399 F.3d 1216 (10th Cir. 2005); Medina[ v. Cram], 252 F.3d at 1133; Romero v. Board of County Com'rs of County of lake, State of Colo., 60 F.3d 702, 705 (10th Cir. 1995); Wilson v. Meeks, 52 F.3d 1547, 1554 (10th Cir. 1995). The plaintiffs in Romero argued that a police officer had contributed to the dangerous situation which led to his use of force, making him liable for the use of force his own actions helped make necessary. 60 F.3d at 704. The Romero plaintiffs supported their theory with evidence that the police officer's failure to handcuff the arrestee early in their encounter violated police regulations, and contended on appeal that this evidence should have precluded the trial court's grant of summary judgment.

Id.  We affirmed the trial court's ruling, holding that the police officer's failure to handcuff the arrestee was not relevant to the § 1983 inquiry and "did not become relevant simply because such actions may be required by state law and police procedures."  Id.  That an arrest violated police department procedures does not make it more or less likely that the arrest implicates the Fourth Amendment, and evidence of the violation is therefore irrelevant.  If [the defendant] violated the SOP governing the use of force in effecting arrest, that fact might well be pertinent to the Albuquerque Police Department's future decisions to promote, retain, or discipline him; it is not relevant to determining if Plaintiff's arrest violated the reasonableness requirement of the Fourth Amendment.

Tanberg v. Sholtis, 401 F.3d at 1163-64 (alteration omitted).  The Tenth Circuit further explained:

Although plaintiffs frequently wish to use administrative standards, like the Albuquerque SOPs, to support constitutional damages claims, this could disserve the objective of protecting civil liberties.  Modern police departments are able -- and often willing -- to use administrative measures such as reprimands, salary adjustments, and promotions to encourage a high standard of public service, in excess of the federal constitutional minima.  If courts treated these administrative standards as evidence of constitutional violations in damages actions under § 1983, this would create a disincentive to adopt progressive standards.  Thus, we decline Plaintiffs' invitation here to use the Albuquerque Police Department's operating procedures as evidence of the constitutional standard.

Tanberg v. Sholtis, 401 F.3d at 1164.

In Medina v. Cram, the Tenth Circuit, in an opinion that the Honorable Deanell R. Tacha, then-Chief Judge of the Tenth Circuit, authored, and the Judges Seymour and Brorby joined, reviewed the relevance of SOPs to a Fourth Amendment excessive-force claim.  See 252 F.3d at 1133.  There, the police responded to a call regarding the plaintiff's refusal to return to jail on a bail bond violation and regarding the plaintiff's contention that he was armed.  See 252 F.3d at 1126.  After they arrived, the police tried to convince the plaintiff to leave his house peacefully.  See 252 F.3d at 1126.  Instead, the plaintiff told the officers that he needed more time, was suicidal, and was armed with a handgun.  See 252 F.3d at 1126.  Ultimately, the plaintiff "emerged from the house with his left hand in a cup and his right hand wrapped in a

towel concealing a staple gun, which [the plaintiff] intended as a representation of a weapon." Id. at 1126.  Although ordered to stop, the plaintiff walked toward and onto the street.  See id. at 1126.  The officers used bean-bag rounds, which did not stop the plaintiff's movement.  See id. at 1126.  After the bean-bag rounds failed to stop the plaintiff, "an officer released an attack dog, which bit him and released, returning to the officer."  Id. at 1126.  The "attack dog was released a second time," causing the plaintiff to drop to the ground and expose the staple gun. Id. at 1126.  As he dropped to the ground, the plaintiff pointed the staple gun in the other officers' direction.  See id. at 1126.  Two officers shot Medina five times.  See id. at 1126.

In response to the officers' assertion of qualified immunity, Medina submitted an affidavit of an expert, who opined that the officers' use of force did not conform with accepted police guidelines and practices, and was therefore excessive.  See 252 F.3d at 1133.  The expert's affidavit did not persuade the Tenth Circuit:

> We have, of course, recognized that claims based on violations of state law and police procedure are not actionable under § 1983.  Romero, 60 F.3d at 705 (state law and police procedure); Wilson I, 52 F.3d at 1554 (police department regulation); see also Davis v. Scherer, 468 U.S. 183, 194-96 (1984)(rejecting the argument that § 1983 liability may be based solely on a violation of a state statute or regulation).

252 F.3d at 1133.

In the most recent cases in which the Court has addressed this issue, the Court has ruled that evidence regarding a violation of police procedures is not admissible in excessive force cases.  See Montoya v. Sheldon, No. CIV 10-0360 JB/WDS, 2012 WL 5476882, at *9-10 (D.N.M. Oct. 31, 2013)(Browning, J.)(excluding evidence that defendants violated SOPs, where plaintiffs sought to introduce the evidence for the "jury to put into context and fully understand the significance of the Defendants' actions in detaining, arresting, charging and prosecuting Plaintiffs"); Mata v. City of Farmington, 798 F. Supp. 2d 1215, 1219 (D.N.M. 2011)

(Browning, J.)(excluding, under rule 402 of the Federal Rules of Evidence, "evidence that the Defendant Officers did not follow SOPs and police training, because this evidence is not relevant"); Jonas v. Bd. of Comm'rs, 699 F. Supp. 2d 1284, 1299 (Browning, J.)("The clearly established law also does not permit a plaintiff to establish a constitutional violation with evidence that the officers violated SOPs and their training."); Vondrak v. City of Las Cruces, No. CIV 05-0172 JB/LAM, 2009 WL 3241555, at *14 (D.N.M. Aug. 25, 2009) (Browning, J.)(concluding that "expert testimony that refers to SOPs or other established law-enforcement standards" was inadmissible under Tenth Circuit precedent); Chamberlin v. City of Albuquerque, No. CIV 02-0603 JB/ACT, 2005 WL 2313527, at *4 (D.N.M. July 31, 2005)(Browning, J.)("[U]nder United States v. Marquez and Tanberg v. Sholtis, evidence of the SOPs is irrelevant to whether [the defendant officer] acted objectively reasonably.").

In Chamberlin v. City of Albuquerque, the primary issue was whether the Court should allow the plaintiff to introduce evidence of the Albuquerque Police Department's SOPs. See 2005 WL 2313527, at *1. Because of Tanberg v. Sholtis and Marquez v. City of Albuquerque, the Court granted the defendant police officer's motion in limine to exclude all evidence and testimony concerning the SOPs. See 2005 WL 2313527, at *4. The Court acknowledged that, although both Tanberg v. Sholtis and Marquez v. City of Albuquerque were distinguishable, because the SOPs which the plaintiff sought to introduce were different, and because there was no suggestion that the plaintiff also sought to introduce testimony whether the police department disciplined the defendant police officer for violating any SOP, the language of Tanberg v. Sholtis was sufficiently broad and sweeping to encompass the SOPs at issue. See Chamberlin v. City of Albuquerque, 2005 WL 2313527, at *4. The Court concluded that, under Marquez v. City of

<u>Albuquerque</u> and <u>Tanberg v. Sholtis</u>, evidence of the SOPs was irrelevant to whether the defendant police officer acted objectively reasonably.  <u>See</u> 2005 WL 2313527, at *2-3.[4]

---

[4]The Court has indicated its disagreement with the Tenth Circuit's exclusion of SOPs in the excessive force context.

> Coming from a civil background, the Court often saw that, when a plaintiff sued a corporation, a plaintiff would seek the defendant corporation's standard procedures, to show that the corporation acted unreasonably by not even complying with its own rules.  As the Tenth Circuit has stated:
>
>> Although a company's internal policies do not alter the applicable standard of care, they are admissible to show negligence, even if the policies demand a higher standard of care than the applicable law.  We have permitted admission of such policies when the jury is instructed that they are not admitted as legal standards of duty, but as evidence of the measure of caution that ought to be exercised in the situations to which they apply.
>
> <u>Therrien v. Target Corp.</u>, 617 F.3d 1242, 1256 (10th Cir. 2010)(internal quotations and citations omitted). <u>See LaVine v. Clear Creek Skiing Corp.</u>, 557 F.2d 730,733 (10th Cir. 1977)(recognizing "the principle that a regulation setting forth a standard is considered to be proper evidence . . .  [And] that evidence of customary conduct is normally relevant and admissible.")(citing Prosser, <u>Law of Torts</u> 166 (1971); <u>Restatement (Second) of Torts</u> § 295A, cmt. b ("Any such custom of the community in general, or of other persons under like circumstances, is always a factor to be taken into account in determining whether the actor has been negligent.")).  Nevertheless, the Tenth Circuit law has taken a repeatedly narrow view of the relevance of SOP evidence in the Fourth-Amendment arena, and the Court has had to conform its opinions and rulings accordingly.

<u>Montoya v. Sheldon</u>, 2012 WL 5476882, at *14 (alterations in <u>Montoya v. Sheldon</u> but not in source).

> On a clean slate, the Court would still probably be where it was when it decided <u>Taylor v. Hudson</u>[, No. CIV 02-0775 JB/RHS, 2003 U.S. Dist. LEXIS 26736 (D.N.M. Nov. 21, 2003)(Browning, J.)].  Juries are smart and can use SOPs for all sorts of purposes other than equating a violation of a SOP with a violation of the Constitution.  The Court had experience with products liability before taking the bench, and it was routine to use SOPs and guidelines for a comparison.  They inform reasonableness, even if they do not define reasonableness.  The Tenth Circuit has not thought SOPs can serve this useful purpose in excessive-force cases.  If the Court were to allows SOPs in to test credibility, that rationale could be used to justify SOPs coming in in every

## LAW REGARDING TRAINING MATERIALS

"[T]he Tenth Circuit appears to have drawn a distinction between SOPs and training [materials]." Montoya v. Sheldon, 2012 WL 5476882, at *13. In the only published Tenth Circuit opinion analyzing whether training materials are admissible as evidence of reasonableness in a Fourth Amendment excessive force case, the Tenth Circuit held that the training materials were admissible, stating that "the reasonableness of an officer's actions must be assessed in light of the officer's training." Weigel v. Broad, 544 F.3d 1143, 1155 (10th Cir.

---

excessive-force case. They could have been added in Tanberg v. Sholtis and Marquez v. City of Albuquerque to test the officer's credibility, but the Tenth Circuit did not allow them in for any purpose.

Solis-Marrufo v. Bd. of Comm'rs, No. CIV 11-0107 JB/KBM, 2013 WL 1658278, at *20 (D.N.M. Mar. 29, 2013)(Browning, J.).

> The Court can imagine many sound arguments to support the proposition that accepted practices, or well-established practices, if not SOPs, should be considered at least relevant to an inquiry into what a reasonable officer would do. In fact, the Court wonders how the proposition that "violation of such standards is not *ipso facto* a Fourth Amendment violation" renders any reference to such standards in a reasonable-officer inquiry totally irrelevant. The most the proposition appears to establish is that an officer may fall below well established practices without violating the Constitution. Presumably, officers are trained and have developed established practices as a means of preventing improper conduct, including conduct that might result in excessive force, illegal searches and seizures, or other civil-rights violations. Because established practices are, perhaps, more protective of arrestee's rights arguably does not mean they are irrelevant to a Fourth Amendment inquiry. Even so, the Court does not believe it has the liberty to allow such testimony in light of Tenth Circuit law. The Court will accordingly prohibit any testimony that is framed up in reference to "national" or "well-established" practices.

Vondrak v. City of Las Cruces, 2009 WL 3241555, at *17. If the Court had a clean slate, it would permit evidence of SOPs in the Fourth Amendment context. The Court, however, does not have such a slate and will faithfully follow Tenth Circuit precedent.

2008).  In <u>Weigel v. Broad</u>, the Tenth Circuit, in an opinion that Judge Seymour authored,[5] reversed and remanded the district court's granting of summary judgment in favor of the defendant police officers.  <u>See</u> 544 F.3d at 1155.  The Tenth Circuit held that an issue of fact existed whether the officers used excessive force in causing the plaintiff's asphyxiation.  <u>See</u> 544 F.3d at 1147.  In reviewing the facts, the Tenth Circuit stated that "[t]he risk of such asphyxiation should have been familiar to [the] Troopers," and noted that, "[d]uring the troopers use-of-force training at the Wyoming Law Enforcement Academy (WLEA), they were provided with extensive written materials, oral lectures, and audiovisual presentations regarding the dangers of Sudden Custody Death Syndrome and positional asphyxiation."  544 F.3d at 1150.

Regarding whether the officers acted reasonably in arresting the plaintiff, the Tenth Circuit held that there were factual issues regarding the police officers' reasonableness, based, in part, on information included in training materials:

> First, there is evidence a reasonable officer would have known that the pressure placed on Mr. Weigel's upper back as he lay on his stomach created a significant risk of asphyxiation and death.  His apparent intoxication, bizarre behavior, and vigorous struggle made him a strong candidate for positional asphyxiation.  And WLEA training materials made clear that the pressure applied to Mr. Weigel's upper torso would suffice to cause his suffocation.

544 F.3d at 1152 (citing <u>Cruz v. City of Laramie</u>, 239 F.3d 1183, 1188-89 (10th Cir. 2001))(citations omitted).  In discussing whether the law was clearly established that a

---

[5]The Honorable Harris L. Hartz, United States Circuit Judge for the Tenth Circuit, concurred with Judge Seymour's opinion in all respects except on one point.  <u>See</u> <u>Weigel v. Broad</u>, 544 F.3d at 1155 (Hartz, J., concurring).  Judge Hartz opined that the officers did not violate the plaintiff's constitutional rights by merely applying pressure to his upper back, but that they may have violated his rights when they bound the plaintiff's feet and continued to apply pressure to his upper back.  <u>See</u> 544 F.3d at 155 (Hartz, J.).

The Honorable Terrence L. O'Brien, United States Circuit Judge for the Tenth Circuit, dissented "from all aspects of the majority opinion," concluding that the defendant officers did not violate the plaintiff's constitutional rights, and that any violation was not of a clearly established right.  <u>Weigel v. Broad</u>, 544 F.3d at 1156 (O'Brien, J., dissenting).

police officer conducting an arrest must be cognizant of possible asphyxiation, the Tenth Circuit reasoned that the training materials showed that the law was clearly established, because the Tenth Circuit's opinion in Cruz v. City of Laramie "was apparently the reason for the extensive WLEA training on positional asphyxia." Weigel v. Broad, 544 F.3d at 1154. The Tenth Circuit, thus, concluded:

> If Cruz[ v. City of Laramie] had not been handed down, perhaps Wyoming troopers would not have received training on positional asphyxia and would be uninformed about the danger. But the reasonableness of an officer's actions must be assessed in light of the officer's knowledge. The defendants' training informed them that the force they used upon Mr. Weigel produced a substantial risk of death. Because it is clearly established law that deadly force cannot be used when it is unnecessary to restrain a suspect or secure the safety of officers, the public, or the suspect himself, the defendants' unnecessary use of deadly force violated clearly established law.

Weigel v. Broad, 544 F.3d at 1155.

In a prior unpublished opinion, the Tenth Circuit prohibited the admissibility of training materials in an excessive force case. See Giannetti v. City of Stillwater, 216 F. App'x 756, 766 (10th Cir. Feb. 12, 2007)(unpublished). In Giannetti v. City of Stillwater, the Tenth Circuit, in an opinion that the Honorable Robert H. Henry, United States Circuit Judge for the Tenth Circuit, authored, and the Honorable Mary B. Briscoe, United States Circuit Judge for the Tenth Circuit, and the Honorable Julie A. Robinson, United States District Judge for the District of Kansas, sitting by designation, joined, held that Tanberg v. Sholtis precludes a plaintiff from introducing evidence of police department training materials as evidence of an officer's reasonableness. See 216 F. App'x at 766.

> Mr. Giannetti also relies upon the training materials at the Stillwater police department as further evidence of the officers' unreasonable response. However, our broad ruling in Tanberg v. Sholtis, 401 F.3d 1151 (10th Cir. 2005), forecloses this argument. In Tanberg, we held that the fact "[t]hat an arrest violated police department procedures does not make it more or less likely that the arrest implicates the Fourth Amendment, and evidence of the violation is therefore

irrelevant." <u>Id.</u> at 1163-64 (emphasis added). "If [the officers] violated the [department procedures] governing the use of force in effecting arrest, that fact might well be pertinent to the [Stillwater police department's] future decisions to promote, retain, or discipline [them]; it is not relevant to determining if [Ms. Giannetti's] arrest violated the reasonableness requirement of the Fourth Amendment." <u>Id.</u> at 1164; <u>see also</u> <u>Groh v. Ramirez</u>, 540 U.S. 551, 564 n.7, . . . (2004)(noting that, standing alone, an official is not "deprived of qualified immunity whenever he violates an internal guideline").

<u>Giannetti v. City of Stillwater</u>, 216 F. App'x at 766 (brackets in <u>Giannetti v. City of Stillwater</u> but not in source).

In his dissenting opinion in <u>Weigel v. Broad</u>, Judge O'Brien argued that training materials are irrelevant whether an officer's actions are reasonable under the Fourth Amendment, relying in part on <u>Tanberg v. Sholtis</u>. <u>See</u> 544 F.3d at 1167 (O'Brien, J., dissenting).

I disagree that training has any relevancy in the qualified immunity analysis. <u>See</u>, <u>e.g.</u>, <u>Davis v. Scherer</u>, 468 U.S. 183, 194 & n.12 . . . (1984)("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision . . . unless that statute or regulation provides the basis for the provision sued upon."); <u>Tanberg v. Sholtis</u>, 401 F.3d 1151, 1159-60 (10th Cir. 2005)("Even if it were clear that Officer Sholtis had violated the [Albuquerque Police Department standard operating procedures], that violation would not transform an arrest supported by probable cause into an unconstitutional seizure."); <u>Herring v. Keenan</u>, 218 F.3d 1171, 1180 (10th Cir. 2000)("[W]ithout a stronger indication from the courts that a reasonable probation officer in Keenan's position would have known that she was violating Herring's constitutional rights by disclosing his HIV status, rather than simply violating an internal policy, we cannot say that Keenan violated Herring's clearly established constitutional right to privacy.").

544 F.3d at 1167 n.19 (O'Brien, J., dissenting). Judge O'Brien concluded that an officer's training is largely irrelevant, because either it restates the clearly established law or it prescribes best practices beyond that which the law requires:

At a minimum, instruction regarding behavioral standards imposed upon the police by a court decision in the relevant jurisdiction would be required because that is, by definition, clearly established law. Beyond that, training might include instruction on procedures or best practices, seeking to impart skills and guidelines useful to officers in effectively and safely performing their duties. The training

may well reflect value judgments about matters beyond what established law requires. But the law dictates officer training, not the other way around.

544 F.3d at 1173 (O'Brien, J., dissenting). Judge O'Brien, thus, concluded that "an officer's training (beyond explaining clearly established law) is irrelevant to the analysis." 544 F.3d at 1173-74 (O'Brien, J., dissenting).

In the majority opinion, Judge Seymour never distinguishes, overrules, or cites Tanberg v. Sholtis or Giannetti v. City of Stillwater. See Weigel v. Broad, 544 F.3d at 1143-55. See also Montoya v. Sheldon, 2012 WL 5476882, at *12. Weigel v. Broad, however, is a published opinion and Giannetti v. City of Stillwater is unpublished; thus, the holding in Weigel v. Broad is binding on the Court. See 10th Cir. R. App. P. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their precedential value."); United States v. Lyons, 510 F.3d at 1233 n.2 ("Unpublished opinions are not binding precedent . . . We mention [an unpublished opinion] as we would an opinion from another circuit, persuasive because of its reasoned analysis."); Montoya v. Sheldon, 2012 WL 5476882, at *13 ("Weigel v. Broad is a published opinion, however, and binding upon the Court at least to the extent of the holding.").[6] Moreover, the Tenth Circuit recently reaffirmed the holding in Weigel v. Broad by considering a police

---

[6]This Court has previously criticized any distinction between SOPs and training material.

The Court cannot find a logically sound reason to distinguish between SOPs and training. Both, the Court believes, are designed and used as guidelines to instruct officers what conduct is reasonable under given circumstances. Logically, if training "duplicates the reasonableness standard that governs claims of excessive force under . . . the Fourth Amendment," Tanberg v. Sholtis, 401 F.3d at 1163, it should be excluded, as the Tenth Circuit held in Gianetti v. City of Stillwater.

Montoya v. Sheldon, 2012 WL 5476882, at *14. Both Tanberg v. Sholtis and Weigel v. Broad are, however, published opinions and their holdings are clear; the Court will thus follow the law and permit the admission of training materials despite the prohibition against SOPs. See Kerns v. Bd. of Comm'rs, 888 F. Supp. 2d 1176, 1227 (D.N.M. 2012)(Browning, J.)("The Court must faithfully follow the Tenth Circuit's decision and judgment.").

officer's training to determine the reasonableness of the amount of force that the officer used. See Estate of Booker v. Gomez, 745 F.3d 405, 425 (10th Cir. 2014)(citing Weigel v. Broad, 544 F.3d at 1155). Finally, the Court has always disagreed with Judge McConnell's bright-line-rule on SOPs in Tanberg v. Sholtis and the Tenth Circuit's reference to the rule in Marquez v. City of Albuquerque. See Vondrak v. City of Las Cruces, 2009 WL 3241555 at *17 (noting that SOPs and established police practices are relevant "to a Fourth Amendment inquiry," but noting that it does not have "the liberty to allow such testimony in light of Tenth Circuit law"). The Court is reluctant to extend that rule to training materials, and finds the Tenth Circuit's analysis in Weigel v. Broad more persuasive than the unpublished opinion of Giannetti v. City of Stillwater.

## ANALYSIS

The Court will overrule the Objections in part and sustain them in part. Some of the United States' requested instructions deviate significantly from the Tenth Circuit's pattern jury instructions or may potentially mislead the jury. The Court will thus sustain Rodella's objections to these instructions and will not include them in the Court's final jury instructions. Other instructions accurately state the law and are not misleading; the Court will overrule Rodella's objections to these instructions and will include them in the Court's final jury instructions.

## I.    THE COURT WILL SUSTAIN THE OBJECTION TO THE UNITED STATES' REQUESTED INSTRUCTION NUMBER 1.

The Court will not include the United States' Requested Instruction Number 1 in the Court's final jury instructions. This instruction concerns evidence related to a person's character or reputation for truthfulness. See U.S. Instructions at 3. Rodella argues that this instruction is not applicable in this case, unless evidence concerning a witness' character or reputation for truthfulness is first introduced at trial. See Objections at 1. The Court agrees. Currently, there is no indication that either side intends to offer testimony concerning another witness' character or

reputation for truthfulness.  As such, this instruction is irrelevant.  The Court will sustain

Rodella's objection, but, as Rodella has indicated, if testimony concerning another witness'

character or reputation for truthfulness is introduced at trial, the Court will include this, or a

similar, instruction in the final jury instructions.

## II.     THE COURT WILL OVERRULE RODELLA'S OBJECTION TO THE UNITED STATES' REQUESTED INSTRUCTION NUMBER 2.

The Court will include the United States' Requested Instruction Number 2.  This

instruction concerns the introduction of evidence of other bad acts.  See U.S. Instructions at 4.

Rodella objects to this instruction by arguing that it is not relevant and that it is prejudicial if no

evidence of other bad acts is introduced at trial.  See Objections at 1.  He states that this

instruction "should not be given unless the evidence at trial in this matter warrants their

inclusion."  Objections at 1.  The Court will overrule this objection.

The United States moved to introduce evidence of other bad acts pursuant to rule 404(b)

of the Federal Rules of Evidence.  See 404(b) Motion at 1.  The Court granted the United States'

404(b) Motion to introduce evidence of other acts.  See United States v. Rodella, 2014 WL

6911573, at *20.  In granting the 404(b) Motion, the Court stated the specific purposes for which

the jury may use the evidence of the other acts:

> (i)     Rodella's motive and intent for pursuing Tafoya was to express his road rage, punish disrespect, and force Tafoya to submit to his authority and not to enforce any traffic law.

> (ii)    Rodella had a plan to drive in a threatening manner towards other motorists, and if he succeeded in provoking any disrespectful act, force the motorist to submit through a display of his authority.  The traffic encounters are part of a common plan Rodella had to require the citizens of Rio Arriba to submit to his authority.

> (iii)   Rodella did not make a mistake or accidently forget that his identity was not apparent to all motorists when he pursued Tafoya in a private Jeep.

United States v. Rodella, 2014 WL 6911573, at *20.

Because the United States will introduce evidence of other bad acts at trial, the Court will include the United States' Requested Jury Instruction Number 2 and will overrule Rodella's objection. The Court will, however, modify the United States' requested instruction to reflect the specific purposes for which the jury may use the other-acts evidence.

### III. THE COURT WILL INCLUDE PART AND EXCLUDE PART OF THE UNITED STATES' REQUESTED JURY INSTRUCTION NUMBER 3.

The Court will include part and exclude part of the United States' Requested Jury Instruction Number 3. This instruction concerns evidence of SOPs, evidence of generally accepted police practices, and evidence of law enforcement training materials. See U.S. Instructions at 5. Rodella argues that the Court should exclude this instruction, because this evidence is not relevant and is inadmissible at trial. See Objections at 1-2. The Court will omit the portions of the instruction concerning SOPs and generally accepted police practices, but will leave in the rest of the instruction concerning training materials.

The United States moved for the Court to permit it to introduce at trial evidence of Rio Arriba Sheriff Department's SOPs and of Rodella's training materials. See United States Motion *In Limine* to Permit Evidence of Rio Arriba County Sheriff Office Procedures as Part of the Training Materials, filed September 9, 2014 (Doc. 45)("SOP Motion"). The Court granted the SOP Motion and permitted the United States to introduce evidence of training materials that Rodella has received. See United States v. Rodella, No. CR 14-2783 JB, 2014 WL 6634391, at *17 (D.N.M. Nov. 20, 2014)(Browning, J.). The Court also permitted the United States to introduce evidence of SOPs, but only if the United States could first show that the SOPs were used as training materials. See United States v. Rodella, 2014 WL 6634391, at *17. The United States also provided the Court with notice that it intended to introduce expert testimony of

nationally accepted police practices through Manual T. Overby's testimony. See United States' Notice of Intention to Offer Expert Testimony, filed August 27, 2014 (Doc. 34). Rodella objected to Mr. Overby's testimony. See Defendant's Motion to Strike Expert Testimony of Manuel T. Overby, filed September 9, 2014 (Doc. 50)("Motion to Strike"). The Court granted the Motion to Strike in part by prohibiting Mr. Overby from testifying about nationally accepted police practices. United States v. Rodella, No. CR 14-2783 JB, 2014 WL 6634310, at *34 (D.N.M. Nov. 19, 2014)(Browning, J.).

Because the Court will permit evidence of training materials, but will prohibit evidence of SOPs -- unless they are used as training materials -- and evidence of nationally accepted police practices, the Court will exclude some of the United States' Requested Jury Instruction Number 3. The Court will include in its final instructions the portions of the requests instruction that concern training materials. The Court will, however, exclude the portions of the requested instruction that concern SOPs and nationally accepted police practices. Accordingly, Rodella's objection is sustained in part and overruled in part.

## IV. THE COURT WILL EXCLUDE THE UNITED STATES' REQUESTED JURY INSTRUCTION NUMBER 4.

The Court will exclude the United States' Requested Jury Instruction Number 4. Rodella argues that this instruction is not an accurate statement of law and that it strays from the Tenth Circuit Pattern Jury Instructions Criminal No. 2.17, at 103-04 (2011). See Objections at 2. The Court agrees. This instruction strays from the pattern jury instructions. First, the United States' requested instruction is not a completely accurate description of the charged offense. The requested instruction states that the jury must find that "Rodella deprived M.T. of his rights to be free from unreasonable seizure by a law enforcement officer." U.S. Instructions at 6. Rodella requests that the Court's jury instructions state: "Mr. Rodella deprived Michael Tafoya of his

right to be free from excessive force and unlawful arrest." Rodella's Instructions at 2. The Indictment alleges that Rodella subjected Tafoya "to unreasonable seizure by a law enforcement officer" and "used unreasonable force." Indictment at 1. Rodella is charged with both unreasonably seizing Tafoya and using excessive force. See Indictment at 1. Rodella's requested instruction of "excessive force and unlawful arrest" is, thus, a more accurate description of the Indictment.

The United States' requested instruction also varies substantially from the Tenth Circuit's pattern jury instructions. The Tenth Circuit pattern jury instructions partially define the term willfully after listing it as an element of the offense and then define key terms within the same instruction that lists the elements of the offense. See Tenth Circuit Pattern Jury Instructions Criminal No. 2.17, at 103 (2011). The United States' requested instruction merely states that "the defendant acted willfully," without defining the term "willfully" in the same instruction. U.S. Instructions at 6. Rodella's Proposed Jury Instruction No. 1 models the Tenth Circuit pattern jury instruction. See Rodella's Instructions at 2. To more accurately reflect the pattern jury instructions, the Court will use Rodella's requested instruction, rather than the United States'.

Finally, the United States' requested instruction includes only three elements. See U.S. Instructions at 6. Rodella's requested instruction contains as fourth element: "Mr. Rodella caused Michael Tafoya to suffer bodily injury." Rodella's Instructions at 2. In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. 18 U.S.C. § 242 states that if a person, under the color of law, "willfully subjects any person in

any state . . . to the deprivation of any rights . . . secured or protected by the constitution," he or she "shall be fined under this title or imprisoned not more than one year, or both."  18 U.S.C. § 242.  Section 242 states that, "if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon,"  the defendant "shall be fined under this title or imprisoned not more than ten years, or both."  18 U.S.C. § 242.  The Indictment alleges that Rodella's "offense resulted in bodily injury to M.T. and included the use and threatened use of a dangerous weapon."  Indictment at 1. Because a bodily injury, and the use or threatened use of a dangerous weapon, increase the statutory maximum sentence from one year to ten years, see 18 U.S.C. § 242, a jury needs to find both beyond a reasonable doubt, see Apprendi v. New Jersey, 530 U.S. at 490.  The United States' requested instruction does not ask the jury to find beyond a reasonable doubt that Tafoya suffered a bodily injury, or that Rodella used or threatened to use a firearm.  See U.S. Instructions at 6.  The instruction is thus insufficient.  Accordingly, the Court will sustain Rodella's objection and will not include the United States' Requested Instruction Number 4 in its final jury instructions.

## V.     THE COURT WILL EXCLUDE THE UNITED STATES' REQUESTED JURY INSTRUCTION NUMBER 5.

The Court will exclude the United States' Requested Jury Instruction Number 5.  This instruction defines the term under color of law.  See U.S. Instructions at 7.  Rodella argues that, because he does not dispute that he was acting under color of law, a separate instruction is unnecessary.  See Objections at 2.  The Court agrees.  Rather than providing a separate instruction on color of law, the Court will include the definition of color of law in its instruction stating the elements for Count 1 -- the § 242 violation.  The Tenth Circuit pattern jury instructions do not include a separate instruction to define the term "color of law," but instead

define it immediately after listing the elements of the offense. Tenth Circuit Pattern Jury Instructions Criminal No. 2.17, at 103. The Court will follow the pattern jury instructions guidance and define color of law in the same instruction as the elements of the offense are listed. By including the definition in a separate instruction, the Court may unnecessarily draw the jury's attention to the color-of-law element when Rodella does not contest that element. Consequently, Rodella's objection is sustained, and the Court will not include the United States' Requested Instruction Number 5 in its final jury instructions.

## VI. THE COURT WILL SUSTAIN RODELLA'S OBJECTION TO PORTIONS OF THE UNITED STATES' REQUESTED JURY INSTRUCTION NUMBER 6.

The Court will exclude portions of the United States' Requested Jury Instruction Number 6. Rodella objects to three specific sentences in this instruction. See Objections at 2-3. They are: "Retribution, retaliation, and deterrence are not legitimate law enforcement purposes. Thus, you may find that force which was for the purpose of retribution, retaliation, or deterrence was unreasonable. Drawing a firearm or brandishing a firearm toward a citizen may constitute unreasonable force even though no physical injury is inflicted." U.S. Instructions at 9. Rodella argues that, because there are no allegations of retribution, retaliation, or deterrence, this instruction is unnecessary. See Objections at 2-3. Additionally, he argues that the statement that drawing or brandishing a firearm may constitute excessive force even if there is no injury is an incorrect statement of law. See Objections at 3. The Court will exclude these three sentences, because there is no evidence of retribution, retaliation, or deterrence, and because the Court does not want to improperly influence the jury in making its decision.

First, the retribution, retaliation, and deterrence instruction is unnecessary, because the United States does not allege that Rodella acted with any of these unlawful motives. As such, this instruction is unnecessary and may confuse the jury. Without evidence of retribution,

retaliation, or deterrence, the jury will be left wondering what it is to do with this instruction, and may wonder if it missed a piece of evidence concerning these motives, or if it is meant to infer these motives from the evidence presented at trial. This instruction may, thus, improperly influence the jury. Accordingly, the Court will thus exclude the two sentences concerning retribution, retaliation, and deterrence.

Second, the drawing or brandishing a firearm instruction may improperly influence the jury. Rodella argues that the United States' requested instruction is an incorrect statement of law. Rodella is mistaken. Merely pointing a firearm at a person may constitute excessive force, even in the absence of a physical injury. See Robinson v. Solano Cnty., 278 F.3d 1007, (9th Cir. 2002)(stating that "[w]e agree with the Fifth Circuit that '[a] police officer who terrorizes a civilian by brandishing a cocked gun in front of that civilian's face may not cause *physical* injury, but he has certainly laid the building blocks for'" an excessive force claim (alterations in Robinson v. Solano County but not in source)(emphasis in original)(quoting Petta v. Rivera, 143 F.3d 895, 905 (5th Cir. 1998)). The United States' requested instruction that "[d]rawing a firearm or brandishing a firearm toward a citizen may constitute unreasonable force even though no physical injury is inflicted" is an accurate statement of law. U.S. Instructions at 9. The instruction may, however, improperly influence the jury. By drawing the jury's attention to the fact that the use of a firearm in the absence of an injury may constitute excessive force, the jury may infer that the Court is signaling for the jury to find Rodella guilty merely by the fact that he used a firearm. This instruction may result in the Court improperly putting its thumb on the scales of the evidence and leaning the jury towards a guilty finding.

Rather, the Court believes that the factors identified in the Fifth Circuit pattern jury instructions on excessive force provide a fairer standard from which the jury can evaluate the

reasonableness of Rodella's actions in determining whether he used excessive force. <u>See</u> Fifth Circuit Pattern Jury Instructions (Civil Cases) No. 1.01, at 89 (2014). The Court has previously used these factors in 42 U.S.C. § 1983 excessive force cases. <u>See</u> <u>Ysasi v. Brown</u>, No. CIV 13-0183 JB/CG, Court's Final Jury Instructions (with citations) at 17-18, filed February 19, 2014 (Doc. 85). Rodella's requested instructions also contain similar factors taken from the Fifth Circuit's pattern jury instructions. <u>See</u> Rodella's Instructions at 6.

> Some of the things you may want to consider in determining whether Mr. Rodella used excessive force are (1) the extent of the injury suffered, (2) the need for the application of force, (3) the relationship between the need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response.

Rodella's Instructions at 6. These factors will allow the jury to gauge the reasonableness of Rodella's actions and the amount of force used without influencing the jury into believing that, because Rodella used a firearm, he must have used excessive force. The Court will thus exclude this portion of the United States' requested instruction in its final jury instructions and will sustain Rodella's objection.

## VII. THE COURT WILL SUSTAIN RODELLA'S OBJECTION TO THE UNITED STATES' REQUESTED INSTRUCTION NUMBER 7.

The Court will exclude the United States' Requested Instruction Number 7. Rodella does not specifically object to this instruction, but instead, while discussing the United States' Requested Instructions 4 through 7, argues that they are not an accurate statement of law and that they stray from the Tenth Circuit's Pattern Jury Instructions. <u>See</u> Objections at 2. The Court agrees.

First, the structure of the United States' requested instruction varies significantly from the pattern jury instructions. The pattern jury instructions first list the elements for an 18 U.S.C. § 242 violation and then, immediately afterwards, define terms within those elements. <u>See</u> Tenth

Circuit Pattern Jury Instruction Criminal No. 2.17, at 103 (2011). The United States' requested instruction defines the term willfully in a separate instruction. The structure of the United States' requested instruction, thus, significantly strays from the pattern jury instruction's structure without any concomitant benefit.

Second, this instruction is repetitive with the Tenth Circuit Pattern Jury Instruction No. 1.07, which the Court regularly uses to define circumstantial evidence. The requested instruction states:

> Intent is a state of mind and can be proven by circumstantial evidence. Indeed, it can rarely be established by any other means. In determining whether the defendant acted with the required specific intent, you may consider all the circumstances of the case. In determining the issue of what a person intended at a particular time, you may consider any statements made or any acts done by that person and all other facts and circumstances received in evidence which may aid in your determination of that person's knowledge and intent.

U.S. Instructions at 11. The Tenth Circuit Pattern Jury Instruction No. 1.07 states:

> While you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in the light of common experience. An inference is a conclusion that reason and common sense may lead you to draw from facts which have been proved.
>
> By permitting such reasonable inferences, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in this case.

Tenth Circuit Pattern Jury Instructions Criminal No. 107, at 15 (2011). The Court will use the pattern instruction on circumstantial evidence; thus, the requested instruction's statement about circumstantial evidence is repetitive.

Third, the United States' requested instruction may lead to the Court improperly influencing the jury. By highlighting that intent is normally found solely by circumstantial evidence, and that the jury should consider a person's statements and acts in determining intent,

the jury may conclude that the Court is trying to tell it that a certain statement which Rodella

made or the circumstances will show it that Rodella acted willfully. The statement that "the

United States need not show that the acts of the defendant were premeditated or of long

duration" may also improperly influence the jury. U.S. Instructions at 12. The jury may see this

instruction as a signal to find that Rodella acted willfully, because the Court is telling it that the

length of time is irrelevant. Finally, the requested instruction states:

> You may infer that a person ordinarily intends all the natural and probable
> consequences of an act knowingly done. In other words, you may infer and find
> that the defendant intended all the consequences that a sheriff's department
> officer, standing in like circumstances and possessing like knowledge, should
> have expected to result from his acts knowingly done.

U.S. Instructions at 11. The jury may see this instruction as the Court telling it that it should

infer that Rodella intended the natural and probable consequences of his actions. To avoid

influencing the jury in determining Rodella's intent, the Court will exclude these instructions

from its final jury instructions.

Fourth, some of the United States' requested instruction is either irrelevant or an

inaccurate statement of law. The requested instruction states:

> If you find that the defendant knew what he was doing and that he intended the
> consequences of his acts, and if you find that what he did constituted a
> deprivation of a constitutional right, then you may conclude that the defendant
> acted with the specific intent to deprive the victim of that constitutional right.

U.S. Instructions at 12. This statement, however, misstates the willfulness requirement. The

Supreme Court has stated that, to act willfully for § 242 purposes, a defendant must "act in open

defiance or in reckless disregard of a constitutional requirement which has been made specific

and definite." Screws, 325 U.S. at 105. The Tenth Circuit has elaborated that "it [is] not

sufficient that the defendants may have had a general bad purpose; . . . it [is] necessary that they

have the actual purpose of depriving [the victim] of the constitutional rights enumerated in the

indictment . . . ." Apodaca v. United States, 188 F.2d at 937. The United States' requested instruction states that, if Rodella intended the consequences of his actions, and if he violated Tafoya's constitutional rights, the jury should find that he acted willfully. See U.S. Instructions at 12. This statement is contrary to the Supreme Court's and the Tenth Circuit's interpretation of the willfulness requirement. They require Rodella to "have the actual purpose of depriving" Tafoya of his constitutional rights. Apodaca v. United States, 188 F.2d at 937. It is not enough that Rodella intended to assault Tafoya or that he had "a general bad purpose" in assaulting Tafoya. Apodaca v. United States, 188 F.2d at 937. Rodella must have intended to disregard a specific and definite constitutional right. See Screws, 325 U.S. at 105. The United States' instruction lessens the requisite intent requirement by requiring the jury to find that Rodella merely intended the consequences of his actions. Accordingly, the requested instruction misstates the applicable law. The Court will thus not include the United States' Requested Instruction No. 7 in its final jury instructions.

## VIII.   THE COURT WILL NOT INCLUDE THE WORD "SIMPLY" IN DEFINING BODILY INJURY IN ITS FINAL JURY INSTRUCTIONS.

The Court will not include the term "simply" in defining bodily injury in its final jury instructions. The United States' Requested Instruction Number 8 states: "Bodily injury includes an injury to the body, such as a cut, abrasion, bruise, burn, or disfigurement or simply pain." U.S. Instructions at 14. Rodella argues that the word "simply" is an inaccurate statement of law and is highly prejudicial. Objections at 3-4. He contends that it would mislead the jury into believing that there is virtually no threshold to proving a bodily injury and it highlights physical pain as the sole requirement for finding a bodily injury. See Objections at 4.[7] The Court agrees.

---

[7]Rodella also objects to the United States' Requested Instructions No. 8 and 9, because they reference the United States' proposed verdict form, and he contends that the proposed jury

While physical pain may result in a bodily injury, see United States v. DiSantis, 565 F.3d 354, 362 (7th Cir. 2009)(holding that district court's jury instructions were not an incorrect statement of law when they stated that bodily injury for § 242 purposes may be found because of physical pain), by stating "simply pain," the requested instruction puts too much focus on pain and takes the focus away from other reasons why the jury may find a bodily injury.  The jury may see the word simply as a signal by the Court that Tafoya suffered pain and that the jury should find a bodily injury simply because of the pain.  The Court does not want to put its thumb on the scales and improperly influence the jury in making its decision.  Accordingly, the Court will not include the phrase "simply" pain in its final jury instructions.

## IX.    THE COURT WILL OVERRULE RODELLA'S OBJECTION TO THE UNITED STATES' REQUESTED INSTRUCTION NUMBER 10.

The Court will overrule Rodella's objection to the United States' Requested Instruction Number 10.  Rodella argues that this requested instruction is not an accurate statement of law and that it does not conform with the Tenth Circuit Pattern Jury Instruction Criminal No. 2.45, at 153-54 (2011).   See Objections at 4.   Specifically, Rodella argues that the requested instruction misstates the definition of brandishing, which, he contends, occurs when a person "acts with the intent to intimidate another person."  Objections at 4.  The Court will overrule this objection and will include the United States' Requested Instruction Number 10, or at least some version of it, in the Court's final jury instructions.

The United States' requested instruction is taken almost verbatim from the Tenth Circuit's pattern jury instructions.  The requested instruction states:

Mr. Rodella is charged in Count 2 with a violation of 18 U.S.C. § 924(c).

form does not correctly state the elements of the offenses.  See Objections at 3.  Because Rodella also separately objects to United States' proposed verdict form, see Objections at 4-5, the Court will consider these objections together.

This law makes it a crime to use or carry a firearm during and in relation to any crime of violence for which a person may be prosecuted in a court of the United States.

To find Mr. Rodella guilty of this crime you must be convinced that the United States has proved each of the following beyond a reasonable doubt:

First: Mr. Rodella committed the crime of deprivation of civil rights, as charged in Count 1 of the indictment. You are instructed that deprivation of civil rights is a crime of violence;

Second: Mr. Rodella used or carried a firearm and brandished that firearm;

Third: the use or carrying of the firearm was during and in relation to the crime of deprivation of civil rights;

The phrase "during and in relation to" means that the firearm played an integral part in the underlying crime, that it had a role in, facilitated (i.e., made easier), or had the potential of facilitating the underlying crime.

A defendant knowingly "uses" a firearm when it (1) is readily accessible and (2) is actively employed during and in relation to the underlying crime.

A defendant knowingly "carries" a firearm when he (1) possesses the firearm through the exercise of ownership or control and (2) transports or moves the firearm from one place to another.

A defendant knowingly "brandishes" a firearm when he displays all or part of the firearm, or otherwise makes the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person.

In determining whether Mr. Rodella knowingly used or carried and brandished a firearm during and in relation to the underlying crime, you may consider all of the facts received in evidence including the nature of the crime, the usefulness of a firearm to the crime, the extent to which a firearm actually was observed before, during and after the time of the crime, and any other facts that bear on the issue.

A firearm plays an integral part in the underlying crime when it furthers the purpose or effect of the crime and its presence or involvement is not the result of coincidence. The United States must prove a direct connection between Mr. Rodella's use or carrying of the firearm and the underlying crime but the crime need not be the sole reason Mr. Rodella used or carried the firearm.

The term "firearm" means any weapon that will or is designed to or may readily be converted to expel a projectile by the action of an explosive. The term "firearm" also includes the frame or receiver of any such weapon, or any firearm muffler or firearm silencer, or destructive device.

U.S. Instructions at 16-17. The Tenth Circuit Pattern Jury Instruction No. 2.45 states:

The defendant is charged in count _____ with a violation of 18 U.S.C. section 924(c)(1).

This law makes it a crime to [use] [carry] a firearm during and in relation to any [drug trafficking crime] [crime of violence] for which a person may be prosecuted in a court of the United States.

To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: the defendant committed the crime of [name of crime], [as charged in count _____ of the indictment.] You are instructed that [name of crime] is a [drug trafficking crime] [crime of violence];

*Second*: the defendant used or carried a firearm;

*Third*: during and in relation to [name of crime].

The phrase "during and in relation to" means that the firearm played an integral part in the underlying crime, that it had a role in, facilitated (i.e., made easier), or had the potential of facilitating the underlying crime.

A defendant knowingly "uses" a firearm when it (1) is readily accessible and (2) is actively employed during and in relation to the underlying crime.

A defendant knowingly "carries" a firearm when he (1) possesses the firearm through the exercise of ownership or control and (2) transports or moves the firearm from one place to another.

In determining whether the defendant knowingly [used] [carried] a firearm during and in relation to the underlying crime, you may consider all of the facts received in evidence including the nature of the crime, the usefulness of a firearm to the crime, the extent to which a firearm actually was observed before, during and after the time of the crime, and any other facts that bear on the issue.

A firearm plays an integral part in the underlying crime when it furthers the purpose or effect of the crime and its presence or involvement is not the result of coincidence. The government must prove a direct connection between the

defendant's [use] [carrying] of the firearm and the underlying crime but the crime need not be the sole reason the defendant [used] [carried] the firearm.

       The term "firearm" means any weapon that will or is designed to or may readily be converted to expel a projectile by the action of an explosive. The term "firearm" also includes the frame or receiver of any such weapon, or any firearm muffler or firearm silencer, or destructive device.

Tenth Circuit Pattern Jury Instructions Criminal No. 2.45, at 153-54 (2011).

The only true difference between the United States' requested instruction and the pattern jury instruction is the inclusion of the brandishing definition and the brandishing element. 18 U.S.C. § 924(c)(1)(A) states that if a person uses or carries a firearm during a crime of violence, they "must be sentenced to a term of imprisonment of not less than 5 years," but if he or she brandishes the firearm, the term of imprisonment is "not less than 7 years." 18 U.S.C. § 924(c)(1)(A). The United States has charged Rodella with brandishing a firearm. See Indictment at 1. They must, thus, prove that Rodella brandished a firearm. Consequently, while the pattern jury instructions do not include the term brandish in the elements, the United States' requested instruction includes the term to fit the facts of the case. This slight inconsistency does not render the requested instruction misleading; rather, it makes the instruction applicable to this case.

Additionally, the United States' definition of brandish is a correct statement of law. Section 924(c)(4) defines the term brandish:

For purposes of this subsection, the term 'brandish' means, with respect to a firearm, to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person.

18 U.S.C. § 924(c)(4). The United States' requested instruction contains an almost identical definition. See U.S. Instructions at 16 ("A defendant knowingly 'brandishes' a firearm when he displays all or part of the firearm, or otherwise makes the presence of the firearm known to

another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person."). Accordingly, the requested instruction's definition of brandish is a correct statement of law. Because the United States' Requested Instruction Number 10 is not misleading, is in accordance with the Tenth Circuit pattern jury instructions, and is a correct statement of law, the Court will include it, or a modified version of it, in the Court's final jury instructions and will overrule Rodella's objection.

**X. THE COURT WILL NOT USE THE UNITED STATES' PROPOSED JURY VERDICT FORM IN THE COURT'S FINAL JURY INSTRUCTIONS.**

The Court will exclude the United States' proposed jury verdict form from the Court's final jury instructions. Rodella objects to the proposed jury verdict form, because it does not accurately reflect the elements of the charged offense; it misstates the law; it does not require the jury to find whether Rodella violated Tafoya's civil rights, caused bodily injury, or used a firearm before finding whether Rodella is guilty of Count 1; and it permits the jury to find Rodella guilty of Count 2 without first finding him guilty of Count 1. See Objections at 4-5. The Court agrees. Rather than broadly requiring the jury to find Rodella guilty or not guilty of Count 1, the jury should first decide whether Rodella used excessive force and whether Rodella unlawfully arrested Tafoya. Then, the jury should determine if Tafoya suffered a bodily injury and if Rodella used a firearm. Furthermore, because Rodella cannot be convicted of Count 2 without first being convicted of the underlying crime of violence -- Count 1 -- the jury should find Rodella guilty of Count 1 before even considering Count 2, and, if the jury finds Rodella not guilty of Count 1, it should not decide whether Rodella is guilty of Count 2. Accordingly, the Court sustains this objection and will not include the United States' proposed jury verdict form in the Court's final jury instructions.

**IT IS ORDERED** that the Objections to United States' Requested Jury Instructions, filed

September 14, 2014 (Doc. 60), are sustained in part and overruled in part.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Damon P. Martinez
  United States Attorney
Tara C. Neda
Jeremy Peña
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Robert J. Gorence
Louren M. Oliveros
Gorence & Oliveros PC
Albuquerque, New Mexico

    *Attorneys for the Defendant*