IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CRIMINAL NO. 14-2783 JB |
| | ) | |
| **THOMAS R. RODELLA**, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR RELEASE PENDING APPEAL (Doc. 195)**

The United States submits the following response to Defendant's Motion for Release Pending Appeal (Doc. 195), and requests that this Court deny the motion without hearing or testimony.

**INTRODUCTION**

A violent offender "shall" be detained pending appeal. 18 U.S.C. § 1343(b)(2). The only exception to mandatory detention is where the defendant can satisfy the threshold requirements of 18 U.S.C. § 1343(b)(1) *and* make a "clear showing of exceptional reasons why his detention would not be appropriate." 18 U.S.C. § 1345(c); *United States v. Koon*, 6 F.3d 561, 564 (9th Cir. 1993); *United States v. Jager*, 2011 WL 831279 at 18 (D.N.M.). Here, Defendant cannot meet all of the threshold requirements of Section 1343(b)(1). Even if there is clear and convincing evidence that he poses no danger or flight risk, Defendant does not raise a "substantial question of law or fact likely to result in reversal" as required under Section 1343(b)(1)B)(i). Furthermore, Defendant cannot clearly show that there are exceptional reasons why his detention is not appropriate. 18 U.S.C. § 1345(c).

## DISCUSSION

### 1. Defendant has failed to identify a substantial question of law or fact likely to result in reversal.

#### A. Introduction of other-act testimony

At the outset, Defendant fails to properly articulate a substantial question. As phrased, Defendant claims that the "question" is: "the admission of evidence concerning three other incidents under Rule 404(b), combined with the prosecution's misuse of that evidence in closing argument." Doc. 195 at 1, 3. In that phrase, Defendant describes two events but no questions. He does so in order to edit the standard of review out of the analysis – an incorrect approach. In *United States v. Affleck*, the Tenth Circuit noted, "Of course, a 'substantial' question must be one which can be properly raised on appeal." *United States v. Affleck*, 765 F.2d 944, 952 n.13 (10th Cir. 1985) (en banc). An event cannot be raised on appeal. The Tenth Circuit confronted an identical situation in *United States v. Farr*, 457 F. App'x 757 (10th Cir. 2012) (unpublished). In that case, the defendant challenged the introduction of evidence pursuant to Rule 404(b) at trial and requested bail pending appeal. *Id*. at 758-59. The Tenth Circuit immediately noted the applicable standard of review (abuse of discretion) and phrased the question as "whether the district court abused its discretion in admitting the 404(b) evidence," which aptly describes the question in this case as well. *Id*.

Proper inclusion of the standard of review in the question is dispositive. There can be no question that this Court acted well within its discretion. Under the abuse of discretion standard, a reviewing court "will not reverse a district court's ruling if it falls within the bounds of permissible choice in the circumstances and is not arbitrary, capricious or whimsical." *United States v. Mares*, 441 F.3d 1152, 1156 (10th Cir. 2006) (quotation marks, citation and alteration omitted). This Court methodically considered each of the parties' arguments on this issue and

the applicable law. *See* Doc. 93. The Court made each of its rulings clearly, carefully and intelligently. *Id*. The United States respectfully submits that there is *no way* that a reviewing court could characterize this Court's 38-page opinion as "arbitrary, capricious or whimsical."

In *Farr*, 457 F. App'x at 759, the Tenth Circuit held that because the district court had correctly noted that the government had the burden of proving that the defendant acted willfully, there was no "substantial question" whether the district court abused its discretion in admitting evidence pursuant to Rule 404(b). In this case too, the Court based its decision to admit the evidence in part on the fact that the charges required proof that the Defendant acted willfully. *See* Doc. 93, pp. 27-28.

Notably, Defendant does not cite a single case in which a court has found that a 404(b) ruling raises a substantial question for § 3143(b)(2) purposes. In fact, while recognizing that there are no "blanket categories," rulings on evidence normally are not "substantial questions" because they are ordinary questions. Every trial involves dozens or even hundreds of fact-specific rulings regarding the introduction of evidence. Rule 403 requires a balancing analysis of the relative probative value and prejudicial effect of each piece of evidence. In almost every trial, reasonable judges could differ about one or more of the evidentiary rulings. But "[i]t is not sufficient to show simply that reasonable judges could differ (presumably every judge who writes a dissenting opinion is still 'reasonable') or that the issue is fairly debatable or not frivolous." *United States v. Powell*, 761 F.2d 1227, 1233 (8th Cir. 1985) (cited in *United States v. Pancal*, 999 F.2d 548 (10th Cir. 1993) (unpublished)). The exception would quickly swallow the rule if discretionary decisions during trial were considered "substantial questions."

A review of case law reveals that it would be highly unusual for a district court to release a defendant on bail pending appeal when the proffered substantial question is one that the

appellate court would review for abuse of discretion or plain error. Certainly, Defendant cites no such case from within the Tenth Circuit or otherwise. The United States has tried to locate such a case without success. In contrast, each of the Tenth Circuit cases the United States has located that affirm or require release pending appeal involves a legal question subject to de novo review. *See, e.g.*, *United States v. Frownfelter*, 363 F. App'x 675 (10th Cir. 2010) (unpublished) (involving whether a certain offense was a felony or a misdemeanor); *United States v. Ensminger*, 166 F.3d 348 (10th Cir. 1998) (involving application of a sentencing enhancement).

Defendant's attempt to characterize the Court's discretionary decision to admit the other-act evidence as a "substantial question" amounts to little more than second-guessing the Court's pre-trial ruling. Prior to trial, both parties briefed and argued the admission of testimony of the other motorists. *See* Docs. 35, 46, 56. The United States hereby incorporates its written and oral arguments made previously in support of this testimony. This Court issued and explained its ruling in a 38-page memorandum. *See* Doc. 93. In reaching its opinion, this Court was fully cognizant of all the considerations and concerns that Defendant returns to here. Defendant perhaps rephrases his objections to the evidence; but this Court made its decision on the substance of the issues, and need not reconsider now.

In the instant Motion, Defendant raises no new argument supporting exclusion of the testimony of the other motorists. But his restated arguments create the slanted impression that Rule 404(b) excludes all evidence that shows propensity. As this Court knows well, *that is not the law*. *See* Doc. 93, p. 20-21. "[W]hen other-act evidence is admitted for a proper purpose and is relevant, it may be admissible even though it has 'the potential impermissible side effect of allowing the jury to infer criminal propensity.'" *United States v. Moran*, 503 F.3d 1135, 1145 (10th Cir. 2007) (citation omitted). *See also United States v. Romero*, No. CR 09-1253 JB, 2011

WL 1103862, at *12 (D.N.M.) (Browning, J.) ("Rule 404(b) evidence almost always has some propensity evidence."). The Tenth Circuit has explained precisely the role that propensity plays in the admissibility of other-act evidence:

> We acknowledge that there is sometimes a fine line between what constitutes forbidden propensity evidence and what constitutes legitimate evidence of intent and that the permissible use of prior convictions to prove intent might have "the potential impermissible side effect of allowing the jury to infer criminal propensity." *See United States v. Macedo*, 371 F.3d 957, 966 (7th Cir. 2004). We are satisfied, however, that when the four *Huddleston* factors are satisfied, the evidence is properly admitted.

*United States v. Cherry*, 433 F.3d 698, 701 n.3 (10th Cir. 2005). But incredibly, in his challenge to the admission of other-act evidence, Defendant never once mentions the *Huddleston* test. *See generally* Doc. 195. His argument depends on grafting an additional prong – that the evidence carry *no possible* propensity inference – onto the established test for admission of other-act evidence. *See Huddleston v. United States*, 485 U.S. 681, 691-92 (1988). Defendant's project of replacing the approved proper purposes with the word "propensity" proves nothing relevant to the existing law, and does not convert the Court's reasoned prior opinion into a "substantial question."

Besides the misapprehension of controlling law, the only new feature of Defendant's renewed objection to the other-act evidence is that, with the benefit of hindsight, it is now possible to retrospectively review which issues were contested at trial. The problem is that Defendant never raised this issue during trial. During closing arguments, Defendant did not attempt to parse out which issues had been contested, nor did he ask to revisit the Court's ruling regarding the proper uses of the other-act evidence. *See* Trial T. at 1062-69. In fact, Defendant went through each proffered purpose and asked for each to be put before the jury so that Defendant could rebut or comment on them in his closing argument. *Id*. at 1062-63. The Court obliged by ordering the United States to clearly argue the proper purposes prior to Defendant's

closing, and the United States complied. *Id*. at 1063-69. So, rather than take the position that the United States could only argue certain purposes based on the evidence presented, Defendant made the tactical trial decision that he wanted the United States to present all the proffered purposes to the jury so that Defendant could critique them. This Court gave him what he requested, and he cannot complain that it presents a "substantial question" now.

But presenting a substantial question is only half the battle under Section 3143(b)(1)(B). Defendant also has the burden to prove by a preponderance of evidence that "if that substantial question is determined favorably to defendant on appeal, that decision is *likely* to result in reversal or an order for a new trial[.]" *Affleck*, 765 F.2d at 953 (emphasis added). In this context, "likely" does not mean such an outcome is merely possible, it means that the outcome is "more likely to happen than not." *United States v. Powell*, 761 F.2d 1227, 1233 (8th Cir. 1985) (cited with approval in *United States v. Pancal*, 999 F.2d 548 (10th Cir. 1993) (unpublished). *See also United States v. Valera-Elizondo*, 761 F.2d 1020, 1024-25 n.7 (5th Cir. 1985). Put another way, "harmless errors, errors that have no prejudicial effect, or errors that have been insufficiently preserved would not justify a court's granting bail." *United States v. Bilanzich*, 771 F.2d 292, 299 (7th Cir. 1985) (citing *United States v. Miller*, 753 F.2d 19, 23 (3rd Cir. 1985). *See also United States v. Bayko*, 774 F.2d 516, 522 (1st Cir. 1985).

In this case, if the reviewing court resolves the 404(b) issue favorably to Defendant, the court next will apply the "nonconstitutional harmless error standard." *See United States v. Jefferson*, 925 F.2d 1242, 1255 (10th Cir. 1991). The court will only reverse or order a new trial if the improperly admitted evidence had a "substantial influence" on the outcome at trial or generates a "grave doubt" as to whether it had such effect. *Id*. In making this assessment, the appellate court will review the entire record, "examining the context, timing, and use of the

erroneously admitted evidence at trial and how it compares to properly admitted evidence." *United States v. Blechman*, 657 F.3d 1052, 1067 (10th Cir. 2011).

Defendant does not meet his burden to show that a reviewing court would probably reverse or remand for new trial because he does not even attempt to compare the other-acts material to the volume of uncontested evidence at trial. His argument on this point is only one paragraph. *See* Doc. 195 at 17-18. He does not acknowledge even the existence of any properly admitted evidence against him. He does not attempt to explain what the defense theory at trial was, nor how the other-acts testimony might have impacted that theory. Admittedly, the defense theory of the case is unclear from the closing argument; but that is Defendant's problem. The United States will not attempt to clarify except to say that Defendant asked the jury to believe Thomas Rodella, Jr.'s testimony over Michael Tafoya's account. Tafoya testified extremely credibly, while Rodella, Jr. was effectively impeached on multiple levels. In fact, Defendant already conceded that the United States "was successful in undermining Mr. Rodella, Jr.'s credibility with the use of his medical records and psychiatric testimony." Doc. 160, p. 4. This Court noted further that "the United States impeached Rodella, Jr. on a number of issues outside the medical records. . . . Rodella, Jr.'s credibility suffered more damage from the rest of the United States' cross-examination than from the United States' use of his medical records." Doc. 182, p. 63. Additionally, this Court already has recognized that, besides Rodella, Jr.'s credibility problems and the 404(b) evidence, several other factors contributed significantly to the conviction, including "Tafoya's testimony, the testimony of the jogger who saw the car chase, [and] Lieutenant Sanches' testimony[.]" *Id*. at 64. And the jury found beyond a reasonable doubt that Defendant brandished a firearm, despite the fact that each of the three other motorists testified that Defendant did not brandish a firearm at them.

Defendant does not address any of these issues. But *Affleck* requires him to prove, by a preponderance of the evidence, that a reviewing court will probably not find the supposed error to be harmless. *Affleck*, 965 F.2d at 953; *Powell*, 761 F.2d at 1233. He has not embraced this burden and this Court should not make his argument for him.

**B.     Closing argument**

The second situation that Defendant references as a question is "the prosecution's misuse of that evidence in closing argument." Doc. 195 at 1, 3. Once again, inclusion of the standard of review is dispositive. The standard of review is plain error. *See United States v. Taylor*, 514 F.3d 1092, 1097 (10th Cir. 2008) (applying plain error review when a defendant objected to a prosecutor's argument but did not object to the district court's curative instruction). At the end of the first part of the United States' closing argument, Defendant objected. *See* Trial T. 1062-63. The Court ruled that the United States must immediately explain to the jury the exclusive purposes for which they could use the evidence regarding the three other motorists. *Id*. at 1063-65. The United States complied with the Court's ruling by arguing to the jury that they may consider the evidence only for the permitted purposes. *Id*. at 1067-69. Defendant did not object to the Court's resolution of the 404(b) objection. *Id*. at 1063-67. Nor did Defendant object following the United States' curative argument on permitted purposes. *Id*. at 1069. Nor did Defendant object when the United States discussed the other motorists in rebuttal. *Id*. at 1128-33. Nor did he object at the conclusion of the United States' argument. *Id*. at 1134-35. In short, the record indicates that Defendant was entirely satisfied with the Court's ruling and the United States' curative argument, and untroubled by the rebuttal argument. Defendant gave the Court no further opportunity to address the 404(b) issue. In such a situation, the Court's ruling will be reviewed only for plain error. *See Taylor*, 514 F.3d at 1097. Therefore, the second question,

properly phrased, is "whether the district court committed plain error in failing *sua sponte* to issue a limiting instruction."

"Plain error occurs when there is (1) error, (2) that is plain, which (3) affects the defendant's substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Baldridge*, 559 F.3d 1126, 1135 (10th Cir. 2009) (citations omitted). When conducting plain error review of allegedly improper remarks of counsel, courts "must view the remarks in the context of the entire trial." *Baldridge*, 559 F. 3d at 1135 (quoting *United States v. Oberle*, 136 F.3d 1414, 1421 (10th Cir. 1998)).

But again, Defendant fails to assume the burden of proving that, in the context of the entire trial, a reviewing court will probably reverse or remand for a new trial. He cites no case finding that a district court committed a "plain error" in this context, let alone a case reversing a conviction for such a reason. Each of the three cases Defendant cites involves a preserved, contemporaneous objection and review for abuse of discretion. *See United States v. Simpson*, 479 F.3d 492, 503 (7th Cir. 2007); *United States v. Richards*, 719 F.3d 746, 764 (7th Cir. 2013); *United States v. Brown*, 327 F.3d 867, 871 (9th Cir. 2003). And those cases involve egregious conduct that cannot be compared to the facts of this case. In *Simpson*, the prosecutor "explicitly told the jurors to draw the inference that Simpson had done so many drug deals in the past that he could not remember doing this one." *Simpson*, 479 F.3d at 505. Likewise, in *Richards*, the prosecutor told the jury "the defendant is a drug dealer" at least half a dozen times during argument. *Richards*, 719 F.3d at 764-65. In short, Defendant offers no comparable case involving reversal upon plain error review. As shown above, the reviewing court will probably find any errors to be harmless. Defendant's burden is even heavier as it pertains to plain error review, but once again he has not undertaken to meet that burden.

**2. Defendant cannot show exceptional reasons to justify the defendant's release pending appeal.**

Even if Defendant could meet the threshold requirements under 18 U.S.C. § 1343(b)(1), he may only be released if "it is clearly shown that there are exceptional reasons why [his] detention would not be appropriate." 18 U.S.C.§ 1345(c). Exceptional reasons are those that are out of the ordinary, uncommon, rare or of the sort that "present a unique set of circumstances." *United States v. Wages*, 271 F. App'x 726, 727 (10th Cir. 2008) (and cases cited therein). Defendant offers five reasons that he claims satisfy Section 1345(c). He relies heavily on *United States v. Garcia,* 340 F.3d 1013 (9th Cir. 2003), to argue that his five reasons are exceptional. A careful examination of that opinion, rather than reliance on Defendant's selected quotes, reveals that *Garcia* provides little support for Defendant's arguments. In fact, taken singly or in combination, Defendant's reasons are not clearly exceptional. Consequently, release pending appeal is not justified.

First, Defendant quotes *Garcia* to argue that he has "an unusually strong chance [of] obtaining a reversal of his conviction on appeal." Doc. 195 at 19. However, Defendant fails to mention what appellate issues the *Garcia* court would consider as having an "unusually strong chance." One example described in that opinion is when there is a "distinct possibility that the convictions of those offenders would ultimately be overturned on the ground that the retroactive extension of an expired statute of limitations is unconstitutional." *Id*. at 1021. Another example of an "unusually strong chance" is when the issues on appeal have not previously been decided by the appellate court. *Id*. These examples are easily distinguishable from the issue Defendant identifies as a substantial question in the instant case. The admission and use of Rule 404(b) evidence does not present a Constitutional question. And, as discussed *infra*, the Tenth Circuit has repeatedly decided Rule 404(b) issues.

Second, Defendant relies on *Garcia* to argue that his poor health constitutes an exceptional reason. However, the *Garcia* court actually held that "a *severely* ill or injured defendant *might* have exceptional reasons…." *Id*. at 1019 (emphasis added). Defendant Rodella's health issues are not "severe" as was evidenced by the fact that (1) he physically attacked the victim, and (2) considered himself sufficiently healthy to run for a second four-year term as sheriff. Furthermore, he has experienced no treatment difficulties while detained at the Torrance County Detention Facility. The defendant's treating nurse practitioner reports that the defendant does not have "significant medical needs" as suggested in Defendant's motion. See attached email from Jay Peterson, CFNP, attached hereto as Exhibit 1. Defendant also claims in his motion that his health problems have worsened since his incarceration. Doc. 195 at 19. To the contrary, the defendant's "health care needs have improved" since his arrival at Torrance County Detention Facility. Exhibit 1.

The Tenth Circuit noted that "it is a rare case in which health conditions present an 'exceptional reason.'" *Wages*, 271 F. App'x at 728 (reasons put forth that the defendant is 53 years old, wheelchair-bound, requires a special mattress, and has a hearing impairment are not exceptional). "Chronic medical condition controlled by medication is generally not an exceptional reason justifying release." *United States v. Varney*, 2013 WL 2406256 at 1-2 (E.D. Ky.) (defendant's medical condition requiring 24-hour oxygen and various medications not exceptional). According to Nurse Practitioner Jay Peterson, the defendant is no longer exhibiting symptoms of hemochromatosis. Exhibit 1. This means that the Defendant is not even suffering from a chronic medical condition at this time. Accordingly, his health condition cannot possibly be sufficiently rare to present an exceptional reason.

Third, Defendant relies on *Garcia* to argue that the "nature of the violent act itself" constitutes an exceptional reason for his release. Doc. 195 at 19, quoting *Garcia.* Once again, the defendant fails to mention what the *Garcia* court would consider as exceptional. The two examples the court describe clearly bear no relation to the instant case. The first example is where "the act was violent, but did not involve any specific intent or if it did not involve any threat or injury to persons…." *Garcia,* 340 F.3d at 1019. In contrast, a violation of 18 U.S.C. §242 involves specific intent and the defendant's high-speed chase and assault with a firearm clearly involved a threat to persons. The second example is where the circumstances surrounding the act of violence were "highly unusual" such as an elderly man's mercy killing of his ailing wife. *Id.* at 1018-19. Unfortunately, the violation of a person's Constitutional rights under color of law is not highly unusual.

Defendant also argues that since he no longer is a law enforcement officer, he presents a low risk of future violence. Since the risk of danger is considered in the threshold analysis under 18 U.S.C. §3143(b)(1), it should not enter into the 3145(c) analysis. Also, Defendant relies on *Garcia* to claim that since his status is such that he can no longer pose a threat, he is "not the type of violent person for whom congress intended mandatory detention…." Doc. 195 at 20 (quoting *Garcia,* 340 F.3d at 1019). But, the type of violent person *Garcia* meant is a defendant who "may have acted violently but uncharacteristically, in reaction to an unusually provocative circumstance." *Garcia,* 340 F.3d at 1019. In committing the instant offense, the defendant certainly was not reacting to an "unusually provocative circumstance."

Fourth, Defendant's status as a former law enforcement officer does not present an exceptional reason. In fact, his status is common, rather than exceptional, in civil rights offenses. As Judge Rymer noted in his concurring opinion, Defendant's status is "an ordinary corollary of

being a law enforcement officer convicted of violating another's civil rights under 18 U.S.C. § 242." *Koon*, 6 F.3d at 563. That is, he will not face a risk that is not faced by any other former law enforcement officer convicted of the same offense. And there is no indication that "either Congress or the Sentencing Commission intended to shield law enforcement officers as a group from the otherwise universally applicable effects of incarceration on convicted criminals." *United States v. Rybicki*, 96 F.3d 754, 759 (4th Cir. 1996).

Defendant's reliance on the dissent in *Koon* is misplaced because the facts in *Koon* are easily distinguishable. As the Supreme Court noted, the case received "extraordinary notoriety and national media coverage" arising out of the beating of Rodney King. *Koon v. United States*, 518 U.S. 81, 112 (1996); *United States v. Mills*, 194 F.3d 1108, 1115 (10th Cir. 1999) (*Koon* involved "a unique combination of factors"); *United States v. Winters*, 174 F.3d 478, 485 (5th Cir. 1999) ("*Koons* was an extreme case"). In the instant case, Defendant's circumstances are neither extreme nor unique.

Moreover, Detention Management Inspector Mitch Varley states that Defendant has never made an official complaint of any threats. The defendant only mentioned threats after his motion for release pending appeal was filed and upon Mr. Varley's inquiry. Furthermore, the defendant is under administrative segregation status where he is securely housed alone and checked every 30 minutes. See email from Mr. Varley, attached hereto as Exhibit 2.

Fifth, Defendant's family circumstances certainly are not exceptional. In any event, personal and family hardships ordinarily do not constitute exceptional reasons under 18 U.S.C. § 134(c). *See United States v. Velarde*, 555 F. App'x 840 (10th Cir. 2014) (personal and family concerns are not exceptional reasons under 18 U.S.C. § 1345(c)); *United States v. Krantz*, 530 F. App'x 609, 610 (8th Cir. 2013) (defendant's three tours of duty in Iraq and Afghanistan not

exceptional); *United States v. Lea*, 360 F.3d 401, 403-04 (2nd Cir. 2004); *United States v. Schmitt*, 515 F. App'x 646, 647 (defendant's cooperation, and his elderly parents' needs not exceptional reasons); *Varney*, 2013 WL 2406256 at 2 (wife's 24-hour care needs not exceptional); *United States v. Cook*, 42 F. App'x 803 (6th Cir. 2002); *United States v. Smith*, 34 F.Supp.3d 541, 554 (W.D. Pa. 2014) (in finding that a single mother of two children who works three jobs did not show exceptional reasons, the court stated: "Most courts agree that 'purely personal' circumstances do not typically rise to the level of exceptional."); *United States v. Miller*, 568 F.Supp.2d 764, 777 (E.D. Ky. 2008) (family hardship does not constitute exceptional reason); *United States v. Green*, 250 F.Supp.2d 1145, 1149 (E.D. Mo. 2003) ("personal reasons alone are not exceptional reasons"); *United States v. Lippold*, 175 F.Supp.2d 537, 540 (S.D.N.Y. 2001) ("personal family hardships are very common"); *United States v. Rodriguez*, 50 F.Supp.2d 717, 722 (N.D. Ohio 1999) ("family hardship is not an unordinary consequence of incarceration").

      The defendant claims that his family circumstances are unusual because his wife, mother and two children need him. These personal and family reasons are not exceptional. In any event, Defendant's two children are adults and his mother has other family members who can care for her.

      As this Court has noted, "exceptional reasons are generally not present in a given case." *United States v. Ganadonegro*, 2012 WL 1132166, *5 (D.N.M.). The five reasons offered by Defendant in support of his release pending appeal are not exceptional singly or in combination such that they meet the "strict standard" Congress has set for release under 1345(c). *See id*.

## CONCLUSION

A hearing on this issue is not required. *See United States v. Greene*, 158 F. App'x 941, 942 (10th Cir. 2005) (per curiam) (unpublished). For the foregoing reasons, the United States respectfully requests that this Court deny Defendant's Motion for Release Pending Appeal (Doc. 195), and requests that this Court deny the motion without hearing or testimony.

    Respectfully submitted,

    DAMON P. MARTINEZ
    United States Attorney

    */s/ Filed Electronically*
    TARA C. NEDA
    JEREMY PEÑA
    Assistant United States Attorneys
    P.O. Box 607
    Albuquerque, New Mexico 87103
    (505) 346-7274

I HEREBY CERTIFY that on February 23, 2015, I filed the foregoing electronically through the CM/ECF system, which caused the below counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

Robert J. Gorence and Louren Oliveros
John D. Cline
Attorneys for Thomas R. Rodella

*/s/ Filed Electronically*
Jeremy Peña, Assistant U.S. Attorney