IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Case No. 14-CR-2783 JB |
| THOMAS R. RODELLA, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**REPLY IN SUPPORT OF MOTION FOR RELEASE PENDING APPEAL**

The government[1] does not dispute that Rodella has satisfied the "flight risk," "danger,"

and "delay" requirements for bail pending appeal under 18 U.S.C. §§ 3143(b) and 3145(c).[2]  It

contends (1) that admission of "other act" evidence under Fed. R. Evid. 404(b) and 403 does not

present "a substantial question," and (2) that, if that question is determined in Rodella's favor, it

is not "likely to result in reversal or an order for a new trial of all counts on which imprisonment

has been imposed."  *United States v. Affleck*, 765 F.2d 944, 953 (10th Cir. 1985) (en banc)

(quotation omitted).  The government also maintains that Rodella does not present "exceptional

reasons" for release under 18 U.S.C. § 3145(c).  We address these points in turn.

**I.      THE "OTHER ACT" ISSUE PRESENTS A SUBSTANTIAL QUESTION.**

The government focuses on the abuse of discretion standard of review for Rule 404(b)

and 403 rulings.  That is a deferential standard, but it is not the insuperable barrier the

government suggests.  To the contrary, admission of "other act" evidence produces a steady

---

[1] United States' Response to Defendant's Motion for Release Pending Appeal (Doc. 209) ["G. Opp."].  Rodella's initial motion is cited as "Mot."

[2] On the "delay" requirement, we note that Rodella's opening brief is due in the Tenth Circuit on March 30, 2015.  We do not anticipate seeking an extension.

1

stream of reversals from federal appellate courts across the country.  Rodella's opening brief cites

seven such cases[3] and two others where the district court abused its discretion but the error was

harmless.[4]  There are many other Rule 404(b) reversals.[5]  If admission of other act evidence can

serve as such a frequent ground for reversal, it can certainly serve as a "substantial question"

justifying release pending appeal under § 3143(b).[6]

### A.    Admission of the Other Act evidence.

On the merits, the government notes that the line between permissible uses of other act

evidence and impermissible propensity inferences can be a fine one.  G. Opp. 4-5.  There are

such close cases, but this is not one of them.  Here, as Rodella explained in his initial motion,

Mot. 5-8, several of the assertedly permissible uses--"plan," "absence of mistake," and

"accident"--were never disputed issues in the case.  The other act evidence was relevant to

Rodella's motive and intent--the only permissible uses that *were* disputed--solely through

forbidden propensity-based inferences.  *See, e.g., United States v. Commanche*, 577 F.3d 1261,

1267 (10th Cir. 2009).

---

[3] *United States v. Chapman*, 765 F.3d 720 (7th Cir. 2014); *United States v. Caldwell*, 760 F.3d 267 (3d Cir. 2014); *United States v. Richards*, 719 F.3d 746 (7th Cir. 2013); *United States v. Miller*, 673 F.3d 688 (7th Cir. 2012); *United States v. Commanche*, 577 F.3d 1261 (10th Cir. 2009); *United States v. Simpson*, 479 F.3d 492 (7th Cir. 2007); *United States v. Brown*, 327 F.3d 867 (9th Cir. 2003).

[4] *United States v. Briley*, 770 F.3d 267 (4th Cir. 2014); *United States v. Gomez*, 763 F.3d 845 (7th Cir. 2014) (en banc).

[5] *See, e.g., United States v. Richardson*, 2015 U.S. App. LEXIS 1962 (6th Cir. Feb. 6, 2015) (unpublished); *United States v. Johnson*, 2015 U.S. App. LEXIS 1665 (4th Cir. Feb. 3, 2015) (unpublished); *United States v. Smith*, 725 F.3d 340 (3d Cir. 2013); *United States v. Adams*, 722 F.3d 788 (6th Cir. 2013); *United States v. Bailey*, 696 F.3d 794 (9th Cir. 2012); *United States v. Clay*, 667 F.3d 689 (6th Cir. 2012); *United States v. Himelwright*, 42 F.3d 777 (3d Cir. 1994).

[6] The government asserts that it cannot find any cases holding an "other act" issue to be substantial.  If true, that would not be surprising, since relatively few bail pending appeal decisions are reported.  In any event, there is at least one such reported case, from the Western District of Texas.  *See United States v. Lamp*, 606 F. Supp. 193 (W.D. Tex. 1985) (Sessions, J.).

The government seems to argue (without distinguishing or even citing *Commanche*) that propensity-based inferences are acceptable.  *Commanche* is to the contrary, as are cases from other circuits.  *See, e.g., United States v. Chapman*, 765 F.3d 720, 722 (7th Cir. 2014) (other act evidence may be admitted "*provided* that the evidence is relevant under a theory that does not rely on an inference about the actor's propensity") (emphasis in original); *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014) (en banc) (Rule 404(b) "allows the use of other-act evidence only when its admission is supported by some propensity-free chain of reasoning"); *United States v. Caldwell*, 760 F.3d 267, 277 (3d Cir. 2014) (government must "explain how [the other act evidence] fits into a chain of inferences--a chain that connects the evidence to a proper purpose, no link of which is a forbidden propensity inference") (quotation omitted).

Also contrary to the government's position is a decision it cites from this Court.  In *United States v. Romero*, 2011 U.S. Dist. LEXIS 31035 (D.N.M. Mar. 9, 2011) (Browning, J.) (cited at G. Opp. 4-5), the Court observed that "[w]hen bad act evidence is both relevant and admissible for a proper purpose, 'the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the bad act.'"  *Id*. at *15 (quoting *United States v. Morley,* 199 F.3d 129, 133 (3d Cir. 1999) (alterations omitted)).  The Court made precisely the same point in its Rule 404(b) Order in this case.  Doc. 93 at 21.

The Tenth Circuit cases the government cites for the proposition that propensity-based inferences are acceptable--*United States v. Moran*, 503 F.3d 1135 (10th Cir. 2007), and *United States v. Cherry*, 433 F.3d 698 (10th Cir. 2005)--stand for a different point.  Those cases recognize that other act evidence introduced for a proper purpose may also tend to show propensity.  *Moran*, 503 F.3d at 1145; *Cherry*, 433 F.3d at 701.  In that circumstance, it is the

district court's duty, through careful Rule 403 balancing and limiting instructions, to prevent the jury from considering the evidence for propensity. *Commanche*, *Romero*, *Chapman*, *Gomez*, and *Caldwell* stand for a different proposition, one that bears directly on the evidence at issue here: Evidence ostensibly offered for a permissible purpose may not be admitted if its relevance to that purpose depends on a forbidden propensity inference. *See Commanche*, 577 F.3d at 1266-67 (drawing this distinction).

The government maintains that the "no propensity inferences" rule followed by this Court in *Romero* and this case, by the Tenth Circuit in *Commanche*, and by numerous other circuits somehow conflicts with *Huddleston v. United States*, 485 U.S. 681 (1988). G. Opp. 5. But *Commanche*, *Romero*, and the other cited cases were all decided after *Huddleston*, and none spotted the conflict the government now claims to find. And for good reason--those cases are perfectly consistent with *Huddleston*. They merely explain the requirements "that the evidence be offered for a proper purpose" and that it be relevant. *Huddleston*, 485 U.S. at 691. Evidence that is relevant only through a propensity-based link does not meet these requirements. *See, e.g.*, *Caldwell*, 760 F.3d at 277.

**B.    Closing Argument.**

Even if the initial decision to admit the Maes, Ledesma, and Gonzales evidence was a close call, the government's egregious misuse of that evidence in closing argument was not. Rather than argue the other act evidence along the limited lines the Court prescribed, the government made a series of propensity-based arguments, even going so far as to compare Rodella's character (as purportedly illustrated by the Maes incident) with Tafoya's. Mot. 13-16; Trial T. 1036-38. That was improper. "Having obtained admission of the evidence for a specific, non-propensity purpose, the government cannot then deploy the Rule 404(b) evidence

4

in support of some other argument or inference.  Rather, it must limit its use of the evidence to the purpose proffered when admitting the evidence."  *United States v. Richards*, 719 F.3d 746, 763-64 (7th Cir. 2013).

The government makes no serious effort to defend its closing argument, and for good reason:  that argument defied the Court's pretrial order and exploited the other act evidence for a forbidden purpose.  Courts have repeatedly focused on such improper prosecution arguments in reversing convictions involving other act evidence.  *See, e.g., Richards*, 719 F.3d at 763-65 (reversing conviction where prosecution used other act evidence improperly in closing); *United States v. Simpson*, 479 F.3d 492, 503 (7th Cir. 2007) ("Just as introducing evidence to show propensity is improper, so too is arguing to a jury that it should convict a defendant based on the defendant's propensity to commit a crime."); *United States v. Brown*, 327 F.3d 867, 871-72 (9th Cir. 2003) (reversing conviction where prosecution used other act evidence to argue defendant's criminal propensity in closing); *United States v. Himelwright*, 42 F.3d 777, 786 (3d Cir. 1994) ("The object, or at least effect, of this disproportionate emphasis by the prosecution [on other act evidence in closing argument], we believe, was to portray Himelwright as a violence-prone postal worker who was a danger to society and who needed to be removed for the protection of the public").

Rather than attempt to justify its use of the other act evidence in closing argument, the government maintains that Rodella forfeited the issue.  G. Opp. 8-9.  The government's procedural argument is wrong for two reasons.  First, Rodella *did* object to the improper closing. He asked the Court to instruct the jury on the limits governing the other act evidence, and he moved for a mistrial.  Trial T. 1039, 1062-63.  The Court did not grant either form of relief. Nothing more was required to preserve the closing argument error.

Second, although permitting the improper closing argument was error in its own right, the government's use of the other act evidence in closing is also significant to show that, despite the Court's efforts, that evidence was never tethered firmly to a permissible purpose; the evidence was far more unfairly prejudicial than it was probative; and the error in admitting the evidence was not harmless.  *See, e.g., Himelwright*, 42 F.3d at 785-87.

## II.    THE OTHER ACT EVIDENCE ISSUE, IF DECIDED IN RODELLA'S FAVOR, IS LIKELY TO RESULT IN A NEW TRIAL ON BOTH COUNTS.

Having fought tooth and nail to admit the other act evidence; having placed it at the end of the prosecution case for maximum effect; having argued it (improperly) at the beginning of its closing argument and at the end of its rebuttal--having shown the importance of the other act evidence in all of these ways, the government now contends that the error in admitting the evidence was harmless.  G. Opp. 6-8.

The government is wrong.  As the Tenth Circuit has recognized, other act evidence is "strong medicine for juries"--so strong, in fact, that in *Commanche* the court of appeals found the evidence prejudicial even though the government never mentioned it in closing.  *Commanche*, 577 F.3d at 1270; *see, e.g., United States v. McElmurry*, 2015 U.S. App. LEXIS 1186, at *26-*27 (9th Cir. Jan. 26, 2015) (government eschews harmless error argument where it relied heavily on propensity evidence in closing); *Caldwell*, 760 F.3d at 285 (error in admitting other act evidence not harmless, where defendant "vigorously maintained his innocence" and presented a substantive defense); *United States v. Miller*, 673 F.3d 688, 700-01 (7th Cir. 2012) (error in admitting other act evidence not harmless even though the government's case was "certainly strong").  The government did everything in its power to ratchet up the prejudicial impact of the Maes, Ledesma, and Gonzales incidents.  It cannot plausibly argue that the very evidence it fought to introduce and then emphasized improperly made no difference to the trial's outcome.

III.    RODELLA    PRESENTS    "EXCEPTIONAL    REASONS"    WARRANTING
        RELEASE PENDING APPEAL.

Rodella has identified five "exceptional reasons" that justify release under 18 U.S.C. §

3145(c):  the strength of his appeal, his poor health, the nature of the violent act itself, his status

as a law enforcement officer, and his family circumstances. Mot. 18-21.

The government's weak defense of the admission of the other act evidence underscores

the likelihood that Rodella's conviction will be reversed.  The chances of reversal would be

strong even if the government had hewed strictly to the limits the Court imposed on use of the

Maes, Ledesma, and Gonzales incidents.  But it did not; it transgressed those limits egregiously

in closing argument.  As in *Richards*, *Simpson*, *Brown*, *Himelwright*, and other cases, the

government's closing argument substantially increases the likelihood that Rodella's conviction

will be reversed and a new trial ordered.  That likelihood, in conjunction with the other

"exceptional reasons," weighs strongly in favor of releasing Rodella while the appeal proceeds.

The government notes that the issue Rodella has highlighted--the admission and use of

the other act evidence--is not among the "unusually strong" issues that *United States v. Garcia*,

340 F.3d 1013 (9th Cir. 2003), lists as examples.  G. Opp. 10.  But *Garcia* did not purport to give

an exhaustive catalog of "unusually strong" issues; the point of the case is that when there is an

especially high likelihood of reversal, detaining the defendant without the possibility of bail

pending appeal "might be unreasonable, in part because on appeal imprisonment for any period

could well be determined to be unjustified." *Garcia*, 340 F.3d at 1020.

On Rodella's health, the government offers an email from a nurse practitioner at the

Torrance County Detention Center.  Doc. 209-1.  The nurse asserts that Rodella's health has

actually improved since he was incarcerated.  Doc. 209-1.  That breezy assessment is both

implausible and in some tension with the PSR, which states the following:

7

Medical records obtained from the Torrance County Detention Center indicate the defendant suffers from anxiety; chronic sinusitis; gastro esophageal reflux disease (GERD); and rotator cuff arthropathy. . . .   The defendant is also a hemochromatosis carrier which can cause the body to absorb too much iron from food and the excess is then stored in other organs, especially the liver, heart and pancreas.   The excess iron can poison these organs leading to life-threatening conditions such as, cancer, heart arrythmias and cirrhosis.   Treatment for hemochromatosis requires doctors to safely and effectively remove blood from your body on a regular basis to reduce iron levels.

PSR ¶ 56.   The medical staff at any federal BOP facility can handle Rodella's health issues, but we have serious concerns about the ability of the TCDC to address them.   Those concerns are not eased by the fact that Rodella's care is in the hands of a nurse rather than a doctor.

The government misses the point of Rodella's argument concerning the nature of the violent act.   Congress requires violent offenders to be incarcerated pending appeal, absent exceptional reasons, because as a group they present an especially high likelihood of endangering the community.   But some violent acts occur under circumstances that mitigate the congressional concern.   *Garcia* gives examples of such circumstances (a violent act not involving specific intent, a mercy killing), *see* 340 F.3d at 1019, but--contrary to the government's argument--those examples are illustrative, not exhaustive.   Here, Rodella's alleged violence occurred in the context of his service as a law enforcement officer.   Because he has been permanently removed from that environment and otherwise presents a very low risk of future violence, the concern that led Congress to restrict bail pending appeal for violent offenders does not exist here.

The government dismisses the fourth exceptional reason--Rodella's status as a former law enforcement officer--because "he will not face a risk not faced by any other former law enforcement officer convicted of the same offense."   G. Opp. 13.   The point, though, is that any incarcerated law enforcement officer faces the risk of violence from other inmates.   Once Rodella is housed in a BOP facility, that risk may be manageable.   At TCDC, however, he is

incarcerated with violent offenders.  As the government's exhibit (Doc. 209-2) reflects, TCDC has sought to reduce the danger to Rodella by placing him in administrative segregation, meaning he is confined to his cell 23 hours each day.[7]  But during the hour per day that he is removed from the cell ("fully restrained," as the government exhibit notes) for a shower or recreation, he has on at least two occasions been placed within reach of a violent inmate who has threatened his life.  If Rodella's conviction had already been affirmed by the court of appeals, the danger he faces would be viewed as an inevitable risk for a law enforcement officer convicted of a violent crime.  But where, as here, there is a substantial chance that his conviction will be reversed, subjecting him to that danger (and to the solitary confinement necessary to limit the risk of violence) is unreasonably harsh.

Finally, the government cites cases holding that particular family circumstances do not constitute "exceptional reasons," G. Opp. 13-14, just as Rodella cited cases finding that they are, Mot. 20-21.  Standing alone, Rodella's family circumstances likely would not be grounds for release under § 3145(c).  But in combination with the other reasons outlined above and in Rodella's motion, the strain that his incarceration places on his mother, his wife, and his children makes it "unreasonable to incarcerate [Rodella] prior to the appellate court's resolution of his appeal."  *Garcia*, 340 F.3d at 1019; *see, e.g., United States v. Mutte*, 383 Fed. Appx. 716, 718 (10th Cir. 2010) (unpublished) (same; quoting *Garcia*).

---

[7] The fact that Rodella must be kept in solitary confinement 23 hours each day for his own protection is itself an "exceptional reason" justifying release pending appeal.  There is a substantial body of literature on the psychologically debilitating effects of solitary confinement. For a sampling, see http://io9.com/why-solitary-confinement-is-the-worst-kind-of-psycholog-1598543595 and http://www.newyorker.com/magazine/2009/03/30/hellhole.

## CONCLUSION

For the foregoing reasons, and for the reasons in Rodella's initial motion, the Court should release him on appropriate conditions pending appeal.

Respectfully submitted,

___/s/  Robert J. Gorence_____
Robert J. Gorence
Louren Oliveros
Gorence & Oliveros, P.C.
1305 Tijeras Avenue, NW
Albuquerque, NM 87102
Phone: (505) 244-0214
Fax:    (505) 244-0888
Email: gorence@golaw.us
Email: oliveros@golaw.us


___/s/ John D. Cline_____
John D. Cline
Law Office of John D. Cline
235 Montgomery Street, Suite 1070
San Francisco, CA  94104
Phone: (415) 322-8319
Fax:    (415) 524-8265
Email: cline@johndclinelaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing pleading was emailed to

counsel of record by CM/ECF this 4th day of March, 2015.

_/s/ John D. Cline_____
John D. Cline
