## DECLARATION OF DEBBIE A. RODELLA

1. My name is Debbie A. Rodella. I am over the age of 18 and competent to make this declaration. I am married to Thomas R. Rodella.

2. I own a bail bonding business that does business as Ayuda Bail Bonding. One of the requirements of a bail bonding business in New Mexico is that it post a letter of credit with the Superintendent of Insurance and for each court where it does business. In accordance with these requirements, Ayuda has submitted a $25,000 letter of credit to the Superintendent of Insurance and other letters of credit to the First Judicial District Court, the Rio Arriba Magistrate Court, and the Santa Fe Magistrate Court.

3. Los Alamos National Bank issued the letters of credit. To obtain the letters of credit, my husband and I pledged a CD in the amount of $70,032.09.

4. A copy of the hypothecation agreement for the CD and letters of credit is attached as Exhibit A. A copy of the pledge agreement is attached as Exhibit B. A copy of the commercial loan agreement is attached as Exhibit C.

5. I understand that if the CD is seized, LANB will cancel the four letters of credit. I further understand that without the letters of credit, Ayuda Bail Bonding could not continue to do business.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 20, 2015.

_____
Debbie A. Rodella

# EXHIBIT A

*Los Alamos National Bank*
*P.O. Box 60*
*Los Alamos, NM 87544*

## HYPOTHECATION AGREEMENT

FOR AND IN CONSIDERATION OF ANY FINANCIAL ACCOMMODATION given or to be given or continued to <u>Debbie A. Rodella DBA Ayuda Bail Bonding</u>, hereinafter call the "Borrower", by **LOS ALAMOS NATIONAL BANK**, hereinafter called "LANB", and for other valuable considerations, the receipt of which is hereby acknowledged, the undersigned does hereby assign, transfer to and deposit with LANB the following described property:

CD Account Number 28297939 and Certificate Number 346238 with an approximate balance of $70,032.09. Lender shall have control over the first $70,000.00 in the Account (the "Locked Balance") and, so long as the indebtedness remains unsatisfied, Grantor shall only be entitled to access funds from the Account in Excess of the Locked Balance.

Said property may be held by LANB, its successors and assigns, as collateral security for the payment of any and all indebtedness of the Borrower now or hereafter owing, to the same extent, in the same manner and for the same purpose as though said property were owned by Borrower.

The undersigned does further in all respects ratify, approve and confirm any prior pledge of said property by the Borrower to LANB in accordance with the terms of any existing or prior agreement between the Borrower and LANB, and for the purposes therein stated, and does further agree that LANB may at any time or from time to time, return or deliver said property, or any part thereof, to the Borrower and accept the receipt of the Borrower therefor. The undersigned does hereby waive all notice, of every kind and nature, with reference to the pledge, sale or delivery of said property, or any part thereof, or with reference to any other matter or thing whatsoever in connection with said property or pertaining thereto.

Date    December 8, 2014

By: *Debbie A. Rodella* — for *Thomas R. Rodella*
Thomas R. Rodella, Individually   *under Power of Attorney dated 9-30-2014*

### Borrower Consent to Provide Information

Borrower is executing this Hypothecation Agreement solely for the purpose of consenting to and authorizing LANB to disclose oral or written information that is or could be considered to be private or confidential information relating to Borrower to Thomas A. Rodella, without notice to Borrower, including but not limited information on payment status and demand letters, for so long as any loans remain outstanding that are secured by the property referenced above. LANB shall have the right, but not the obligation, to provide such information to Thomas A. Rodella

Debbie A. Rodella DBA Ayuda Bail Bonding

By _____
Debbie A. Rodella, Individually

ACKNOWLEDGMENT.
(Business or Entity)
STATE OF New Mexico, COUNTY OF Santa Fe ss.
This instrument was acknowledged before me this December 8, 2014 day of _____, by Debbie A. Rodella DBA Ayuda Bail Bonding.

_____
(Notary Public)

My commission expires:
10-31-2017



OFFICIAL SEAL
Jessica Renee Apodaca
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: 10-31-2017

# EXHIBIT B



**Los Alamos NATIONAL BANK**
Member F.D.I.C.
P.O. Box 60, Los Alamos, NM 87544 (505)662-5171

## PLEDGE AGREEMENT

**PLEDGE AGREEMENT** For valuable consideration, and to secure the payment of any and all indebtedness, liabilities, commitments, and any other obligations of any kind, whether direct or indirect, absolute or contingent, primary or secondary, liquidated or unliquidated, joint, several, or joint and several, due or to become due, now existing or hereafter acquired, created, or incurred, and whether evidenced by notes, drafts, contracts, open accounts, or otherwise, and all renewals and extensions thereof, herein called Debt, which the undersigned party, herein called Pledgor whether singular or plural, and jointly and severally if more than one, may now or at any time hereafter owe or guarantee to Los Alamos National Bank, Los Alamos, New Mexico, herein called Pledgee, Pledgor hereby pledges and delivers to Pledgee the property described below, together with all other money and property of Pledgor now or hereafter on deposit with or for any reason in the possession or control of Pledgee, including bank deposits of any classification or description, whether held in general or special accounts, and together with any and all additions thereto, substitutions therefor, and rights and benefits arising therefrom, including proceeds of sale or liquidation, proceeds of redemption, proceeds of insurance, appreciation, profit, interest, dividends, voting rights, and stock splits, all herein called Collateral.

**COLLATERAL DESCRIPTION**
INCLUDES DATES OF ISSUE AND MATURITY, CERTIFICATE OR POLICY NUMBERS, OBLIGOR, AND FACE VALUE, BALANCE, OR NUMBER OF SHARES

Certificate of Deposit Account Number 28297939 and Certificate Number 346238 with an approximate balance of $70,032.09. Lender shall have control over the first $15,000.00 for Irrevocable Letter of Credit # 1844 and additional control over $20,000.00 for Irrevocable Letter of Credit #1845 and additional control over $25,000.00 for Irrevocable Letter of Credit #1846 and additional control over $10,000.00 for Irrevocable Letter of Credit #1843. Total control over the account is $70,00.00 (the "Locked Balance") and, so long as the Irrevocable Letters of Credit remain outstanding, Grantor shall only be entitled to access funds from the Account in excess of the Locked Balance.

**REPRESENTATIONS OF PLEDGOR** Pledgor expressly represents, warrants and covenants to Pledgee that Pledgor is the lawful owner of Collateral and has the right to transfer full legal interest therein to Pledgee; that Collateral is free from default, prepayment, and any adverse claims, defenses, security agreements, liens, and other encumbrances; that Collateral complies with all applicable laws concerning form, content, manner of preparation, and execution; that Collateral is genuine and all persons and entities appearing to be obligated thereon have authority and capacity to contract and are bound thereon as they appear to be from the face thereof; and that no financing statement covering Collateral is on file in any public office.

**ADDITIONAL TERMS OF THIS PLEDGE AGREEMENT** Pledgor will, at Pledgor's expense, defend Collateral against all other claims and demands, promptly pay all taxes, assessments, costs, and expenses necessary to preserve, maintain and collect Collateral, and take all other steps necessary to preserve the value of Collateral and Pledgee's rights hereunder. Pledgor will keep complete, current, and accurate accounting records of Pledgor's business activities, financial condition, and of the status and value of Collateral, and will promptly notify Pledgee in writing of any material loss or other adverse changes that occur with respect thereto. Pledgee may, as its option, notify and require Pledgor to furnish additional collateral if Pledgee, in its sole discretion, determines that Collateral has decreased or threatens to decrease materially in market value, and Pledgor shall, within 24 hours after delivery of such notification, furnish such additional collateral. Pledgor authorizes Pledgee to examine Pledgor's accounting records at such times as Pledgee may reasonably request, and to perform such verification on Collateral as Pledgee may deem necessary. Pledgor agrees to execute, endorse and deliver any and all instruments and other documents that Pledgee may reasonably require to secure, perfect, sustain, protect or enforce its lien on Collateral and its other rights herein. Pledgor hereby appoints Pledgee as Pledgor's attorney-in-fact with the right to execute, endorse, deliver, and file, in the name of and on behalf of Pledgor, any and all instruments and other documents which Pledgee deems necessary to secure, perfect, sustain, protect, or enforce its lien on Collateral and its other rights herein. Pledgor authorizes Pledgee to take any action, including the foregoing, with Pledgee deems necessary to protect its lien on Collateral and its other rights herein, and Pledgor agrees to reimburse Pledgee for any and all costs and expenses incurred thereby, including reasonable attorney's fees. Pledgee may add the amounts of any such expenses to Debt, and Pledgor shall be liable for such amounts, together with interest thereon, according to the terms of the instrument evidencing the Debt. Pledgee may require Pledgor, upon demand, to deliver to Pledgee all interest, dividends, distributions, profits, accretions, and other proceeds and benefits of every kind and description arising from Collateral which Pledgor receives, and Pledgee may notify any payor of such proceeds or benefits to remit them directly to Pledgee. Pledgee shall be under no obligation with respect to Collateral other than to exercise reasonable care in its custody and preservation. That any provision of this Pledge Agreement is held to be unenforceable shall not affect the enforceability of the remaining provisions. Any waiver, exclusion, substitution, release, modification, discharge, or other concession made by Pledgee with respect to this Pledge Agreement will be made at the sole discretion of Pledgee, must be in writing and signed by Pledgee, and shall be effective only in the specific instance and for the specific purpose given. The exercise or enforcement of any one or more of Pledgee's rights hereunder shall not preclude nor be a prerequisite to the exercise or enforcement of any other, and all such rights shall be cumulative. Delay or failure on the part of Pledgee to exercise any right or rights hereunder shall not constitute a waiver of that right or rights. The taking of this Pledge Agreement shall not waive or impair any other security Pledgee may have or hereafter acquire to secure payment of Debt, nor shall the taking of any such additional security waive or impair this Pledge Agreement. Any notice to be given by one party to this Pledge Agreement to the other shall be considered given when mailed by certified or registered mail, postage prepaid, return receipt requested, to the party's address as shown on this Pledge Agreement, or to the most current address shown by the records of the sending party. Pledgor waives all presentments, demands, notices or non-performance, protests, notices of protests, notices of dishonor, and any notice of any other formality hereunder. This Pledge Agreement is subject to and governed by all applicable laws of the United States and the State of New Mexico, including the New Mexico Uniform Commercial Code. All rights and obligations of the parties hereto shall inure to and be binding upon their respective heirs, executors, administrators, successors and assigns.

**DEFAULT AND REMEDIES** If any payment on Debt is not made on or before the date due, or if Pledgor fails to observe and perform Pledgor's obligations under this Pledge Agreement or any other written agreement between Pledgee and Pledgor, or if any representation, statement, document, or other manifestation made or given by Pledgor or any guarantor of Debt to Pledgee for the purpose of obtaining credit proves materially false or misleading, or if Pledgor's legal status, financial condition, or actions are such that Pledgee deems itself insecure as a creditor of Pledgor, or if Pledgor dies or is declared legally incompetent, then Pledgor shall be in default under this Pledge Agreement, and Pledgee may, as its option, exercise any one or more of the remedies available to it under the law. This includes declaring Debt immediately due and payable, taking all steps necessary to transfer ownership of Collateral into the name of the Pledgee, liquidating Collateral and applying the proceeds to satisfy Debt, setting off against Debt any and all amounts which Pledgee owes to Pledgor, and selling Collateral at public or private sale at such price as Pledgee shall deem satisfactory, delivering, assigning, and transferring to the purchaser thereof all of Pledgor's rights thereunder. Pledgee shall give Pledgor not less than ten days prior written notice of Pledgee's intention to make such public or private sale, and such notice may, without notice or publication, adjourn any public or private announcement at the time and place fixed for such sale, and such sale may be made at any time or place to which the same may be so adjourned. If sold on credit for future delivery, Collateral may be retained by Pledgee until selling price is paid by the purchaser thereof, but Pledgee shall not incur any liability if purchaser fails to pay. If such failure to pay should occur, Collateral may again be sold upon similar notice to Pledgor. Pledgee may, as its option, purchase Collateral at any such public or private sale. Pledgor hereby authorizes Pledgee to add the amount of any and all costs and expenses incurred in its exercise of remedies hereunder to Debt under the terms of the Debt instrument. The proceeds of any sale or liquidation of Collateral shall be applied in an order to be determined by and at the sole discretion of Pledgee, and shall include payment of Debt, which in turn includes reimbursement of all costs and expenses of sale or collection of Collateral plus interest thereon. Residual proceeds of any sale or other liquidation of Collateral shall be paid to Pledgor or to Pledgor's successors or assigns, or as a court of competent jurisdiction may direct. Pledgor shall be liable for any deficiency represented by Debt remaining after disposition of Collateral and application of proceeds.

| DATE | PLEDGOR'S SIGNATURES | PLEDGOR'S SIGNATURES |
|---|---|---|
| December 8, 2014 | | |
| NAME AND ADDRESS OF PLEDGOR | *Debbie A. Rodella, Individually* | |
| Debbie A. Rodella DBA Ayuda Bail Bonding 16 Private Dr. 115b Espanola, NM 87532-3160 | | |

**Pledge.** You agree not to pledge your Account without our prior consent. You may not withdraw funds from your Account until all obligations secured by your Account are satisfied.

# EXHIBIT C



**Los Alamos**
NATIONAL BANK
Member F.D.I.C.

## COMMERCIAL LOAN AGREEMENT

The undersigned, <u>Debbie A. Rodella DBA Ayuda Bail Bonding,</u> (individually and as Guarantor(s)) (hereafter collectively referred to as Borrower) and Los Alamos National Bank (hereafter referred to as the Bank) enter into this agreement concerning a loan in the principal amount of <u>Fifteen Thousand Dollars and no cents</u> ($<u>15,000.00</u>), to be secured by:

> Certificate of Deposit Account Number 28297939 and Certificate Number 346238 with an approximate balance of $70,032.09. Lender shall have control over the first $15,000.00 for Irrevocable Letter of Credit # 1844 and additional control over $20,000.00 for Irrevocable Letter of Credit #1845 and additional control over $25,000.00 for Irrevocable Letter of Credit #1846 and additional control over $10,000.00 for Irrevocable Letter of Credit #1843. Total control over the account is $70,00.00 (the "Locked Balance") and, so long as the Irrevocable Letters of Credit remain outstanding, Grantor shall only be entitled to access funds from the Account in excess of the Locked Balance.

on the following understandings, terms, and conditions:

1. Representations - Borrower represents and warrants to Bank that the following paragraphs are true and correct:

    A. Financial Condition - All financial statements that have been and will be delivered to the Bank are and will be true and represent the financial condition of Borrower. Nothing has occurred or will occur before funding which will materially affect in any adverse manner the condition of the Borrower as disclosed in the financial statements. Borrower has and will have no known actual or contingent liabilities, except such as are reflected in the financial statements or in other documents that have been or will be delivered to the Bank.

    B. Liens – The Bank will be the sole lienholder on the collateral for loans made pursuant hereto and on all future collateral of a similar kind.

    C. Taxes - Borrower has filed and will file all required federal, state, and local tax returns and has paid and will pay all taxes and assessments as shown on such returns as they have become due. No claims have been asserted or are unpaid with respect to such taxes except as are and will be disclosed in the financial statements.

2. Borrower's Affirmative Duties

    A. Annual Financial Statements Upon Request - Borrower will furnish to the Bank no later than ninety days after the expiration of each fiscal year detailed reports of the Borrower's financial position during such fiscal year. Financial statements will include the following: Balance Sheet, Income Statement, Cash flow Statement, and Tax Returns. These statements must be signed and certified by the Borrower to be true and correct.

    B. Interim Financial Statements - Borrower will furnish to the Bank interim financial information as may be requested by the Bank from time to time.

    C. Insurance – Borrower will maintain property insurance with Bank named as loss payee with responsible companies in such amounts and against such risks as is customarily carried by prudent owners of similar businesses and property. Borrower will promptly furnish the Bank copies of insurance policies as requested.

    D. Taxes - Borrower will promptly pay and discharge when due all taxes, assessments, and governmental charges of every kind and nature lawfully levied, assessed, or imposed upon Borrower or its properties except to the extent contested in good faith. Borrower will set aside funds necessary to pay a contested tax, assessment, or governmental charge plus all interest and penalties should its challenge prove unsuccessful. The Borrower will establish and maintain a reserve for federal income taxes in accordance with generally accepted accounting practices.

    E. Assets - Borrower will not sell, lease, transfer, or otherwise dispose of any of its assets other than in the ordinary course of business nor will Borrower dispose of more than 20% of it's capital assets without prior written consent from the Bank. Borrower will not assign or sell any notes, accounts receivable, contract rights, chattel paper, general intangibles, or proceeds thereof due or to become due, either as security or otherwise.

    F. Contingent Liabilities - Borrower agrees to inform Bank of any litigation, changes in contractual obligations, or other changes in the status quo of the borrower which could materially affect the business.

    G. Bank Services - Borrower agrees to maintain its principal deposits at the Bank.

    H. Information - Borrower will furnish to the Bank with reasonable promptness such data and information concerning the business of the Borrower and/or related entities, including any copies of outstanding contracts, as may be requested by the Bank from time to time. Bank may inspect the Borrower's books and records, as well as its office at any reasonable time.

I. Management - Borrower and Bank will periodically review Borrower's executive management and key personnel which shall at all times be satisfactory to the Bank and Borrower will notify Bank of any management changes.

3. Additional Covenants:

   A. Indebtedness - Borrower will not create, assume, or incur any indebtedness regarding the collateral securing this loan without approval in writing from the Bank.

   B. Extensions – The Bank will assess extensions and if deemed appropriate will extend the due date with Borrower paying any outstanding interest in full and a $250.00 loan extension fee. Unless expressly amended by the loan extension, all terms, conditions, covenants, collateral, liens, obligors, guarantors, and disclosures in effect for the original loan will remain in full and effect and unchanged by the extension.

   C. Binding Effect - This agreement and the documents executed in connection herewith will be construed in accordance with and governed by the laws of the State of New Mexico. All provisions hereof shall bind and benefit the successors and assigns of Bank and of heirs, executors, administrators, successors, and assigns of Borrower; provided, however, that Borrower shall not assign this agreement, or any right, title, or interest thereunder, without prior written consent of the Bank.

   D. The terms of this loan agreement shall survive the execution and delivery of the promissory note and any other loan documents in connection herewith.

   E. The parties understand and agree that this Loan Agreement will generally cover their borrowing relationship. Neither party is obligated to continue the borrowing relationship. There is no agreement between the parties concerning the extension of further credit or for the renewal or extension of any specific promissory note or loan. The provisions of this Loan Agreement shall not negate or modify in any way the provisions of any promissory note, security agreement, mortgage, financing statement, collateral assignment or pledge or any other document of a contractual nature executed by the parties or either of them in furtherance of the objectives of this Loan Agreement.

   F. To abide by all the terms of this agreement, it being expressly understood that if Borrower should fail to perform in whole or in part, any one or more of the requirements herein contained, Bank may accelerate the maturity of said loan so that the remaining unpaid balance, including advances made as aforesaid, with interest accrued thereon, may, at the option of the Bank, be declared immediately due and payable;

   G. No representations of any kind have been made to Borrower by Bank except as specifically set forth in this agreement. Only the CEO, President, or Commercial Loan Vice President are authorized to make any representations which might bind the Bank.

   H. By mutual agreement in writing, Bank and Borrower may make other or additional Loan Agreements.

Dated: December 8, 2014

Debbie A. Rodella
DBA Ayuda Bail Bonding

By: _____
Debbie A. Rodella, Individually


LOS ALAMOS NATIONAL BANK

By: _____
Debbie A. Decker, Commercial Loan Officer